UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GEORGIA-PACIFIC CONSUMER PRODUCTS, LP,

Plaintiff,

- against -

INTERNATIONAL PAPER CO.,

Defendant.

Case No.: 07 CV 9627 (SHS) (THK)

ECF CASE

**DEFENDANT INTERNATIONAL PAPER'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

Dated: December 3, 2007
New York, New York

Joseph Serino, Jr.
Atif Khawaja
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

*Counsel for Defendant International Paper Co.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................1

BACKGROUND AND COMPLAINT OVERVIEW ..........................................................2

A. The Parties' Relationship to the Operations At Issue. ..........................................2

B. The Unambiguous Terms of the Contract. ..........................................................3

C. The Present Dispute. ...........................................................................................4

ARGUMENT AND STATEMENT OF LAW ....................................................................5

A. The Unambiguous Four Corners Of The Contract Compel RPC's Assumption Of All Of Federal's Environmental Liability For The New Jersey Operations. ..........................................................................................7

B. The Enactment Of CERCLA And Other Environmental Statutes After The Contract Closing Does Not Alter RPC's Assumption Of All Of Federal's Environmental Liability For The New Jersey Operations. ..................................10

C. Even Under Georgia-Pacific's Flawed Reading Of The Contract, RPC Has Assumed All Of Federal's Environmental Liability For The New Jersey Operations. ............................................................................................13

D. Georgia-Pacific Is Not Entitled To A Declaration That It Need Not Indemnify International Paper For Federal's Environmental Liability. ................15

CONCLUSION.................................................................................................................16

# TABLE OF AUTHORITIES

## CASES

*A-C Reorganization Trust v. DuPont*,
Case No. 94-cv-574, 1997 WL 381962 (E.D. Wis. Mar. 10, 1997) ............................14, 15

*Aluminum Co. of America v. Beazer East, Inc.*,
124 F.3d 551 (3d Cir. 1991)........................................................................................11, 12

*Bell Atlantic Corp. v. Twombly*,
127 S. Ct. 1955 (2007)..................................................................................................5, 15

*Broder v. Cablevision Sys. Corp.*,
418 F.3d 187 (2d Cir. 2005)..............................................................................................13

*Conley v. Gibson*,
355 U.S. 41 (1957)..............................................................................................................5

*Crane Co. v. Coltec Indus., Inc.*,
171 F.3d 733 (2d Cir. 1999)..............................................................................................10

*Dujardin v. Liberty Media Corp.*,
359 F. Supp. 2d 337 (S.D.N.Y. 2005)...........................................................................6, 13

*FMC Corp. v. N. Pump Co.*,
668 F. Supp. 1285 (D. Minn. 1987).................................................................................12

*FSP, Inc. v. Societe Generale*,
Case No. 02-cv-4786, 2003 WL 124515 (S.D.N.Y. 2003)...............................................15

*Galli v. Metz*,
973 F.2d 145 (2d Cir. 1992)..........................................................................................6, 13

*GNB Battery Techs., Inc. v. Gould, Inc.*,
65 F.3d 615 (7th Cir. 1995) ...................................................................................... passim

*Greenfield v. Philles Records, Inc.*,
98 N.Y.2d 562 (N.Y. 2002) .................................................................................................6

*I. Meyer Pincus & Associates, P.C. v. Openheimer & Co., Inc.*,
936 F.2d 759 (2d Cir. 1991)................................................................................................1

*Kerr-McGee Chem. Corp. v. Lefton Iron & Metal Co.*,
14 F.3d 321 (7th Cir. 1994) .........................................................................................6, 11

*LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*,
424 F.3d 195 (2d Cir. 2005)............................................................................................6, 8

*McDermott v. City of N.Y.*,
406 N.E.2d 460 (N.Y. 1980)....................15

*N. Shore Gas Co. v. Salomon Inc.*,
152 F.3d 642 (7th Cir. 1995) ....................13

*N.Y. v. Stewart's Ice Cream Co., Inc.*,
64 N.Y.2d 83 (N.Y. 1984) ....................5, 15

*Olin Corp. v. Consol. Aluminum Corp.*,
5 F.3d 10 (2d Cir. 1993) .................... passim

*Phila. Elec. Co. v. Hercules, Inc.*,
762 F.2d 303 (3d Cir. 1985)....................9

*Purolator Products Corp. v. Allied-Signal, Inc.*,
772 F.Supp. 124 (W.D.N.Y 1991) ....................12, 14

*Schumacher v. Richards Shear Co.*,
59 N.Y.2d 239 (N.Y. 1983) ....................5

*SmithKline Beecham Corp. v. Rohm and Haas Co.*,
Case No. 92-cv-5394, 1995 WL 117671 (E.D. Penn. Mar. 17, 1995)....................12

*Thayer v. Dial Indus. Sales, Inc.*,
85 F. Supp. 2d 263 (S.D.N.Y. 2000)....................5

*U.S. v. Iron Mountain Mines, Inc.*,
987 F. Supp. 1233 (E.D. Cal. 1997)....................8, 11

*U.S. v. Vt. Am. Corp.*,
871 F. Supp. 318 (W.D. Mich. 1994) ....................12

**OTHER AUTHORITIES**

C. Wright & A. Miller, Federal Practice & Procedure § 1327 ....................1

**RULES**

Fed. R. Civ. P. 12(b)(6).................... passim

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant International Paper Company ("International Paper"), by its undersigned counsel, submits this memorandum of law in support of its motion to dismiss the complaint against it.

**PRELIMINARY STATEMENT**

Having only partially resolved the environmental liabilities its predecessor incurred (*see* Complaint ¶¶ 23-24), Georgia-Pacific now seeks to stanch any further claims by deflecting them to those its predecessor contracted with thirty-five years ago, in 1972. To brazenly disavow this liability -- liability its predecessor, in fact, contractually assumed as part of an asset purchase -- Georgia-Pacific now resorts to rewriting the plain terms of that time-honored and otherwise satisfied bargain. That improper attempt at rewriting history, however, fails as a matter of law. Indeed, because this dispute can be entirely resolved in International Paper's favor by the interpretation of an unambiguous contractual transfer of liability, Georgia-Pacific's complaint fails to state a claim for relief and must be dismissed.

Notwithstanding Georgia-Pacific's failure to attach it to its Complaint,[1] the agreement between the present parties' predecessors expressly transferred all liability -- environmental or otherwise -- to Georgia-Pacific's predecessor. *See* Serino Dec. Ex. 1 (the "Contract"), at 2 and Annex A. To be sure, that Contract required that Georgia-Pacific's predecessor assume "*all … liabilities of every kind, character or description, whether known or unknown, whether disclosed of undisclosed, whether accrued, absolute, contingent or otherwise*" attributable to the transferred assets. *Id.* That far-reaching assumption was named "consideration" for the deal, as

1 While Georgia-Pacific strategically chose not to attach it, this Court may freely review the relevant contract in deciding this Motion. *See I. Meyer Pincus & Associates, P.C. v. Openheimer & Co., Inc.*, 936 F.2d 759, 762 (2d Cir. 1991) (citing 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1327, at 489 & n. 15 ("when plaintiff fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading")).

the seller, who held the assets for a mere three months prior to the sale, transferred its entire ownership interest along with all related liabilities.

Georgia-Pacific cannot obscure the unambiguous, integrated terms of that Contract through selective quotation or the infusion of improper extrinsic evidence. *See*, *e.g.*, Complaint, at ¶ 16. Equally unavailing is Georgia Pacific's contention that its predecessor could not have contractually assumed environmental claims under statutes, such as CERCLA, enacted after the Contract. *See, e.g.,* Complaint, at ¶ 18. Where the parties intended the contractual transfer of *all liabilities*, including environmental liabilities, the law is clear that the subsequent passage of laws like CERCLA is immaterial happenstance. As a matter of law, therefore, Georgia-Pacific must now discharge any environmental liability accruing under such statutes, which its predecessor plainly assumed.

## BACKGROUND AND COMPLAINT OVERVIEW

### A. The Parties' Relationship to the Operations At Issue.

The environmental liability at issue stems from the activities at four paper mills in New Jersey. *See e.g.*, Complaint, at ¶¶ 22, 25. Constructed between 1863 and 1908, the mills included various property assets, including at least one landfill. *See id.* at 10.

There is no dispute that International Paper's predecessor, Federal Paper Board Co. ("Federal"), actually owned these properties for less than a few months between late 1971 and early 1972. *See* Complaint, at ¶¶ 8, 13. Indeed, Federal's period of ownership is a fractional sliver in the 100+ year history of the sites at issue. *See id.* at ¶¶ 9-11 (noting that one landfill at issue "opened in 1938").

As alleged, Federal purchased these operations from the Riegel Paper Company in December 1971. *See id.* Three months later, in February 1972, Federal sold the entirety of the operations at issue to Georgia-Pacific's predecessor, the Riegel Products Corporation ("RPC").

*See id.* at ¶ 13. RPC's purchase was governed by an extensive Contract, which not only transferred Federal's assets, but also its liabilities related to the New Jersey Operations. *See* Complaint, at ¶ 14; *see generally* Contract. As alleged in the Complaint, RPC and its assets were subsequently purchased by other entities now owned by Georgia-Pacific. *See* Complaint, at ¶ 20.

**B. The Unambiguous Terms of the Contract.**

The Contract transferred to RPC certain Federal operations, assets, and liabilities, which it termed the "New Jersey Operations." *See* Contract, at 1, *see also* Schedule A. Under the Contract, RPC purchased from Federal all of the New Jersey Operations and related assets. *See id.* at 1, *see also* Schedule A. This action involves only liabilities surrounding the New Jersey Operations. *See, e.g.,* Complaint, at ¶ 31.

As consideration for its purchase, RPC agreed to (i) pay Federal the sum of $ 6.7 million and (ii) to assume all of Federal's liabilities associated with the New Jersey Operations:

> The consideration to be paid by RPC for the transfer of the Properties to it shall be (i) the payment by RPC to Federal of $6,770,018.00 (subject to adjustment as provided in Section 3 hereof); and (ii) ***the assumption by RPC of the liabilities of Federal directly attributable to the New Jersey Operations on the Closing Date, including, but not by way of limitation, those listed in Schedule B attached hereto and made a part hereof but excluding those expressly excluded in this Agreement or listed in Schedule C attached hereto and made a part hereof.***

Contract, at 2.[2] As stated, RPC assumed more than just those liabilities explicitly enumerated in the Contract. *See id.* Indeed, Schedule B to the Contract, which named certain specific liabilities assumed by RPC, is titled a "*Non-Exclusive* List of Liabilities Assumed." *Id.* at Schedule B.

Conversely, the Contract expressly identified those liabilities not assumed by RPC. *See id.* at 1 ("excluding those [liabilities] expressly excluded in this Agreement or listed in Schedule C attached hereto and made a part hereof"). To that end, Schedule C, titled "*Liabilities - Not*

---

2 Except where noted, all emphasis has been added, and internal citations and quotations have been omitted.

*Assumed*," identified more than thirteen Federal liabilities and fifty-five Federal accounts not assumed by RPC. *Id.* at Schedule C.

The Contract detailed a closing procedure under which RPC provided Federal with written confirmation of its assumption of liabilities under the Contract. *See id.* at 3. On the closing date, April 3, 1972, RPC executed that confirmation. *See* Complaint, at ¶ 16. In that confirmation, RPC confirmed that it "does hereby assume:"

> ***all of Federal's debts and liabilities of every kind, character or description, whether known or unknown, whether disclosed or undisclosed, whether accrued, absolute, contingent, or otherwise, and whether or not reflected or reserved against in Schedules A or B to the Agreement and which are directly attributable to the New Jersey Operations, as the same exist on the date hereof, and does hereby agree to pay, perform and discharge, when due, all of the said debts and liabilities[.]***

Contract, at Annex A. Like Section 1 of the Contract, that confirmation excluded from assumption by RPC only those specific liabilities specifically identified in Contract Schedule C: "RPC does not assume or agree to pay, perform or discharge any liability or obligation which Schedule C of this Agreement provides shall not be assumed by RPC." *Id.* The confirmation did not identify any other liabilities as exempt from assumption by RPC. *See id.*

The Contract included an integration clause, whereby the parties agreed that their agreement was entirely contained in the Contract. *See id.* at 21.

**C. The Present Dispute.**

Notwithstanding the clear contractual terms recited above, the present dispute concerns the scope of the liabilities RPC assumed under the Contract. Specifically, Georgia-Pacific now challenges whether RPC assumed environmental liability from Federal for the New Jersey Operations under the Contract such that RPC would be liable under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") and other statutes enacted after the closing of the Contract. *See* Complaint, at ¶¶ 30-33.

For the reasons set forth below, RPC indeed assumed such liabilities, and Georgia-Pacific's complaint should be dismissed for failure to state a claim upon which relief can be granted. To the extent International Paper must discharge these assumed liabilities, Georgia-Pacific should reimburse and indemnify International Paper.

**ARGUMENT AND STATEMENT OF LAW**

This Court should dismiss a complaint under Fed. R. Civ. P. 12(b)(6) where the Plaintiff fails to plead plausible facts in support of a claim for relief. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1966-69 (2007) (retiring the "no set of facts" dismissal standard previously stated in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Moreover, Rule 12(b)(6) dismissal is appropriate where a claim is resolved by the interpretation of a contract. *See Thayer v. Dial Indus. Sales, Inc.*, 85 F. Supp. 2d 263, 269 (S.D.N.Y. 2000) ("Issues of contract interpretation are generally matters of law and therefore suitable for disposition on a motion to dismiss.").

At issue here is the interpretation of the Contract between Federal and RPC. Under long-standing New York law,[3] a business entity's purchase of assets from another results in successor liability when that successor corporation expressly or impliedly assumed the liabilities of its predecessor. *See, e.g., Schumacher v. Richards Shear Co.*, 59 N.Y.2d 239, 244-45 (N.Y. 1983). Where a party fails to discharge its assumed obligations, indemnification is an appropriate remedy. *See N.Y. v. Stewart's Ice Cream Co., Inc.*, 64 N.Y.2d 83, 88 (N.Y. 1984) ("In cases where such unfairness would arise from the assumption by a third party of another's debt or obligation, a contract to reimburse or indemnify is implied by law.").

Like other liabilities, parties can contractually allocate responsibility arising under CERCLA. *See GNB Battery Techs., Inc. v. Gould, Inc.*, 65 F.3d 615, 622 (7th Cir. 1995) ("An

---

3 There is no dispute that New York law applies here. *See* Complaint, at ¶ 17.

agreement need not expressly reference CERCLA to transfer liability under CERCLA"). That such a contract was executed prior to CERCLA's passage is irrelevant. *See, e.g.*, *Olin Corp. v. Consol. Aluminum Corp.*, 5 F.3d 10, 15-16 (2d Cir. 1993) (ruling that a broad indemnification provision from a 1973 Purchase Agreement was evidence of the parties' intent that the successor corporation indemnify the predecessor corporation for CERCLA liabilities); *Kerr-McGee Chem. Corp. v. Lefton Iron & Metal Co.*, 14 F.3d 321, 327 (7th Cir. 1994).

Whether an entity has contractually assumed CERCLA or other liability is a matter of contract interpretation. *See id.* The New York Court of Appeals recently explained the importance of upholding the parties' intent when interpreting a contract:

> ***The fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent.*** The best evidence of what parties to a written agreement intend is what they say in their writing. Thus, a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms.

*Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (N.Y. 2002). Further, a contract "should be construed so as to give full meaning and effect to all of its provisions." *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005).

Thus, "[a]n interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless … is not preferred and will be avoided if possible. Rather, an interpretation that gives a reasonable and effective meaning to all terms of a contract is generally preferred to one that leaves a part unreasonable or of no effect." *Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992). Finally, where an agreement contains an integration clause, extrinsic evidence as to the contract's meaning is irrelevant. *See Dujardin v. Liberty Media Corp.*, 359 F. Supp. 2d 337, 356 (S.D.N.Y. 2005) ("the purpose of an integration clause is to require full application of the parol evidence rule in order to bar the introduction of extrinsic evidence to vary or contradict the terms of the writing").

For the reasons set forth below, Georgia Pacific's complaint fails to state a claim for relief against International Paper and must be dismissed.

**A. The Unambiguous Four Corners Of The Contract Compel RPC's Assumption Of All Of Federal's Environmental Liability For The New Jersey Operations.**

The Contract unequivocally manifests and confirms the parties' intent for RPC to assume *all* of Federal's liabilities attributable to the New Jersey Operations, excepting only those liabilities expressly carved out. Because RPC assumed any claim of environmental liability -- statutory or otherwise -- attributable to the New Jersey Operations, Georgia-Pacific's attempts to arbitrarily narrow the terms of the Contract to exclude environmental claims must fail.

First, the Contract clearly establishes that RPC assumed liability for all claims, including all environmental claims. This contractual intent is confirmed by the sheer breadth of the assumption provision:

> Riegel Products Corporation … does hereby assume, pursuant to Section 1 of the Agreement … ***all of Federal's debts and liabilities of every kind, character or description, whether known or unknown, whether disclosed or undisclosed, whether accrued, absolute, contingent, or otherwise, and whether or not reflected or reserved against in Schedules A or B to the Agreement and which are directly attributable to the New Jersey Operations, as the same exist on the date hereof, and does hereby agree to pay, perform and discharge, when due, all of the said debts and liabilities***;

Contract, at Annex A. When parsed, that provision describes at least five open-ended categories of Federal liability attributable to the New Jersey Operations expressly assumed by RPC: (i) liabilities "of every kind, character or description;" (ii) liabilities "whether known or unknown;" (iii) liabilities "whether disclosed or undisclosed;" (iv) liabilities "whether accrued, absolute, contingent, or otherwise;" and (v) liabilities "whether or not reflected or reserved against

Schedules A or B to the Agreement."[4] Liability for all environmental claims at the New Jersey Operations irrefutably falls within ***each and every one*** of these assumed categories of liability. As such, there can be no dispute that RPC contractually assumed these claims. *See, e.g., Iron Mountain Mines, Inc.*, 987 F. Supp. 1233, 1241 (E.D. Cal. 1997) (assigning CERCLA liability to purchaser under contract: "Courts universally have held that language transferring 'all liabilities' is sufficiently broad to include environmental liability.").

Moreover, the Contract repeatedly refers to RPC's sweeping assumption of Federal liabilities as "consideration" for its purchase. *See, e.g.*, Contract, at 2 and Annex A. As the crux of the transaction, the broad terms of the Assumption should therefore be accorded their full scope without limitation. Indeed, as the Second Circuit held in *Olin Corp. v Consolidated Aluminum Corp.*, a broadly-worded assumption in a purchase contract manifests the parties' intent to release the seller from ***all*** liabilities and must be accorded its full import:

> Olin contracted to release itself from all liability arising from its previous ownership of the aluminum business. Clearly the inclusion of the broadly worded contractual provisions affected the selling price Olin received. This was a contract between two large, sophisticated companies who hammered out an agreement and expected to be able to rely on its terms.

5 F.3d 10, 16 (2d Cir. 1993) (holding that CERCLA and all other environmental liability was assumed by purchaser). As in *Olin*, the assumption provision here was drafted to relieve Federal of any lingering liability, transferring the entirety of the Operations and its liabilities to the purchaser, RPC. Any narrowing of the assumption to exclude such liability would therefore improperly limit it beyond its terms. *See, e.g., LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) ("An interpretation of a contract that has the

---

4 Indeed, the only contractual limitation to these categories of assumed liabilities is that they be "directly attributable to the New Jersey Operations." *See* Contract, at Annex A. That limitation is undisputed and of course coextensive with the present dispute. *See, e.g.*, Complaint, at ¶¶ 31-33.

effect of rendering at least one clause superfluous or meaningless … is not preferred and will be avoided if possible.").

Second, notwithstanding Georgia-Pacific's unsupported suggestion to the contrary, the Contract does not -- as its terms require -- expressly exempt any environmental claims from assumption by RPC. This omission is particularly relevant because RPC assumed all other liabilities under the Contract. *See* Contract, at 2 and Annex A.

Indeed, fatal to Georgia-Pacific's claim for relief is its failure to identify any aspect of the Contract that excludes environmental liability. *See* Contract, at 2 ("excluding those [liabilities] *expressly excluded* in this Agreement or listed in Schedule C attached hereto and made a part hereof"). Lest there be any doubt, there is no exemption of "environmental liability" in Schedule C or anywhere else in the Contract. *See generally* Contract. Accordingly, under the Contract's plain terms, RPC expressly assumed such liability. Indeed, as the Third Circuit has explained, broad transfers of liability -- like the assumption provision here -- transfer *all* liabilities, even those not specifically enumerated:

> [U]nder this language Hercules broadly assumed *all* liabilities incurred by Picco as of the closing date, subject to a few limited exceptions. ***In such cases, it is of no consequence that the specific liability at issue is not enumerated.*** Unless this liability comes within one of the express exceptions, Hercules may be held to have assumed it.

*Phila. Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 309 (3d Cir. 1985) (transferring CERCLA liability); *see also GNB Battery Technologies, Inc. v. Gould, Inc.*, 65 F.3d 615, 623 (7th Cir. 1995) (transferring CERCLA liability, noting: "The enumeration of these exemptions indicates that the parties intended to exempt only the situations that they specifically itemized.").

Third, and to the contrary, RPC actually and expressly undertook contractual obligations with inherent environmental costs. In fact, Schedule B of the Contract, providing a "Non-Exclusive List of Liabilities Assumed" by RPC, explicitly identifies multiple obligations that

RPC assumed involving undeniable environmental exposure for the New Jersey Operations. For example, RPC expressly assumed agreements for:

- "installation of a power complex at Milford, N.J.";[5]
- "operation of steam facilities at Milford, N.J";
- "garbage dumping";
- "underground tank and pump"; and
- "the purchase of various gases."

Contract, at Schedule B. Having assumed obligations of that nature at the exact New Jersey Operations now subject to environmental cleanup, RPC understood and accepted the concordant environmental perils associated with the Contract. And RPC cannot disavow the consequences of its obligations now.

Accordingly, as a matter of law RPC assumed all of Federal's environmental liability under the Contract, and Georgia-Pacific's claim should be dismissed. *See Crane Co. v. Coltec Indus., Inc.*, 171 F.3d 733, 737 (2d Cir. 1999) ("If the parties' intent is unambiguously conveyed by the plain meaning of the agreements, then interpretation is a matter of law … resolved by summary judgment or Rule 12(b)(6) dismissal.").

### B. The Enactment Of CERCLA And Other Environmental Statutes After The Contract Closing Does Not Alter RPC's Assumption Of All Of Federal's Environmental Liability For The New Jersey Operations.

As a baseless pretext to avoid RPC's clear contractual assumption, Georgia-Pacific raises the defense that CERCLA liability could not have been assumed because it was not enacted when the Contract closed in 1972. *See* Complaint, at ¶18. Georgia-Pacific's baseless suggestion

5 Not coincidentally, the EPA has determined that Milford, New Jersey is now "likely to require clean-up." Complaint, at ¶ 25.

is wrong as a matter of law. Indeed, the court in *U.S. v. Iron Mountain Mines, Inc.* noted that such argument was a non-starter:

> "Rhone-Poulenc points to California law which generally provides that laws enacted after a contract was formed do not become part of the contract absent a clear statement that the parties intended otherwise. ***But that rule of interpretation ought not to be applied to CERCLA liability because to do so would be inconsistent with CERCLA's retroactive application and with Congress' intention of assigning liability broadly.***

987 F. Supp. 1233, 1240 (E.D. Calif. 1997). In fact, Georgia-Pacific's contention proves too much -- if CERCLA was limited to actions ***after its enactment*** in 1980, there would be no justiciable dispute before this Court. *See* Complaint, at ¶¶ 30-33.

Moreover, it is well-settled law that pre-CERCLA contracts can and do transfer CERCLA liability to purchasing entities. *See, e.g., Aluminum Co. of America v. Beazer East, Inc.*, 124 F.3d 551, 565 (3d Cir. 1991) ("An agreement entered into prior to the passage of CERCLA can allocate CERCLA liabilities."); *Kerr-McGee Chem. Corp. v. Lefton Iron & Metal Co.*, 14 F.3d 321, 327 (7th Cir. 1994) ("That the [1972] indemnity provision was agreed to prior to CERCLA's enactment should not, however, have affected the district court's reading of the agreement. A party may indemnify another party for liability arising out of a law not in existence at the time of contracting.").

As these cases confirm, it is the parties' contractual intent to transfer liability that controls the question of whether CERCLA liability was assumed -- not the timing of CERCLA's enactment. For example, in *Olin Corp. v. Consolidated Aluminum Corp.*, the Second Circuit held that a similar 1973 purchase contract transferring all seller liabilities necessarily transferred CERCLA liability:

> Notwithstanding the fact that CERCLA did not exist at the time these contracts were executed, we hold that as to the Hannibal site, these contract provisions are sufficiently broad to encompass CERCLA liability. The language evidences the

> parties' clear and unmistakable intent that Conalco indemnify for all liabilities related to the Hannibal site, even future unknown liabilities.

5 F.3d 10, 15-16 (2d Cir. 1993).

Here, the parties' contractual intent for RPC to assume ***all*** Federal liabilities -- including liability for all environmental claims -- likewise compels its assumption of any related CERCLA liability. *See* Contract, at Annex A (referring to "***all*** of Federal's debts and liabilities *of* ***every kind, character or description… .***"); *see Beazer*, 124 F.3d at 566 ("this clear and unambiguous pre-CERCLA provision, whereby Beazer 'assumed all of the liabilities and obligations of [ALT] of whatsoever nature,' is sufficiently broad to encompass assumption of CERCLA liabilities"); *Purolator Products Corp. v. Allied-Signal, Inc.*, 772 F.Supp. 124, 132 (W.D.N.Y 1991) ("an agreement which is broad enough to encompass any and all claims, or which clearly refers to environmental liability, has been held to cover CERCLA liability."); *FMC Corp. v. N. Pump Co.*, 668 F. Supp. 1285, 1292 (D. Minn. 1987).

What is more, the inclusive breadth of RPC's contractual assumption stands in stark contrast to contractual schemes held not to transfer CERCLA liability. In fact, unlike those circumstances where CERCLA liability was not assumed, the parties here expressly chose ***not*** to limit RPC's assumption to only specifically-enumerated liabilities. *Cf. SmithKline Beecham Corp. v. Rohm and Haas Co.*, Case No. 92-cv-5394, 1995 WL 117671, at * 2 (E.D. Penn. Mar. 17, 1995) ("The specified liabilities that SKB agreed to assume do not refer to any liability that R&H may have had for the pre-R&H contamination of the site."); *U.S. v. Vt. Am. Corp.*, 871 F. Supp. 318 (W.D. Mich. 1994) ("the liability is clearly one which would have been set forth in the Assumption Agreement had all the facts with respect thereto been known when the Assumption Agreement was signed.").

Such contracts are entirely distinguishable from the Contract here, which explicitly transferred "***all***" liabilities, "whether accrued, absolute, contingent or otherwise." *Cf. N. Shore Gas Co. v. Salomon Inc.*, 152 F.3d 642, 652 n.5 (7th Cir. 1995) (discussing *GNB Battery Techs., Inc. v. Gould, Inc.*, 65 F.3d 615, 621 (7th Cir. 1995): "Unlike the 1941 Plan, the contract in GNB stated that purchaser would assume liabilities of any nature 'whether accrued, absolute, contingent or otherwise.' ***To hold that that contract excluded CERCLA liabilities would have therefore 'eviscerated' many terms in the agreement."***). Accordingly, there is no basis to limit RPC's assumption of Federal's liability to exclude CERCLA and other states.

**C. Even Under Georgia-Pacific's Flawed Reading Of The Contract, RPC Has Assumed All Of Federal's Environmental Liability For The New Jersey Operations.**

In another futile attempt at limiting the broad terms of the Contract, Georgia-Pacific seeks to narrowly recast the contractual assumption to only Federal liabilities "existing" as of the 1972 Contract closing date. *See* Complaint, at ¶¶ 14, 18 (alleging that "RPC would assume only certain liabilities of Federal that existed on the closing date").[6] That strained interpretation is of course, at odds with the Contract's clear terms.[7]

---

6 To support its contention, Georgia-Pacific resorts to the improper injection of extrinsic evidence. *See, e.g.*, Complaint, at ¶ 12 (referring to a 1971 "letter of intent"). Given the presence of an integration clause in the Contract (*see* Contract, at 21) and the unambiguous terms of the Contract, such extrinsic evidence is irrelevant and must be ignored. *See, e.g., Dujardin v. Liberty Media Corp.*, 359 F. Supp. 2d 337, 356 (S.D.N.Y. 2005).

7 In the first instance, Georgia-Pacific's interpretation is implausible. Under the express terms of the Contract, RPC assumed "all of Federal's debts and liabilities of every kind, character, and description." Contract, at Annex A. The only limitation on the liabilities assumed by RPC is that they be directly attributable to the New Jersey Operations as such operations existed on the Closing Date. *See id.* at 1 ("the assumption by RPC of the liabilities of Federal ***directly attributable to the New Jersey Operations on the Closing Date***"). Georgia-Pacific's interpretation would improperly read this provision out. *See Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992). Further, nowhere does the Contract limit RPC's assumption to only "the liabilities of Federal on the Closing Date," as Georgia-Pacific now suggests. Because it is unsupported by the four corners of the Contract, this Court need not even entertain Georgia-Pacific's reading. *See, e.g., Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005) (affirming dismissal, noting: "Insofar as the complaint relies on the terms of Cablevision's customer agreement, therefore, we need not accept its description of those terms, but may look to the agreement itself."). Assuming *arguendo*, Georgia-Pacific's interpretation is plausible, it remains inconsequential for the reasons set forth in the text that follows.

Yet even under Georgia-Pacific's tortured interpretation, RPC remains contractually liable for subsequently-arising CERCLA and other environmental claims. Because the Contract clearly expressed the parties' intent to expansively define the liabilities assumed by RPC, a purported limitation on when such claims arose is, as a matter of law, immaterial. In fact, in *A-C Reorganization Trust v. DuPont*, the Eastern District of Wisconsin, applying New York contract law, interpreted a nearly identical assumption provision to expressly include CERCLA liability, further noting that whether those claims arose before or after the closing date had no bearing on the question of assumed CERCLA liability:

> Furthermore, although the *Olin* agreement specifically referenced liabilities arising after the closing date, the instant agreements do not. ***However, the language referring to liabilities "of any kind, character or description, whether accrued, absolute, contingent or otherwise … as all the same shall exist at the Closing Date" suffices to cover CERCLA liability that would later accrue for a predecessor's previous acts***."

Case No. 94-cv-574, 1997 WL 381962, at * 6 (E.D. Wis. Mar. 10, 1997).

Like the contract in *A-C Reorganization Trust*, the Contract here transfers "***liabilities of every kind, character, or description*** … ***whether accrued, absolute, contingent, or otherwise***." *See* Contract, at Annex A. The breadth of that exact language has been expressly construed by courts to control the question of assumption of subsequent CERCLA claims. *See Purolator Prods. Corp. v. Allied-Signal, Inc.*, 772 F.Supp. 124, 132 (W.D.N.Y 1991) ("There is no suggestion in this language, or anywhere else in the agreement, that the effect of this clause was limited to particular claims or types of liability. Facet clearly agreed to take the assets along with *any* liabilities that might attach to them."); *see also GNB Battery Techs., Inc. v. Gould, Inc.*, 65 F.3d 615, 623 (7th Cir. 1995) ("Plainly, the Agreement contemplated the transfer of all of Gould's liabilities whether they were known or not, and whether they had been identified and responded to or not."); Section A, *supra.*

Because even under Georgia-Pacific's proffered interpretation its claim for relief remains implausible, dismissal is appropriate. *See Twombly*, 127 S. Ct. 1955, 1974 (2007) ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").

**D. Georgia-Pacific Is Not Entitled To A Declaration That It Need Not Indemnify International Paper For Federal's Environmental Liability.**

As stated above, the unambiguous terms of the Contract compel the denial of Georgia-Pacific's claim that RPC did not assume Federal liability for the New Jersey Operations under CERCLA and other environmental statutes. Georgia-Pacific's further request for a judicial declaration that it need not indemnify International Paper for the subsequent discharge of any such claims on Federal's behalf (*see* Complaint, at ¶ 33) is equally unavailing.

As a threshold matter, International Paper has yet to discharge any Federal liabilities under CERCLA or any other environmental statute.[8] *See* Complaint, at ¶ 27 (alleging that "International Paper to date has refused to settle or participate" with the EPA on this issue); *see also McDermott v. City of N.Y.*, 406 N.E.2d 460, 462 (N.Y. 1980) ("the [indemnification] cause of action is not complete until loss is suffered"); *FSP, Inc. v. Societe Generale*, Case No. 02-cv-4786, 2003 WL 124515 (S.D.N.Y. 2003) ("Since, to date, no liability has been imposed upon the plaintiff, those claims seeking indemnification are premature."). Accordingly, Georgia-Pacific's request for declaratory relief need not be entertained. *See Olin Corp. v. Consol. Aluminum*

8 To the extent that International Paper actually discharges claims expressly assumed by RPC under the Contract, Georgia-Pacific, as RPC's successor, must accordingly reimburse and indemnify International Paper. *See A-C Reorg. Trust v. DuPont*, Case No. 94-cv-574, 1997 WL 381692, at * 6 (E.D. Wis. Mar. 10, 1997) (applying New York law) ("the effect of Reichhold agreeing to pay, perform and discharge Tenneco Chemical's obligations, debts and liabilities is best viewed as an indemnification"); *see also N.Y. v. Stewart's Ice Cream Co., Inc.*, 64 N.Y.2d 83, 88 (New York 1984) ("In cases where such unfairness would arise from the assumption by a third party of another's debt or obligation, a contract to reimburse or indemnify is implied by law."); *McDermott*, 50 N.Y.2d at 217 ("It is nothing short of simple fairness to recognize that a person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity.").

*Corp.*, 5 F.3d 10, 17 (2d Cir. 1993) (dismissing a request for a judicial declaration of the CERCLA indemnification obligations for sites not subject to EPA penalties as premature).

**CONCLUSION**

For the reasons stated above, Georgia-Pacific's complaint should be dismissed with prejudice, and its request for declaratory relief denied.

Dated: December 3, 2007
New York, New York

KIRKLAND & ELLIS LLP

/s Joseph Serino, Jr.

Joseph Serino, Jr.
Atif Khawaja
Citigroup Center
153 East 53rd Street
New York, New York 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

*Counsel for Defendant International Paper Co.*