Aldine ™ Enviro-Tab ™

Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GEORGIA-PACIFIC CONSUMER PRODUCTS,
LP,

          Plaintiff,

        -against-

INTERNATIONAL PAPER COMPANY,

         Defendant.

**07 CIV 9627**

Civil Action No. _____

COMPLAINT

OCT 30 2007
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff Georgia-Pacific Consumer Products, LP ("Georgia-Pacific"), by and

through its attorneys, Arnold & Porter LLP, hereby states and alleges as follows:

**NATURE OF THE ACTION**

1.     This is an action for a declaratory judgment pursuant to the Federal

Declaratory Judgment Act, 28 U.S.C. §§ 2201-02. In 1972, Riegel Products Corporation

("RPC") purchased four paper mills and related properties and assets located in New

Jersey (the "New Jersey Operations") from Federal Paper Board Company, Inc.

("Federal"). Pursuant to a February 23, 1972 Purchase Agreement ("Purchase

Agreement") and a related April 3, 1972 Assumption Agreement ("Assumption

Agreement") (collectively, "Purchase and Assumption Agreements"), RPC agreed to

assume certain liabilities of Federal that related to the transferred assets and that existed

on the closing date of the transaction. Defendant International Paper Company

("International Paper") is a successor in interest to Federal and Georgia-Pacific has been

alleged by International Paper to be a successor in interest to RPC.

2.    The United States Environmental Protection Agency ("EPA") has determined that hazardous substances exist on certain of the properties comprising the New Jersey Operations. Georgia-Pacific has entered into an Administrative Order on Consent with the EPA pursuant to the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 *et seq.* ("CERCLA"), to perform a Remedial Investigation and Feasibility Study at one of the properties. The EPA has also indicated that clean-up is likely to be required at another site. Georgia-Pacific and International Paper disagree with respect to whether Georgia-Pacific's alleged predecessor, RPC, assumed the liabilities of Federal under CERCLA and other federal or state environmental clean-up statutes enacted after April 3, 1972 related to the New Jersey Operations pursuant to the Purchase and Assumption Agreements. Georgia-Pacific believes that it is entitled to bring a cost recovery action against, and to seek contribution from, International Paper with respect to costs incurred pursuant to CERCLA and any other applicable environmental clean-up statutes. International Paper disagrees and has instead demanded that Georgia-Pacific indemnify it for any costs that International Paper may incur.

3.    Georgia-Pacific seeks a declaration that RPC did not assume the liabilities of Federal under CERCLA and other federal or state environmental clean-up statutes enacted after April 3, 1972, and that those liabilities therefore remained with Federal and now rest with International Paper.

## JURISDICTION AND VENUE

4.    The Court has subject matter jurisdiction in this case pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5.    The Court has personal jurisdiction over International Paper because International Paper is present in, incorporated in, and transacting business in, the State of New York.

6.    Venue is appropriate in this District pursuant to 28 U.S.C. § 1391.

## PARTIES

7.    Georgia-Pacific is, for purposes of determining diversity of citizenship under 28 U.S.C. §1332, a citizen of the states of Virginia, Georgia, Delaware, and Kansas because the entities that own Georgia-Pacific are each citizens of one or more of those states.

8.    Upon information and belief, International Paper is a New York corporation with its principal place of business in Memphis, Tennessee.

## FACTUAL BACKGROUND

### Federal's Ownership Of The New Jersey Operations And Its Sale Of The Operations To RPC

9.    In December 1971, Federal purchased and merged with Riegel Paper Company ("Old Riegel"), an entity wholly separate and distinct from RPC. By virtue of the merger, Federal assumed all liabilities of Old Riegel, including Old Riegel's liability for costs that might later be incurred under CERCLA related to its properties.

10.    Old Riegel's assets included the New Jersey Operations. The New Jersey Operations consisted of four paper mills located in Warren and Hunterdon Counties in New Jersey. The mills, which were opened between the years 1863 to 1903, were known as the "Milford Mill," the "Warren Glen Mill," the "Hughesville Mill," and the "Riegelsville Mill." Assets related to the business conducted at these mills included several parcels of land in addition to the properties on which the mills were located.

11.    One of these additional parcels of land is the location of a landfill that Old Riegel opened in 1938 to receive wastes from the four mills. This property is currently known as the "Crown Vantage Landfill." Upon information and belief, the mills did not dispose of wastes at the landfill after RPC purchased the New Jersey Operations.

12.    In or about 1971, William M. Riegel and John Kennedy, an officer of Federal, executed an undated letter of intent ("Letter of Intent") that stated that Mr. Riegel and Federal would "work toward the purchase, by a corporation to be organized by [Mr. Riegel] and to be called Riegel Products Corporation ("RPC"), of the New Jersey Operations . . . ." The letter outlined the terms of the transaction and included the following as one of its provisions:

> RPC will assume the outstanding obligations,
> commitments, contracts, and liabilities of Federal <u>at the</u>
> <u>effective time of purchase</u> which are directly related to the
> New Jersey operations . . . .

(emphasis added). The parties' use of the phrase "at the effective time of purchase" clearly evidenced the parties' intent that RPC would assume only certain liabilities of Federal that existed at the time of the purchase.

13.    RPC and Federal subsequently executed a formal Purchase Agreement, dated February 23, 1972. The Purchase Agreement provided that it "shall be governed by and construed in accordance with the laws of the State of New York."

14.    Pursuant to the Purchase Agreement, Federal agreed to sell the New Jersey Operations to RPC in exchange for $6,770,018.00 (subject to certain adjustments specified in the agreement) and the assumption by RPC of certain liabilities of Federal. The Purchase Agreement provided, in paragraph 1, that the consideration paid by RPC would include:

> [T]he assumption by RPC of the liabilities of Federal directly attributable to the New Jersey Operations on the Closing Date, including, but not by the way of limitation, those listed in Schedule B attached hereto and made a part hereof but excluding those expressly excluded in this Agreement or listed in Schedule C attached hereto and made a part hereof.

(emphasis added). The parties' use of the phrase "on the Closing Date," consistent with the wording of the Letter of Intent, clearly evidenced the parties' intent that RPC would assume only certain liabilities of Federal that existed on the closing date.

15.    The Purchase Agreement stated in paragraph 2 that, at the closing, RPC would provide "a written instrument of assumption by RPC of the liabilities and obligations of Federal to be assumed pursuant to Section 1 hereof in the form attached hereto as Annex A." The Purchase Agreement included as Annex A a form assumption agreement.

16.    On the closing date, April 3, 1972, RPC executed the Assumption Agreement in the form attached as Annex A to the Purchase Agreement. The Assumption Agreement provided in relevant part that RPC would assume:

> (a) all of Federal's debts and liabilities of every kind, character or description, whether known or unknown, whether disclosed or undisclosed, whether accrued, absolute, contingent or otherwise, and whether or not reflected or reserved against in Schedules A or B to the Agreement and which are directly attributable to the New Jersey Operations, as the same exist on the date hereof, and does hereby agree to pay, perform and discharge, when due, all of the said debts and liabilities . . . .

(emphasis added). The parties' use of the phrase "as the same exist on the date hereof," consistent with the wording of the Letter of Intent and the Purchase Agreement, clearly evidenced the parties' intent that RPC would assume only certain liabilities of Federal that existed on the closing date.

17.    The Assumption Agreement did not contain a choice of law provision, but that agreement is governed by the laws of the State of New York because it was part of the Purchase Agreement and attached thereto as Annex A, and because the Purchase and Assumption Agreements were part of the same transaction and therefore must be construed together.

18.    The Purchase and Assumption Agreements made clear that RPC assumed only certain liabilities of Federal that existed at the time of the closing. RPC did not assume any future liabilities of Federal, such as liabilities that might arise under laws that did not exist at the time of the transaction. For example, any liabilities that Federal might have for CERCLA clean-up costs for the New Jersey Operations constituted future

- 6 -

liabilities because CERCLA was not enacted until signed by President Carter on

December 11, 1980 -- more than eight years after the Purchase and Assumption

Agreements were executed. Thus, RPC did not assume any CERCLA liabilities that

Federal might have for the New Jersey Operations.

**Subsequent Corporate History**
**Of Federal And RPC**

      19.     In 1996, Federal merged into International Paper. As a result of the

merger, International Paper assumed all of the debts and liabilities of Federal. The

liabilities assumed by International Paper included Federal's liabilities with respect to the

New Jersey Operations under CERCLA and other environmental clean-up statutes

enacted after April 3, 1972.

      20.     In 1973, RPC became a wholly-owned subsidiary of Southwest Forest

Industries, Inc. In 1977, the Fort James Corporation, then named James River

Corporation, purchased the stock of RPC. In 1997, the Fort James Corporation merged

into Fort James Operating Company ("FJOC"). Georgia-Pacific acquired FJOC in 2000.

International Paper contends that, as a consequence of these transactions, Georgia-Pacific

succeeded to the liabilities of Fort James Corporation.

      21.     Georgia-Pacific does not currently own any of the properties comprising

the New Jersey Operations.

**Environmental Contamination**
**At The New Jersey Operations**

22.     The EPA has determined that hazardous substances were disposed of at the Crown Vantage Landfill and that investigation and clean-up activities are required at the site.

23.     The EPA believes that Georgia-Pacific is a potentially responsible party under CERCLA for clean-up of the Crown Vantage Landfill. Georgia-Pacific maintains that it has no liability for clean-up of the Crown Vantage Landfill because RPC did not dispose of any wastes at the site and did not assume any CERCLA liabilities of Federal.

24.     Nevertheless, in an effort to be environmentally responsible and a good corporate citizen, Georgia-Pacific entered into an Administrative Order on Consent with the EPA concerning the Crown Vantage Landfill on September 27, 2007. Pursuant to that agreement, Georgia-Pacific must conduct a Remedial Investigation and Feasibility Study to investigate the nature and extent of the contamination at the site and to develop and evaluate potential remediation alternatives and pay all the EPA's oversight costs.

25.     The EPA has determined that environmental contamination likely to require clean-up also exists at the Milford Mill site.

26.     The clean-up activities that Georgia-Pacific has undertaken, and the additional clean-up activities it likely will undertake in the future, will cost substantial sums of money.

27.     The EPA has determined that International Paper also is a potentially responsible party under CERCLA for clean-up costs to be incurred for the Crown Vantage Landfill and Milford Mill. The EPA has attempted to negotiate a settlement

with International Paper with respect to the Crown Vantage Landfill and sought International Paper's participation in the September 27, 2007 Administrative Order on Consent, but International Paper to date has refused to settle or participate.

**The Parties' Dispute**

28. Georgia-Pacific and International Paper disagree concerning their respective liabilities for CERCLA clean-up costs for the properties that comprise the New Jersey Operations. Georgia-Pacific contends that it has no liability for the Crown Vantage Landfill because it is not a potentially responsible party within the meaning of CERCLA and because RPC did not assume Federal's CERCLA liabilities for the site. It also contends that it is entitled to bring a cost recovery action against, or seek contribution from, International Paper to the extent it pays or has paid more than its equitable share of CERCLA response costs.

29. International Paper contends that Georgia-Pacific has no entitlement to bring a cost recovery action against, or seek contribution from, International Paper because RPC assumed the CERCLA liabilities of Federal. International Paper also contends that, to the extent it might be held liable for response costs by the EPA, Georgia-Pacific has a duty to indemnify it because RPC allegedly assumed the CERCLA liabilities of Federal. International Paper memorialized its demand for indemnification in a letter to Georgia-Pacific, dated September 11, 2007.

**CLAIM FOR DECLARATORY RELIEF**

30. Georgia-Pacific repeats and realleges each and every allegation set forth in paragraphs 1 through 29 above as if fully set forth herein.

31.    The parties' dispute concerning the interpretation of the Purchase and Assumption Agreements, the parties' liabilities for CERCLA clean-up costs for the New Jersey Operations, and the parties' respective rights to bring a cost recovery action and/or seek contribution from each other constitutes an actual, ongoing, and justiciable controversy.

32.    A judicial resolution of whether Federal's liabilities under CERCLA and other environmental clean-up statutes enacted after April 3, 1972 were assumed by RPC in 1972 or, instead, remained with Federal (and therefore passed to International Paper when International Paper merged with Federal) will materially clarify the parties' respective rights and obligations. It will resolve the considerable uncertainty and controversy that currently exists between the parties with respect to those rights and obligations. It will also advance the parties' ability to attempt to reach agreement with the EPA concerning environmental clean-up of the properties comprising the New Jersey Operations and will facilitate ultimate clean-up at the sites.

33.    Georgia-Pacific seeks a declaration from the Court that (1) RPC did not assume Federal's liability under CERCLA or any other applicable environmental clean-up statute enacted after April 3, 1972 with respect to the New Jersey Operations under the Purchase and Assumption Agreements, and (2) International Paper is not entitled to indemnification from Georgia-Pacific for clean-up costs for the New Jersey Operations to the extent any claim for indemnification is based on a contention that RPC assumed the liabilities of Federal under CERCLA or any other federal or state environmental clean-up statute enacted after April 3, 1972.

## PRAYER FOR RELIEF

WHEREFORE, Georgia-Pacific demands judgment against International Paper as follows:

1.    Declaring that RPC did not assume any of Federal's liabilities under CERCLA or any other federal or state environmental clean-up statute enacted after April 3, 1972 with respect to the New Jersey Operations;

2.    Declaring that International Paper is not entitled to indemnification from Georgia-Pacific for any clean-up costs associated with the New Jersey Operations to the extent any claim for indemnification is premised on a contention that RPC assumed the liabilities of Federal under CERCLA or any other federal or state environmental clean-up statute enacted after April 3, 1972; and

3.    Awarding Georgia-Pacific such other and further relief as to which it may be entitled.

Dated:  October 30, 2007

Respectfully submitted,


By: _____
Ingo W. Sprie, Jr.
David G. Kleiman
ARNOLD & PORTER LLP
399 Park Avenue
New York, New York  10022-4690
Tel: (212) 715-1000
Fax: (212) 715-1399

Counsel for Plaintiff Georgia-Pacific
Consumer Products, LP

- 11 -