RIEGEL PAPER CORPORATION
TRIAL BALANCE
PERIOD 13 DATE 12/2/72

| # | | CONTROLLER | PAPER-NJ |
|---|---|---|---|
| 248 | ACCOUNTS PAY. - ACCRUED | | |
| 249 | Accrued Loc. Prop. Tax | | (3,092.50) |
| | Accrued Franchise Tax | | |
| 252 | Accrued Royalties | | (111,302.92) |
| 253 | Accrued Rent | (200,000.00) | |
| 254 | Accrued Sales & Use Tax | (20,933.55) | |
| 255 | Accrued Int. - Comm. Fee | (7,614.80) | |
| 256 | Accrued Int. - Cr. Notes | (1,571.74) | |
| 257 | Accrued Int. - Debentures | (26,136.10) | |
| 259 | Accrued Int. - Stock Option | (222,937.98) | |
| | Total Accts. Payable | (3,265,696.12) | (2,103,654.58) |
| 261 | ACCOUNTS PAY. - INTRA-CO. | | |
| 262 | Accts. Pay. - Comm. Con | (124,900.00) | |
| 263 | Accts. Pay. - Laminex | | |
| | Accts. Pay. - Techbuilt | (220,706.77) | |
| 264 | Accts. Pay. - Mohawk | (776,800.71) | (27.88) |
| 265 | FUNDED DEBT CURRENT | | |
| | Res. For Ret. - Debentures | (1,253,000.00) | |
| 268 | INCOME TAX - CURRENT | | |
| | Res. - Fed. Inc. Tax. | 478,815.91 | |
| 269 | Res. - State Inc. Tax. | 14,444.32 | |
| | Total Inc. Tax. - Cur. | 493,260.25 | |
| 270 | Misc. Investment Cr. Liab. | (663,000.00) | |
| | GENERAL RESERVES | | |
| 272 | Res. For Shutdown | | |
| 273 | Res. For Contg. - Gen. | | |
| 274 | Res. For Contributions | | |
| | Total General Reserves | | |
| 278 | DIVIDENDS PAYABLE | | |
| | Dividends Payable | (203,125.00) | |
| | TOTAL CURRENT LIAB. | (6,202,598.37) | (2,103,692.26) |
| | NET CURRENT ASSETS | 19,666,805.50 | 1,636,447.48 |

RIEGEL PAPER CORPORATION
TRIAL BALANCE
PERIOD 13 DATE 1/2/72

| | CONTROLLER | PAPER-NJ |
|---|---|---|
| **CAPITAL ASSETS** | | |
| 280 Land | 844 329 06 | |
| 281 Buildings | 39 915 993 22 | |
| 282 Machinery, F & F | 129 387 584 66 | |
| 283 Proceeds Sale | | |
| 284 P.O. in Process | | |
| Total Land, Bldg, Mach. | 170 147 906 94 | 550 281 54 |
| 285 Res. Dispos. & Redeploy | (10 791 816 00) | |
| 285 Res. For Depreciation | (75 045 718 43) | |
| 286 Res. Depr. – Current Year | (7 779 747 00) | |
| Total Res. For Depr. | (93 617 281 43) | |
| Net Land, Bldg, Mach. | 76 530 625 51 | 550 281 54 |
| 287 Timberlands | 14 473 281 85 | |
| 288 Proc. Sale – Timberlands | | |
| 289 P.O. in Proc. – Timbl'ds | | |
| Total Timberlands | 14 473 281 85 | |
| 290 Res. For Depletion | (4 630 572 87) | |
| 291 Res. Depl. – Current Year | | |
| Total Res. For Depletion | (4 630 572 87) | |
| 292 Woodlands Capitalized Hold. | | |
| Net Timberlands | 9 842 908 98 | |
| **TOTAL CAPITAL ASSETS** | 86 373 534 49 | 550 281 54 |
| 306 Receivable-Comm. Concepts | | |
| 307 Anson Wood Products Lease | 100 000 00 | |
| 308 Patents | | |
| 309 Deferred Legal Expense | | |
| 310 Financing Exp. Deferred | 348 692 72 | |
| 311 Leasehold Improvements | 115 514 11 | |
| 312 Vouchers Undist. – Long Term | 15 500 55 | |
| 313 Receivables – Emp. Loans | 9 735 89 | 6 259 12 |
| 314 Securities – Other Co. | 4 501 00 | |
| 315 Rec. – 2nd Mort. R'wood. | | |
| 316 Options | | |
| 317 Manuf. Mach. Rentals | | |
| 318 Goodwill | (60 000 00) | |
| 319 Leased Mach. Rentals | | |
| Total Other Assets | 533 934 27 | 6 259 12 |

PAGE 6 OF 7

RIEGEL PAPER CORPORATION
TRIAL BALANCE
PERIOD 13  DATE 1/2/72

| | | CONTROLLER | PAPER-NJ |
|---|---|---|---|
| 320 | Investment in Subsidiaries | 2,633,282.25 | |
| 321 | Investment in Non-Consol. Sub. | 300,074.00 | |
| 322 | Investment in Affiliates | 61,670.60 | |
| 323 | Investment in Georgia-Pacific | 4,396,728.00 | |
| | TOTAL ASSETS | 113,966,029.11 | 2,192,988.14 |
| | INC. TAX DEFERRED | | |
| 330 | Res. F.I.T. - Deferred | 13,462,491.11 | |
| 331 | Res. S.I.T. - Deferred | 528,000.00 | |
| | Total Inc. Tax - Def | 12,934,491.11 | |
| | FUNDED DEBT | | |
| 335 | Notes Payable - Long item | (9,194,575.90) | |
| 336 | 5 1/4% S.F. Debentures | (5,435,000.00) | |
| 337 | 3 7/8% S.F. Debentures | (3,540,000.00) | |
| 338 | 3 3/4% S.F. Debentures | (4,800,000.00) | |
| 339 | 6 3/8% S.F. Debentures | (12,500,000.00) | |
| | Total Funded Debt | (35,469,575.90) | |
| 340 | Res. for Extraordinary Losses | (5,905,713.17) | |
| | NET ASSETS | 69,656,249.83 | 2,192,988.14 |
| | STOCKHOLDERS EQUITY | | |
| 345 | Preferred Stock | (12,500,000.00) | |
| 346 | Common Stock | (22,442,180.00) | |
| 347 | Paid in Surplus | (15,367,474.92) | |
| 349 | Dividends - Preferred | 812,500.00 | |
| 350 | Dividends - Common | 1,977,720.90 | |
| 351 | Profit and Loss | 10,026,129.99 | |
| 352 | Earned Surplus | (36,043,276.76) | |
| | Total Earned Surplus | (23,176,915.87) | |
| 353 | Treasury Stock | 1,371,715.60 | |
| | TOTAL STOCKHOLDER EQUITY | (72,114,855.19) | |

RIEGEL PAPER CORPORATION
TRIAL BALANCE
PERIOD 13  DATE 1/2/72

| | CONTROL ACCOUNT - CORP. | CONTROLLER | PAPER-N |
|---|---|---|---|
| 360 | Paper Division | 1,819,690.14 | 1,819,690.14 |
| 361 | Paper - North Carolina | (6,249,002.31) | |
| 366 | Packaging Division | 6,124,966.77 | |
| 367 | Industrial Products Div. | (1,195,071.15) | |
| 368 | Inter Division Control | 958,021.91 | |
| 370 | Forest Products Div. | -- | |
| 601 | | 28,490,000.00 | |
| | CONTROL ACCOUNT - IFO | | |
| 600 | Customer Sales | | (37,537,487.72) |
| 610 | Discounts | 193,565.09 | 474,104.00 |
| 615 | Freight on Customer Sales | | 560,754.42 |
| 620 | Customer Returns & Allow. | 1,066.78 | 476,400.29 |
| 625 | Discounts & Commissions | | 82,048.64 |
| | Net Customer Sales | 28,397,503.78 | (35,744,180.57) |
| 630 | Inter Division Sales | | (8,326,248.24) |
| 631 | Freight - Inter Division | | |
| 632 | Discounts - Inter Division | | |
| 633 | Ret. & Allow.- Inter Div. | | |
| | Total Accounts 600-633 | 28,397,503.78 | (44,070,428.61) |
| 650 | Intra Division Sales | | (5,544,883.42) |
| 651 | Freight - Intra Division | | |
| 652 | Discounts - Intra Division | | |
| 653 | Ret. & Allow.- Intra Div. | | |
| | Total Accounts 600-653 | 28,397,503.78 | (49,615,312.03) |
| 670 | Intra Unit Sales | | (64,662.36) |
| 671 | Freight - Intra Unit | | |
| 672 | Discounts - Intra Unit | | |
| 673 | Ret. & Allow.- Intra Unit | | |
| | Grand Total Sales | 28,397,503.78 | (49,679,974.39) |
| 681 | Operating Ledger | (27,775,000.00) | 23,142,329.49 |
| 680 | Cost of Materials | 3,618,376.06 | 26,385,897.90 |
| 700 | Elim. Intra Div.Pft.Inv. | | (221,551.00) |
| 750 | Cost of Sales | (24,156,623.94) | 49,306,676.39 |
| | Div. Income from Oper. | 4,240,879.84 | (375,298.00) |

EXHIBIT 4

TO

SCHEDULE A

| U.S. Patent Number | Foreign Patent No. | Inventor | Date Issued | Country |
|---|---|---|---|---|
| 2,484,676 | | G. L. Bidwell | 10-11-49 | |
| 2,406,990 | 497,799 | George Borden, et al<br>George Borden, et al | 9-3-46<br>11-7-53 | Canada |
| 2,488,700 | | George L. Bidwell | 11-22-49 | |
| 2,610,939 | 526,332 | Jacob I. Fisher, et al<br>Jacob I. Fisher, et al | 9-16-52<br>6-12-56 | Canada |
| 2,635,045 | | Andrew Bixler, et al | 4-14-53 | |
| 2,635,958 | | Daniel Dieffenderfer, et al | 4-21-53 | |
| 2,574,526 | 528,553 | George Borden, Jr.<br>George Borden, Jr. | 11-13-51<br>7-31-56 | Canada |
| 2,668,769 | | Ralph W. Schlienz | 2-9-54 | |
| 2,716,315 | 544,917 | Harry L. Jacoby<br>Harry L. Jacoby | 8-30-55<br>8-13-57 | Canada |
| 2,776,913 | 566,816 | Wm. E. Anderson<br>Wm. E. Anderson | 1-8-57<br>12-2-58 | Canada |
| 2,636,833 | | George Borden, Jr. | 4-28-53 | |
| 2,792,765 | 561,482 | Robert Kerridge, et al<br>Robert Kerridge, et al | 5-21-57<br>8-5-68 | Canada |
| 2,854,894 | 624,358 | Richard Kline, et al<br>Richard Kline, et al | 10-7-58<br>7-25-61 | Canada |
| 2,793,117 | 562,463 | Ward D. Harrison<br>Ward D. Harrison | 5-21-57<br>8-26-58 | Canada |
| 2,895,868 | 598,526 | Donald Magill, Jr.<br>Donald Magill, Jr. | 7-21-59<br>5-24-60 | Canada |
| 3,121,657 | | Donald Magill, Jr. | 2-18-64 | |
| 2,960,559 | 665,915 | Donald Magill, Jr.<br>Donald Magill, Jr. | 11-15-60<br>7-2-63 | Canada |
| 2,975,094 | 623,976 | Wm. L. Anderson<br>Wm. L. Anderson | 3-14-61<br>7-18-61 | Canada |

2

| U.S. Patent Number | Foreign Patent No. | Inventor | Date Issued | Country |
|---|---|---|---|---|
| 3,057,772 | | Donald Magill, Jr.,et al | 10-9-62 | |
| | 626,091 | Donald Magill, Jr.,et al | 8-22-61 | Canada |
| 3,174,889 | | Wm. E. Anderson, et al | 3-23-65 | |
| | 613,238 | Wm. E. Anderson, et al | 1-24-61 | Canada |
| 3,046,823 | | James E. Cole | 7-31-62 | |
| 3,052,295 | | Donald Magill, Jr. | 9-24-62 | |
| | 616,830 | Donald Magill, Jr. | 3-21-61 | Canada |
| 3,057,771 | | Willard Schenck | 10-9-62 | |
| | 679,287 | Willard Schenck | 2-4-64 | Canada |
| 3,012,928 | | Robert M. Whitman | 12-12-61 | |
| 3,096,229 | | Robert M. Whitman | 7-2-63 | |
| | 722,615 | Robert M. Whitman | 11-30-65 | Canada |
| 3,119,733 | | Joseph Wilson, et al | 1-28-64 | |
| | 697,179 | Joseph Wilson, et al | 11-3-64 | Canada |
| 3,095,345 | | Richard Jackson, et al | 6-25-63 | |
| 3,095,315 | | Donald Magill, et al | 6-25-63 | |
| 3,182,632 | | Janis Vazdikis | 5-11-65 | |
| | 746,428 | Janis Vazdikis | 11-15-66 | Canada |
| 3,293,115 | | Trygve C. Lucken | 12-20-66 | |
| | 822,583 | Trygve C. Lucken | 9-9-69 | Canada |
| 3,350,484 | | Donald Magill | 10-31-67 | |
| | 827,777 | Donald Magill | 11-18-69 | Canada |
| 3,339,162 | | H. Lee Burnsteel, et al | 8-29-67 | |
| 3,458,375 | | Richard Williams | 7-29-69 | |
| | 791,098 | Richard Williams | 7-30-68 | Canada |
| 3,408,240 | | Richard Williams | 10-20-68 | |
| | 791,097 | Richard Williams | 7-30-68 | Canada |
| 3,367,008 | | William H. Hodge | 2-6-68 | |
| 3,501,295 | | Donald E. Hanson | 3-17-70 | |
| | 845,057 | Donald E. Hanson | 6-23-70 | Canada |
| 3,532,031 | | A. L. Moss | 10-6-70 | |

3

| U.S. Patent Number | Foreign Patent No. | Inventor | Date Issued | Country |
|---|---|---|---|---|
| | 519,261 | George C. Borden, Jr. | 12-6-55 | Canada |
| | 682,657 | George C. Borden, Jr. | 5-24-64 | Canada |
| | 662,943 | George C. Borden, Jr. | 5-14-63 | Canada |
| | 598,660 | Richard Jackson, et al | 5-24-60 | Canada |
| | 673,755 | Donald Magill, et al | 11-5-63 | Canada |
| | 647,056 | Ward D. Harrison, et al | 8-21-62 | Canada |
| | 835,882 | Donald E. Hanson | 3-3-70 | Canada |
| 79,184 | 997,507 | John C. Bowman / Adam F. Kaliski | 10-8-70 / 8-10-67 | Canada |
| 3,012,929 | 600,775 | Richard Jackson / Richard Jackson | 2-10-57 / 10-28-57 | Canada |
| 830,922 | | John C. Bowman | 5-27-69 | |

EXHIBIT 5
TO
SCHEDULE A

REGISTERED TRADEMARKS

| Mark | Class | Product | Registration Number | Registration Date |
|------|-------|---------|---------------------|-------------------|
| Celowax | 37 | Waxed wrapping paper and waxed paper for lining cartons and boxes | 247,157 | 9/18/28 (renewed 1948 and 1968) |
| Certifine | 37 | Tympan Paper and Bristol Board | 288,073 | 10/20/31 |
| Crystallon | 37 | Decorated Paper used as printing paper, wrapping paper, and for making greeting cards | 318,529 | 10/30/34 (renewed 1954) |
| Drumhead | 37 | Tympan Paper | 290,444 | 1/5/32 (renewed 1952) |
| Glascel | 37 | Paper made from a mixture of Glass and Cellulosic fibers in which the glass fibers predominate | 689,513 | 12/8/59 |
| Glenwite | 37 | Envelope and Printing Paper | 373,380 | 12/5/39 (renewed 1959) |
| Jersey | 37 | Printing Paper | 728,554 | 3/13/62 |
| Linpaco | 37 | Bond Paper, Mimeo Paper, Duplicator Paper, Ledger Paper, Index Paper, Bristol Paper, and Gummed Paper | 774,150 | 7/28/64 |
| Miraline | 37 | Glassine and Greaseproof Paper | 737,167 | 9/4/62 |
| Oxtex | 37 | Wrapping Paper | 367,664 | 5/23/39 (renewed 1959) |
| Parchwrap | 37 | Greaseproof and Imitation Parchment Paper | 296,365 | 8/2/32 (renewed 1952) |

-2-

| Mark | Class | Product | Registration Number | Registration Date |
|---|---|---|---|---|
| Presspak | 37 | Paper and, in particular, Offset Packing Paper | 763,528 | 1/21/64 |
| Printapouch | 37 | Kraft Paper | 728,855 | 3/20/62 |
| Reddirap | 37 | Packaging Paper | 669,918 | 11/18/58 |
| Reddirap | 37 | Packages of Greaseproof and Waxed Wrapping Paper for use in metal dispensing containers | 348,644 | 8/3/37 (renewed 1957 |
| Riegelease | 37 | Papers designed to have minimum surface adherability characteristics whereby to release freely from surfaces with which they may be placed in contact | 681,486 | 7/7/59 |
| Riegeline | 37 | Glassine Paper | 301,001 | 2/14/33 (renewed 1953) |
| Canada | | Glassine Paper | NS 298 | 1/28/63 |
| Riegelite | 37 | Waxed Papers, Plain Glassine Paper, Waxed Glassine Paper, Transparent Wrapping Paper, Wax Sulphite and Cake and Bread Wrap | 290,806 | 1/19/32 (renewed 1952 |
| Riegel-Pak | 37 | Treated Kraft and Glassine Paper | 614,847 | 10/25/55 |
| Riegel's Polar Tag | 37 | Paper, namely, Heavy Tag Stock | 341,242 | 12/1/36 (renewed 1956 |
| Riegelwrap | 37 | Wrapping Papers including Glassine and Grease-proof Papers, Waxed Papers and Waxed Glassine Papers | 680,459 | 6/16/59 |
| Sheerene | 37 | Wrapping Paper | 265,875 | 1/7/30 (renewed 1950 and 1969) |
| Scintilla | 37 | Artists' Papers | 764,722 | 2/11/64 |
| Snopaque | 37 | Kraft, Sulphite and Glassine Paper, either Waxed or Unwaxed | 582,782 | 11/24/53 |
| Canada | | Kraft, Sulphite and Glassine Paper, either Waxed or Unwaxed | N.S.1/300 | 1/28/33 (renewed 1963 |

-3-

| Mark | Class | Product | Registration Number | Registration Date |
|------|-------|---------|---------------------|-------------------|
| Sno-Seal | 37 | Waxed Sulphite Papers | 313,046 | 5/15/34 (renewed 1954) |
| Stripease | 37 | Separating and Interleaving Kraft Paper | 741,640 | 12/4/62 |
| Superleaving | 37 | Interleaving Paper | 680,468 | 6/16/59 |
| Synthacel | 37 | Paper or Paper Board made of Synthetic Fibers | 686,906 | 10/20/59 |
| Thermomat | 37 | Thermosetting mats for the graphic arts industries made of resin impregnated paper | 643,923 | 4/9/57 |
| Transoline | 37 | Transparent Sulphite Paper used as a base for transparent waxed sulphite paper | 318,246 | 10/16/34 (renewed 1954) |
| Transolite | 37 | Wrapping Papers, namely waxed papers, plain and waxed glassine papers, transparent wrapping paper, wax sulphite paper and cake and bread wraps, excluding papers for office equipment | 304,089 | 6/20/33 (renewed 1953) |
| Tuf-Red | 37 | Wallet Paper | 774,547 | 8/4/64 |
| Tuf-Tag | 37 | Paper made in weights 24x36-100 lb. and heavier | 144,281 | 6/28/21 (renewed 1941 and 1961) |
| Tufwhite | 37 | Paper, namely, Tag Stock | 618,249 | 12/27/55 |
| 20th Century | 37 | Printing Bristol, Cover, and Tag Paper | 675,261 | 3/10/59 |

-4-

## UNREGISTERED TRADEMARKS

| Mark | Product |
|------|---------|
| Highlight | Paperboard Finish |
| Make Ready | Drumhead tympan and Presspak |
| Jute Tag | Tag stock |
| Weatherproof Bristol | Wet strength outdoor paperboard |
| X-Jute | Pattern Paper |
| Beaming | Heavyweight industrial paperboard |

EXHIBIT 6
TO
SCHEDULE A

COPYRIGHTS

| Design Number | Publication Date | Expiration Date | Copyright Number |
|---|---|---|---|
| Kaleidoscope 52 Riegel Jersey | 10/25/67 | 10/25/95 | Kk986856 |
| A Guide to Makeready Paper Sales Think Riegel | 1/20/71 | 1/20/99 | A220885 |

1

Schedule B

Non-Exclusive List of
Liabilities Assumed

Note: All terms used in this Schedule B which are defined in the Purchase Agreement have the same meaning assigned to such terms in the Purchase Agreement and the Schedules thereto, and such definitions are incorporated herein by reference. References to "Account No." in this Schedule B are to the number of the account in which each liability described in this Schedule B was carried on the books of account and records of Riegel as at January 3, 1972.

(1)    Accounts Payable -- Employees: Account No. 200 - Reserve for Vacations, Account No. 201 - Reserve for Holiday Pay, and Account No. 202 - Reserve for Christmas Bonus

1.    Accrued liabilities for vacations, holiday pay and Christmas bonuses recorded on the New Jersey Ledger are allocated to the New Jersey Operations.

2.    Accrued liabilities for vacations, holiday pay and Christmas bonus recorded on the Corporate Ledger for employees whose employment is being transferred from Federal to RPC are allocated to the New Jersey Operations.

(2)    Accounts Payable Trade

The accounts payable represented by the following accounts:

(a)    Account No. 240-Accounts Payable

1.    Accounts payable recorded on the New Jersey Ledger are allocated to the New Jersey Operations.

2.    Accounts payable recorded on the Corporate Ledger are allocated to the New Jersey Operations on a specific identification basis.

(b)    Account No. 241-Accounts Payable - Other

Accounts payable - other recorded on the New Jersey Ledger are allocated to the New Jersey Operations.

(c)    Account No. 242-Freight Payable

Freight payable recorded on the New Jersey Ledger is allocated to the New Jersey Operations.

(d)    Account No. 243-Accrued Power

Accrued liabilities for electricity and gas recorded on the New Jersey Ledger are allocated to the New Jersey Operations.

(3)    Accounts Payable Accrued

The accounts payable represented by the following accounts:

(a)    Account No. 248-Accrued Local Property Tax

Accrued local property taxes recorded on the New Jersey Ledger are allocated to the New Jersey Operations.

(b)    Account No. 252-Accrued Royalties

Accrued royalties recorded on the New Jersey Ledger are allocated to the New Jersey Operations.

(4)    Reserve for Shutdown

Reserves for planned shutdown in the ordinary course of operations (Account No. 272) recorded on the New Jersey Ledger are allocated to the New Jersey Operations.

3

(5)   Obligations

Exhibits 1 and 2, which are affixed to this Schedule
B and which are made a part hereof, constitute a partial
listing of the obligations to be assumed by RPC.

EXHIBIT 1

TO

SCHEDULE B

LICENSE AGREEMENTS

1. License Agreement dated January 1, 1967 with Mead Corporation as licensee covering Jackson Patent No. 3,012,929 (method of making a paper product with glass and other special fibers).

2. License Agreement dated February 14, 1969 with Modern Controls, Inc. as licensee covering "Diffusometer" (instrument used to measure the rate of transport of water vapor through a barrier material and to use Riegel's name).

3. License Agreement dated July 1, 1970 with Wiggins Teape as licensee covering manufacture and sale of filter paper in the United Kingdom.

4. License Agreement dated November 1, 1969, as amended, with Georg Drewson Feinpapierfabrik as licensee covering electrofax base paper manufacturing know-how.

5. License Agreement dated February 25, 1966 with Inveresk Paper Company as licensee covering electrostatic copy paper know-how.

6. License Agreement dated February 1, 1965 with Rice Barton Corporation as licensee covering Wilson & Geiger Patent No. 3,119,733 (distribution plate for paper machine headbox).

7. License Agreement dated July 7, 1964 with Riegel Textile Corporation as licensor covering Battery Separators.

8. License Agreement dated January 1, 1962, as amended, with McGraw-Edison Company as licensor covering TherMEcel.

9. License Agreement dated March 8, 1956, as amended, with International Business Machines covering tabulating cards and tabulating machinery.

10. License Agreement dated July 14, 1961 with Jasper Mardon as licensee covering patent No. 3,119,733 (distribution plate for paper machine headbox).

11. License Agreement dated August 1, 1971 with Esso Research and Engineering Company as licensor covering non woven thermoplastic web.

12. License Agreement (limited and royalty free) to be granted by Rexham Corporation covering Grim-Weiloch patent No. 3,403,048 (heat sealable and water vapor proof solvent coating).

13. License Agreement (limited and royalty free) to be granted by Rexham Corporation covering patent No. 3,532,536 (improved heat sealable and water vapor solvent coating).

14. License Agreement dated February 1, 1965 with Manchester Machine Company as licensee covering patent No. 3,119,733 (distribution plate for machine head box).

15. License Agreement dated May 29, 1969 with Haskins & Sells concerning Auditape System (computer software).

16. License Agreement dated April 24, 1956 with John W. Bolton & Sons, Inc. as licensee covering Kline-Wilson patent No. 2,854,894 (pulp treating system).

17. License Agreement dated April 1, 1966 with Westinghouse Electric Corporation as licensor concerning Insuldur.

18. License Agreement dated July 1, 1964 with RCA as licensor concerning electrofax paper.

EXHIBIT 2
TO
SCHEDULE B
CONTRACTS AND AGREEMENTS

1.  Agreement dated July 25, 1966 with Burkham Brothers, Inc. for transportation of goods.

2.  Agreement dated February 1, 1966, as amended, with Elizabethtown Gas Company extending facilities for the service of natural gas to the Milford, N. J. and Warren Glen, N. J. plants.

3.  Contract dated February 1, 1966, as amended, with Elizabeth-town Gas Company for service of natural gas to the Milford, N. J. and Warren Glen, N. J. plants

4.  Agreement dated March 3, 1970 with New Jersey Power & Light Company and National Energy Leasing Company for installation of a power complex at Milford, N. J.

5.  Agreement dated March 3, 1970 with National Energy Leasing Company for steam service at Milford, N. J.

6.  Agreement dated March 3, 1970 with National Energy Leasing Company for operation of steam facilities at Milford, N. J.

7.  Agreement dated March 3, 1970 with National Energy Leasing Company in connection with the payment of taxes on the power complex situated at Milford, N. J.

8.  Agreement dated March 3, 1970 with New Jersey Power & Light Company for the operation of electrical facilities at Milford, N. J.

9.  Lease Agreement dated March 3, 1970 with National Energy Leasing Company for buildings in connection with the power complex at Milford, N. J.

10.  Lease Agreement dated March 3, 1970 with New Jersey Power & Light Company for facilities in connection with the power complex at Milford.

11.  Agreement dated June 23, 1970 with Herty Foundation for Research Project 959 in connection with Battery Separators.

12.  Agreement dated December 10, 1970 with David S. Most for consulting services in reprography and other areas of papermaking and converting.

13.  Agreement dated May 28, 1963, as amended, with C. E. Stevens Bros. Inc.

14.  Agreement dated January 27, 1971, with Hertz Vehicle Management Corporation in connection with automobile fleet leasing.

2

15. Those agreements and leases in connection with computers that are located at the New Jersey plant.

16. Agreement dated April 16, 1971 with Eltra Corporation, Prestolite Division, in connection with battery separators (being executed).

17. Research Agreement dated May 21, 1970 with Polymer Research Corporation of America.

18. Agreement dated August 10, 1970 with Parchment & Paper Products Co. Inc. for the purchase of "Butterwrap".

19. Agreement dated July 9, 1971 with William H. Hoge concerning synthetic paper products.

20. Agreement dated December 16, 1969 with Hubert Ryan, as Trustee (Hertz Vehicle Management Corporation) in connection with automobile fleet leasing.

21. Indemnifications with the following concerning infringement of the Middleton Patent, No. 3,121,006, owned by Xerox Corporation:

    (a) Atlantic Photocopy Corporation, July 2, 1971.
    (b) ICP, Inc., May 11, 1971.
    (c) Sperry-Rand Corporation, Remington Rand Division, February 29, 1968.
    (d) Copystatic Manufacturing Corporation (if executed).

22. Contract dated December 21, 1970 with National Biscuit Company concerning the supply of glassine and waxed papers during 1971.

23. Guarantees given in the ordinary course of business and as contemplated by Section 303 of the Federal Food, Drug and Cosmetic Act.

24. Service Agreements with International Business Machines Corporation concerning computer equipment and service at the following locations:

    (a) Agreement Number E-79776, as amended, accepted by IBM August 20, 1965 with respect to process computer at the Milford, N. J. plant.
    (b) Agreement Number E-83924, as amended, accepted by IBM August 7, 1967 for equipment at Milford, N.J.

25. Lease dated July 10, 1970 with Applied Data Research, Inc. concerning computer products at the Milford, N. J. plant.

26. Contract dated July 24, 1970 with Vendere International Marketing Corp. for computer software to be used at Milford, N. J.

3

27.  Agreement dated December 30, 1970 with Computing Efficiency Inc. for the purchase of computer software.

28.  Lease Agreement dated October 12, 1970 with Trapelo Division of LFE Corporation, as lessor, for Beta Gage System at the Milford, N. J. plant.

29.  Distributorship Agreement dated July 24, 1970 with Fitchburg Coated Products, Inc. concerning 44 lb. M.C. facsimile paper.

30.  Distributorship Agreement dated August  7, 1970 with Diamond Manufacturing & Supply Co. with respect to electrostatic coated copy paper.

31.  Distributorship Agreement dated November 1, 1971 with Capital Paper Company, Inc. relating to paper grade Special W.I.

32.  Contract dated March 1, 1971 with Honeywell Inc. for the purchase of strip chart and circular chart.

33.  Contract (#S-A-718) dated September 8, 1971 with Sunshine Biscuits, Inc. for the purchase of plain glassine paper.

34.  Contract (#S-A-717) dated September 8, 1971 with Sunshine Biscuits, Inc. for purchase of plain glassine paper.

35.  Contract dated November, 1970 with Brachetta S.A. for the purchase of rib striping machine, technical assistance and battery separator paper.

36.  Agreement dated January 1, 1972 with Borough of Alpha, County of Warren, New Jersey concerning garbage dumping.

37.  Lease Agreement dated April 27, 1967 with Atlantic Richfield Company concerning underground tank and pump.

38.  Sales Contract dated January 21, 1970 with The Borden Chemical Company for the purchase of methyl alcohol.

39.  Agreement dated April 22, 1969 with Cheney Pulp & Paper Company for the purchase of jute pulp.

4

40. Lease Agreement dated November 12, 1969 with Cheney Pulp & Paper Company concerning rope cutting machine.

41. Agreement dated December 27, 1971 with Frank H. Davis Company Inc. for exclusive sale of surplus equipment.

42. Sales Contract dated August 13, 1971 with Amerada Hess Corporation for the purchase of fuel oil.

43. Agreement dated January 13, 1971 with Getty Oil Company for the purchase of tycol albawax.

44. Term Agreement dated April 12, 1956 with New Jersey Bell Telephone Company for telephone equipment.

45. Term Agreement dated June 13, 1956 with New Jersey Bell Telephone Company for telephone equipment.

46. Agreement dated May 25, 1971 with Air Products and Chemical, Inc. for the purchase of various gases.

47. Agreement dated August, 1971 with the Pittston Company for the purchase of fuel oil.

48. Discount Agreement dated July 6, 1971 with DeSoto, Inc. for electrostatic resin binders.

49. Agreement dated February 9, 1970 with Memorex Leasing Corporation for lease of Memorex equipment.

50. Agreement dated March 30, 1970 with Purolator Incorporated for lease of paper forming machine.

51. Agreement dated as of May 1, 1970 with the Hunterdon County YMCA and the Riegel Community Foundation, Inc. creating secondary liability for certain subsidy payments due from the Foundation to the YMCA for operating the Riegel Ridge Community Center.

52. Contract with Industrial Communications Co. for maintenance of communications equipment.

53. Term Agreement dated January 1, 1972 with New Jersey Bell Telephone Company for telephone equipment to the extent it directly relates to the New Jersey Operations.

CONFIDENTIAL DISCLOSURES

1. Confidential Disclosure Agreement dated November 4, 1966 with Dennison Manufacturing Company in connection with electrostatic reproduction processes.

2. Confidential Disclosure Agreement dated March 10, 1971 with Esso Research and Engineering Company in connection with non-woven polypropylene.

3. Confidential Disclosure Agreement dated July 12, 1961 with Fram Corporation in connection with the filter media field.

4. Confidential Disclosure Agreement dated June 24, 1968 with Remington Rand Office Machines in connection with photo copy paper.

5. Confidential Disclosure Agreement dated January 10, 1961, as amended, with Polaroid Corporation in connection with photographic products.

6. Confidential Disclosure Agreements dated October 30, 1970 and February 10, 1971 with Johns-Manville Products Corporation in connection with pvc bonded asbestos paper at Warren.

7. Confidential Disclosure Agreement dated January 27, 1971 with Hilord Chemical Company in connection with coated copy paper.

8. Confidential Disclosure Agreement dated October 14, 1970 with Terkavoski Paper Mills in connection with filter paper.

9. Confidential Disclosure Agreement dated October 12, 1970 with Columbia Ribbon and Carbon Mfg. Co. in connection with "contact carbon".

10. Confidential Disclosure Agreement dated November 26, 1969 with Allis-Chalmers Manufacturing Co. in connection with cellulosic insulation for electrical equipment.

11. Confidential Disclosure Agreement dated June 30, 1969 with Tinicum Research Company in connection with dense paper products.

12. Confidential Disclosure Agreement dated January 27, 1966 with Archer Daniels Midland Company in connection with office copy paper.

13. Confidential Disclosure Agreement dated March 2, 1971 with Johns-Manville Products Corporation in connection with test filters.

14. Confidential Disclosure Agreement dated March 17, 1969 with Riegel Textile Corporation in connection with flushable paper (if executed).

15. Confidential Disclosure Agreement with RCA in connection with home facsimile development (if executed).

16. Confidential Disclosure Agreement dated April 28, 1971 with Montrose Paper Mills in connection with flame retardant electrical papers.

17. Confidential Disclosure Agreement dated July 2, 1970 with Decitron Communications Systems, Inc. and Decitron Electronics Corporation Inc. in connection with dielectric coated facsimile paper.

18. Confidential Disclosure Agreement dated November, 1969 with Chapman Industries, Inc. in connection with release type coating (if executed).

19. Confidential Disclosure Agreement dated August 12, 1971 with Tinicum Research Company in connection with certain paper products.

20. Confidential Disclosure Agreement dated April 4, 1969 with Opto/Graphics, Inc. in connection with zinc oxide coating to conductive base paper.

21. Confidential Disclosure Agreement with Ethyl Corporation in connection with sintered polyvinyl chloride separators (if executed).

22. Confidential Disclosure Agreement dated August 2, 1966 with Old Town Corporation in connection with coating electrostatic copying paper.

23. Confidential Disclosure Agreement dated July 26, 1966 with Minnesota Mining & Manufacturing in connection with 3 MMF paper.

24. Confidential Disclosure Agreement dated September 18, 1967 with Uniroyal, Inc. in connection with latex as agent for electrophotographic copying paper.

25. Confidential Disclosure Agreement dated October 24, 1971 with Duplicon Corporation in connection with photoreceptor material.

26. Confidential Disclosure Agreement dated October 6, 1970 with Beloit Corporation in connection with acqueous coatings.

27. Confidential Disclosure Agreement dated December, 1969, with Synthane-Taylor Corporation in connection with pulp wood paper for conversion into vulcanized fiber.

Schedule C

Liabilities - Not Assumed

Note:  All terms used in this Schedule C which
are defined in the Purchase Agreement have the same meaning
assigned to such terms in the Purchase Agreement and the
Schedules thereto, and such definitions are incorporated
herein by reference.

(1)  RPC does not assume any liability for (a) that

portion of the accounts referred to in Schedule B

which was not specifically allocated therein to the New

Jersey Operations or (b) any amount which would not

have been allocated to the New Jersey Operations had

such amount been known.

(2)  RPC does not assume any liability for the amounts

which are or shall have been recorded prior to the

Closing Date in, or for any obligation represented

by the amounts which are or should have been recorded

in, the accounts listed in Exhibit 1 to this Schedule C.

(3)  RPC does not assume any liability for warehousing

other than (a) obligations to public warehouses or

other facilities used solely for storage of the products

of the New Jersey Operations and (b) that part of any

obligation to public warehouses or other facilities,

2

in which products of the New Jersey Operations as well
as products of other Federal operations are stored,
which is attributable to storage of products of the
New Jersey Operations.

(4)  RPC does not assume any liability for lease obliga-
tions for buildings and office space other than as
described in Exhibit 2 to Schedule B.

(5)  RPC does not assume any liability for obligations
with respect to claims of customers or others with
respect to breach of warranty or product liability
in connection with the products or product lines of
the New Jersey Operations sold prior to the Closing
Date to the extent that such claims are covered by
insurance.

(6)  RPC does not assume any liability for obligations
arising under the license agreements described and
enumerated in Exhibit  2  to this Schedule C.

(7)  RPC does not assume any liability for obligations
arising under the contracts and agreements described
and enumerated in Exhibit 3  to this Schedule C.

(8)  RPC does not assume any liability for termina-
tion and/or severance payments, special pension
payments, contracts, or similar obligations (a)
with respect to employees of Federal or Riegel

whose employment with Federal or Riegel ended prior to
January 25, 1972, and (b) with respect to any other employees
of Federal who hold or held positions outside of the New
Jersey Operations or who are or were employed in the computing
and corporate accounting groups whose employment with
Federal ends prior to the Closing Date.

(9)  RPC does not assume any liabilities for costs, fees,
and expenses incurred in connection with the Federal-Riegel
spin-off and merger or for costs, fees, and expenses in-
curred in connection with the sale of the New Jersey Opera-
tions to RPC except for (a) 50% of costs, fees and expenses
of the independent public accountants incurred in connection
with the preparation of the Adjustment Audit, (b) 50% of the
costs, fees, and expenses incurred in connection with the
survey which must be made of the lands being transferred
to RPC pursuant to the Agreement, and (c) 50% of real estate
transfer taxes in excess of $2,000.00.

(10)  RPC does not assume any liability for any tax
relating to activities prior to the Closing Date except
real and personal property taxes to the extent accrued.

(11) RPC does not assume any liability for claims for property
damage or personal injury and/or disability arising prior to
the Closing Date to the extent covered by insurance.

(12) RPC does not assume any liability for present
commitments for future payments in the nature of contri-
butions or for fees or dues to trade associations or
charitable organizations except for the agreements de-
scribed and enumerated in Exhibit  2  to Schedule B and

4

except for such commitments made by those officers or employees of Federal who are employed in the New Jersey Operations at the date of the Purchase Agreement.

(13)  RPC does not assume any liability for oral or written commitments made by Federal or Riegal (other than those made by officers or employees employed at the New Jersey Operations) entered into prior to the Closing Date for the purchase of pulp.

EXHIBIT 1

TO

SCHEDULE C

<u>Accounts - Not Assumed</u>

Account No. 190 - Notes Payable

Account No. 203 - Reserve - Incentive Pay

Account No. 204 - Reserve - Special Pay

Account No. 205 - Reserve - Employee Welfare

Account No. 207 - Salaries and Wages Payable

Account No. 208 - Commissions Payable

Account No. 209 - Reserve for SUI

Account No. 210 - Reserve for FUI

Account No. 211 - Reserve for FOAB

Account No. 212 - Collections - SUI

Account No. 213 - Collections - FOAB

Account No. 214 - Collections - Disability Insurance

Account No. 215 - Collections - Withholding

Account No. 216 - Collections - Union Dues

Account No. 217 - Collections - Employee Savings

Account No. 218 - Collections - Hospital Plan

Account No. 219 - Collections - State Income Tax

Account No. 220 - Collections - Christmas Club

Account No. 221 - Collections - Federal Credit Union

Account No. 222 - Collections - Savings Bond

Account No. 223 - Collections - Riegelwood Housing

2

Account No. 224 - Collections - United Community Fund

Account No. 225 - Collections - Garnishes

Account No. 226 - Collections - Riegelwood Country Club

Account No. 227 - Collections - Employee Uniforms

Account No. 228 - Collections - City Withholding Tax

Account No. 229 - Collections - Pensions

Account No. 230 - Collections - Stock Option

Account No. 231 - Collections - Keystone Fund

Account No. 244 - Professional Services

Account No. 249 - Accrued Franchise Tax

Account No. 253 - Accrued Rent

Account No. 254 - Accrued Sales and Use Tax

Account No. 255 - Accrued Interest - Commitment Fee

Account No. 256 - Accrued Interest - Credit Notes

Account No. 257 - Accrued Interest - Debentures

Account No. 259 - Accrued Interest - Stock Option

Account No. 261 - Accounts Payable - Community Concepts

Account No. 262 - Accounts Payable - Laminex

Account No. 263 - Accounts Payable - Techbuilt

Account No. 264 - Accounts Payable - Mohawk

Account No. 265 - Retirement - Debentures

Account No. 268 - Reserve - Federal Income Tax

Account No. 269 - Reserve - State Income Tax

Account No. 270 - Reserve for Contingencies - General

Account No. 274 - Reserve for Contributions

3

Account No. 278 - Dividends Payable

Account No. 330 - Reserve Federal Income Tax - Deferred

Account No. 331 - Reserve State Income Tax - Deferred

Account No. 335 - Notes Payable - Long Term

Account No. 330 - 5-1/4% Sinking Fund Debentures

Account No. 337 - 3-7/8% Sinking Fund Debentures

Account No. 338 - 3-3/4% Sinking Fund Debentures

Account No. 339 - 6-3/8% Sinking Fund Debentures

Account No. 340 - Reserve for Extraordinary Losses

EXHIBIT 2

TO

SCHEDULE C

License Agreements - Not Assumed

1.    License Agreement dated 1968 with Arthur D. Little,
      Inc. as licenser concerning patent Nos. 3,108,009
      and 3,157,533 (high gloss paper and paper board).

2.    License Agreement dated May 1, 1971 with American
      Paper Institute covering right to reproduce recycl-
      ing seal trade mark.

EXHIBIT 3

TO

SCHEDULE C

Contracts and Agreements - Not Assumed

1.   Contract Agreement dated January 27, 1966 with Corprex
     Chemical Company concerning felt-like material.

2.   Contract September 18, 1969 with Aluminum Company of
     America for a purchase of aluminum foil.

3.   Agreement dated January 16, 1964 with Polaroid Corporation
     for the purchase of Type 100 Tab and Leader.

4.   Contract with Polaroid Company in connection with the
     Expresso Project.

5.   Agreement dated November 14, 1969, as amended, with Georgia-
     Pacific Corporation for the purchase of hardwood and soft-
     wood pulp.

6.   Membership Agreement effective August 26, 1968, as amended,
     with the Institute of Paper Chemistry for Research and
     Development.

7.   Lease Agreement dated July 1, 1969 with Coastal States
     Petroleum, Inc., as lessee, for oil and gas wells.

8.   Sales Representative Agreement dated August 30, 1967
     with H. L. Fruchtman for white tag and file folder.

9.   Sales Agency authorization dated September 29, 1961, as
     amended, with Central National Corporation for export
     sales.

2

10.    Agreement dated December 23, 1970 with Executive Jet
       Aviation, Inc. for flight service.

11.    Universal Subscribers Contract dated March 1, 1965 with
       United Airlines.

12.    Agreement dated February 1, 1971 with Stevens Aviation,
       Inc. for executive flight service.

Confidential Disclosure Agreements -
Not Assumed

1.    Confidential Disclosure Agreement dated 1968 with Air
      Products and Chemicals, Inc. in connection with fluoro-
      chemical intermediates for paper coatings.

2.    Confidential Disclosure Agreement with General Mills,
      Inc. in connection with Bentonite (if executed).

3.    Confidential Disclosure Agreement with Simpson Lee
      Paper Company (if executed).

Schedule D

Paragraph 1.

New Jersey Operations Computation of Tentative
Purchase Price

Part A:

| | |
|---|---|
| Receivables | $3,309,855 |
| Inventories | 5,454,095 |
| Prepaids | 12,375 |
| Plant Orders in Process Expenditures in Excess of the Amount Described in Section 3(ii) of the Purchase Agreement | -0- |
| | $8,776,325 |
| Additional Land | 42,000 |
| | $8,818,325 |

*not covered by representation in section 14(f) wt [signature]*

Less Part B:

| | |
|---|---|
| Payables | $1,933,921 |
| Accrued Liabilities | 114,386 |
| Tentative Purchase Price | $6,770,018 |

1

New Jersey Operations
Balance Sheet Accounts Used to Compute
the Tentative Purchase Price
as of January 3, 1972

Assets

| | Source | | Total Amount |
| Receivables | New Jersey Ledger | Corporate Ledger | For New Jersey Operations |
|---|---|---|---|
| Acct. #130 | $ - | $3,412,956.44 | $3,412,956.44 |
| 131 | - | (38,192.53) | (38,192.53) |
| 132 | - | (341,000.00) | (341,000.00) |
| 133 | - | 200,672.46 | 200,672.46 |
| 135 | 50,181.69 | 13,520.60 | 63,702.29 |
| 136 | 10,341.19 | - | 10,341.19 |
| 138 | 1,375.13 | - | 1,375.13 |
| 140 | - | - | -0- |
| | | | $3,309,854.98 |

Inventories

| | | | |
|---|---|---|---|
| Acct. #150 | 1,598,363.92 | - | 1,598,363.92 |
| 155 | 984,954.00 | 30,559.00 | 1,015,513.00 |
| 160 | 2,966,528.00 | 76,000.00 | 3,042,528.00 |
| 166 | 58,515.04 | - | 58,515.04 |
| 167 | - | - | -0- |
| 168 | - | - | -0- |
| 170 | - | (159,603.00) | (159,603.00) |
| 171 | (101,222.00) | - | (101,222.00) |
| | | | $5,454,094.96 |

Prepaids

| | | | |
|---|---|---|---|
| Acct. #180 | - | - | -0- |
| 181 | - | - | -0- |
| 183 | 12,375.00 | - | 12,375.00 |
| 184 | - | - | -0- |
| | | | $ 12,375.00 |

2

New Jersey Operations
Balance Sheet Accounts Used to Compute
the Tentative Purchase Price
as of January 3, 1972

## Liabilities

| ~~Receivables~~ | Source New Jersey Ledger | Corporate Ledger | Total Amount For New Jersey Operations |
|---|---|---|---|
| **Accounts Payable** | | | |
| | | | |
| Acct. #200 | $  501,000.40 | $ 4,821.00 | $  505,821.40 |
| 201 | - | - | -0- |
| 202 | - | - | -0- |
| 240 | 1,295,311.55 | 19,920.46 | 1,315,232.01 |
| 241 | 20,182.00 | - | 20,182.00 |
| 242 | 26,334.45 | - | 26,334.45 |
| 243 | 66,350.94 | - | 66,350.95 |
| | | | $1,933,920.81 |
| | | | |
| **Accruals** | | | |
| | | | |
| Acct. #248 | 3,082.50 | - | 3,082.50 |
| 252 | 111,303.92 | - | 111,303.92 |
| | | | $  114,386.42 |
| | | | |
| **General Reserves** | | | |
| | | | |
| Acct. #272 | - | - | $    -0- |

3

Paragraph 2.

        In conducting the Adjustment Audit, Haskins &
Sells shall ascertain in particular that, subject to the
second sentence of this paragraph, in all material re-
spects (i) the book values of the classes of assets and
classes of liabilities upon which the purchase price is
based have been determined at the Closing Date in accord-
ance with generally accepted accounting principles applied
on a basis consistent with the basis used for the prepara-
tion of Paragraph 1 of Schedule D as of January 3, 1972,
(ii) such book values shall not take into consideration
those adjustments made by Federal in accounting for the
Federal-Riegel merger under the purchase method and (iii)
such book values have been determined by using the same
methods of allocation and the same accounting records as
were used for the preparation of Paragraph 1 of Schedule D
as of January 3, 1972.  The aforementioned values at the
Closing Date shall reflect the following agreements between
the parties:

        (a)  No plant order jobs in process will
be closed out of Account No. 284 between Jan-
uary 3, 1972 and the Closing Date;

        (b)  Reserve for Contingencies - Customers'
Bad Debts (Account No. 132) is fixed at $341,000
and will not fluctuate;

        (c)  That portion of the reserve for intra-
division profit on inventory (Account No. 171)
recorded on the New Jersey Ledger that is attri-
butable to products manufactured at Riegelwood,
North Carolina is fixed at $42,000 and will not
fluctuate;

        (d)  Additional land discussed in Paragraph
A(2) of Schedule A is fixed at $42,000;

        (e)  No accrual for pensions shall be taken
into account; and

        (f)  The books of account for the New Jersey
Operations will be held open for fourteen (14)
calendar days and will be held open for an addi-
tional sixteen (16) calendar days to reflect in-
dividual items of unrecorded liabilities amount-
ing to $1,000.00 or more.

## ASSUMPTION

KNOW THAT the undersigned, Riegel Products Corporation, a Delaware corporation ("RPC"), in consideration of the conveyance, sale, assignment and transfer to it of the assets and properties consisting of and including all of the business and related operations (the "New Jersey Operations") of Federal Paper Board Company, Inc., a New York corporation ("Federal"), which are conducted in and/or from Federal's mills, plants, offices and facilities located at the four New Jersey Mills described in Paragraph A(1) of Schedule A attached to a certain Purchase Agreement, dated February 23, 1972, between RPC and Federal (the "Agreement"), together with all assets and properties of Federal, real and personal, tangible and intangible, directly attributable to the New Jersey Operations on the date hereof does hereby assume, pursuant to Section 1 of the Agreement

(a)  all of Federal's debts and liabilities of every kind, character or description, whether known or unknown, whether disclosed or undisclosed, whether accrued, absolute, contingent or otherwise, and whether or not reflected or reserved against in Schedules A or B to the Agreement and which are directly attributable to the New Jersey Operations, as

2

the same exist on the date hereof, and does hereby agree to pay, perform and discharge, when due, all of the said debts and liabilities;

(b) all of the duties and obligations to be performed and discharged by Federal after the Closing Date under (i) the contracts, agreements and commitments of Federal existing on January 3, 1972 and directly attributable to the New Jersey Operations, including, but not by way of limitation, those listed or described in Schedule B to the Agreement, and (ii) the contracts, agreements and commitments entered into on or after January 3, 1972 by those officers or employees of Federal who were employed in the New Jersey Operations on or subsequent to January 3, 1972;

provided that RPC does not assume or agree to pay, perform or discharge any liability of obligation which Schedule C to this Agreement provides shall not be assumed by RPC.

IN WITNESS WHEREOF, the undersigned has caused its corporate name to be hereunto subscribed and its corporate seal to be hereunto affixed by its officers thereunto duly authorized as of the      day of      , 1972.

RIEGEL ~~PAPER~~ PRODUCTS CORPORATION

By_____
                    President

Attest:

_____

STATE OF NEW YORK     )
                      )
COUNTY OF NEW YORK    )  ss.:


        On the        day of         , 1972, before me
personally came William Riegel to me known, who being
by me duly sworn, did depose and say that he resides at

                                                        ;

that he is the President of Riegel Products Corporation,
the Delaware corporation described in and which executed
the foregoing instrument; that he knows the seal of said
corporation; that the seal affixed to said instrument is
such corporate seal; that it was so affixed by order of
the Board of Directors of said corporation, and that he
signed his name thereto by like order.


                                    _____
                                          Notary Public