Exhibit E

CERTIFICATE OF MERGER

OF

FEDERAL PAPER BOARD COMPANY, INC.

AND

RIEGEL PAPER CORPORATION

INTO

FEDERAL PAPER BOARD COMPANY, INC.

Under Section 904 of the Business Corporation Law

---

Pursuant to the provisions of Section 904 of the Business Corporation Law the undersigned hereby certify:

FIRST:  The names of the constituent corporations are Federal Paper Board Company, Inc., a New York corporation (herein called "Federal"), and Riegel Paper Corporation, a Delaware corporation (herein called "Riegel"). The name of the Surviving Corporation is Federal Paper Board Company, Inc.

SECOND:  On the date of the Plan and Agreement of Merger, which was adopted by the Boards of Directors of Federal and Riegel, the respective designations and numbers of outstanding shares of each class and series of capital stock of the constituent corporations were as follows:

2

| Name of Corporation | Designation of Shares | Number of Shares Outstanding |
|---|---|---|
| Federal Paper Board Company, Inc. | Common Stock, $5 par value | 1,695,489 |
| | 4.6% Cumulative Preferred Stock, $25 par value | 246,313 |
| Riegel Paper Corporation | Common Stock, $5 par value | 4,387,495 |
| | $6.50 Cumulative Preferred Stock, without par value | 125,000 |

The number of outstanding shares of Federal's Common Stock and 4.6% Cumulative Preferred Stock was subject to change between said date and the effective date of the Merger by reason of redemption by Federal of outstanding shares of 4.6% Cumulative Preferred Stock for sinking fund purposes and upon the exercise of outstanding employee options to purchase Federal's Common Stock. The outstanding shares of the 4.6% Cumulative Preferred stock and Common Stock, voting as separate classes, were entitled to vote upon the Merger.

The number of outstanding shares of Riegel's Common Stock was subject to change between said date and the effective date of the Merger upon the exercise of outstanding employee options to purchase such stock, issuance of shares thereof under Riegel's Executive Incentive Compensation Plan, or issuance of shares pursuant to or in settlement of an earn-out agreement relating to a prior acquisition. The

4

The first paragraph of Article FIFTH of the Certificate of Incorporation of Federal is amended to read as follows:

FIFTH:  The total number of shares which the Corporation may issue is 8,181,570 of which 281,570 are to be designated 4.6% Cumulative Preferred Stock and are to have a par value of $25 per share, 1,900,000 shares are to be designated $1.20 Convertible Preferred Stock and are to have a par value of $1 per share and 6,000,000 shares are to be designated Common Stock and are to have a par value of $5 per share.

(b)  The phrase "junior stock" contained in the first paragraph of paragraph (a) of subdivision E ("Voting Rights") under the caption "4.6% CUMULATIVE PREFERRED STOCK" in Article FIFTH of the Certificate of Incorporation of Federal is deleted and the phrase "other classes of stock of the Corporation" is inserted in lieu thereof.

(c)  The second paragraph of paragraph (a) of subdivision E ("Voting Rights") under the caption "4.6% CUMULATIVE PREFERRED STOCK" in Article FIFTH of the Certificate of Incorporation of Federal is deleted in its entirety and the following provision is inserted in lieu thereof:

Each holder of Preferred Stock entitled to vote for any purpose shall, for such purpose, be entitled to one vote for each share of such stock

5

standing in his name on the books of the Corporation.

(d)   Subdivision F ("Subordination of Other Classes of Stock") under the caption "4.6% CUMULATIVE PREFERRED STOCK" in Article FIFTH of the Certificate of Incorporation of Federal is deleted in its entirety.

(e)   That portion of Article FIFTH of the Certificate of Incorporation of Federal commencing with the caption "CUMULATIVE SECOND PREFERRED STOCK" and ending immediately prior to the caption "DEFINITIONS APPLICABLE TO ALL CLASSES OF STOCK" is deleted in its entirety and the following provisions are inserted in lieu thereof:

## $1.20 CONVERTIBLE PREFERRED STOCK

A.   Dividends

The dividend rate of the $1.20 Convertible Preferred Stock ("Convertible Preferred Stock") shall be $1.20 per share per annum, and no more.  Such dividends shall be payable, quarterly, on the 15th day of March, June, September and December in each year, in each case for the quarterly dividend period ending on such date, to stockholders of record on the respective record dates, not exceeding 50 days preceding such quarterly dividend payment dates, fixed for that purpose by the Board of Directors.  Such dividends shall accrue and become cumulative, whether or not earned or declared,

as to all shares of Convertible Preferred Stock from the date
on which such shares are issued, except that as to shares is-
sued after the Convertible Preferred Stock Initial Issue Date
(as hereinafter defined), dividends shall accrue and become
cumulative from such date as shall make the dividend rights per
share of the shares being issued uniform with the dividend
rights per share of the shares of the Convertible Preferred
Stock then outstanding, excluding rights to dividends declared
and directed to be paid to shareholders of record as of a date
preceding the date of issuance of the shares being issued.
Notwithstanding the provisions of the two immediately preced-
ing sentences, any such share which shall have been issued on
the Convertible Preferred Stock Initial Issue Date shall, with
respect to any quarterly dividend period (a three month period
ending on one of the above-mentioned dividend payment dates)
in which it shall have been so issued, be entitled to a full
quarterly dividend if issued during any such quarterly period
prior to February 1, 1972, May 1, 1972 or August 1, 1972,
whichever of said dates is included in such quarterly period,
but if such share shall have been so issued during any such
quarterly period on or after February 1, May 1, or August 1
(as the case may be), such share shall be entitled to no dividend
for such quarterly period nor to any pro-rata portion thereof.
As used herein, the term "Convertible Preferred Stock Initial
Issue Date" shall mean the first date upon which any share or

shares of Convertible Preferred Stock shall have been issued by the Corporation.

In no event, so long as any Convertible Preferred Stock shall remain outstanding, shall any dividend whatsoever, other than a dividend payable in shares of junior stock, be declared or paid upon, nor shall any distribution be made upon, any junior stock, nor shall any shares of junior stock be purchased or redeemed by the Corporation otherwise than in connection with a refunding of junior stock through the issue of other junior stock, nor shall any moneys be paid to or made available for a sinking fund for the purchase or redemption of any junior stock, unless in each instance dividends on all outstanding shares of the Convertible Preferred Stock for all past dividend periods shall have been paid and the dividend on all outstanding shares of the Convertible Preferred Stock for the then current quarterly dividend period shall have been paid or declared and sufficient funds are available for the payment thereof. Subject to the foregoing, dividends may be paid upon junior stock as and when declared by the Board of Directors out of any funds of the Corporation legally available therefor.

B.  Redemption

The Corporation, at the option of the Board of Directors, at any time after February 1, 1977 may redeem, in whole,

or from time to time in part, the Convertible Preferred Stock,
upon notice given as hereinafter provided, by paying for each
share in cash the following sums plus in each case an amount
equal to dividends accrued thereon to the date fixed for re-
demption:

If redeemed during the twelve months' period
beginning February 1:

| | | | |
|---|---|---|---|
| 1977 | $22.50 | 1984 | $21.24 |
| 1978 | $22.32 | 1985 | $21.06 |
| 1979 | $22.14 | 1986 | $20.88 |
| 1980 | $21.96 | 1987 | $20.70 |
| 1981 | $21.78 | 1988 | $20.52 |
| 1982 | $21.60 | 1989 | $20.34 |
| 1983 | $21.42 | 1990 | $20.16 |

and thereafter at $20 for each share.

In case of the redemption of less than all of the
outstanding shares of Convertible Preferred Stock, the shares
to be redeemed shall be selected by lot or pro rata in such
manner as the Board of Directors shall determine from among
the outstanding shares of Convertible Preferred Stock. Not
less than thirty (30) nor more than sixty (60) days' prior
written notice shall be given by mail, postage prepaid, to
the holders of record of the Convertible Preferred Stock to
be redeemed, such notice to contain a statement of or refer-
ence to the conversion right set forth in the paragraph en-
titled "Conversion" and to be addressed to each such stock-
holder at his post office address as shown by the records of
the Corporation.

If such notice of redemption shall have been duly given, and if on or before the redemption date specified in such notice the funds necessary for such redemption shall have been set aside so as to be and continue to be available therefor, then, notwithstanding that any certificate for shares so called for redemption shall not have been surrendered for cancellation, from and after such redemption date, the shares so called for redemption shall no longer be deemed outstanding, the dividends thereon shall cease to accrue, and all rights with respect to shares so called for redemption, including the rights, if any, to receive notices and to vote, shall forthwith on such redemption date cease and terminate, except only the right of the holders thereof to receive the amount payable upon redemption thereof, without interest; provided, however, that if such notice of redemption shall have been duly given, and if on or before the redemption date specified in such notice, there shall have been deposited with a bank or trust company in the Borough of Manhattan, City and State of New York, having capital, surplus and undivided profits of at least Twenty-Five Million Dollars ($25,000,000) in trust for the account of the holders of the shares so called for redemption which shall not have been surrendered for conversion pursuant to the paragraph entitled "Conversion", the funds necessary for such redemption, then upon the making of such deposit in trust, the shares with respect to which such deposit

shall have been made shall no longer be deemed to be outstanding, and all rights with respect to such shares, including the rights, if any, to receive notices and to vote, shall forthwith cease and terminate, except only the right of the holders thereof to receive, out of the funds so deposited in trust, from and after the date of such deposit, the amount payable upon the redemption thereof, without interest, or to convert their shares, up to the close of business on the third full business day prior to the date fixed for redemption, into Common Stock pursuant to the paragraph entitled "Conversion". Any funds so deposited which shall not be required for such redemption because of the exercise of any right of conversion or exchange or otherwise subsequent to the date of such deposit shall be returned to the Corporation forthwith. Any interest accrued on any funds so deposited shall belong to the Corporation and be paid to it from time to time. Any other funds so set aside or deposited by the Corporation and unclaimed at the end of six years from the date fixed for such redemption shall be repaid to the Corporation, upon its request, after which repayment the holders of such shares so called for redemption shall look only to the Corporation for the payment of the amount payable upon the redemption thereof. Subject to the provisions hereof, the Board of Directors shall have authority to prescribe the manner in which the Convertible Preferred Stock shall be redeemed from time to time.

All shares of Convertible Preferred Stock so redeemed shall be permanently retired and shall not under any circumstances be reissued; and the Corporation may from time to time take such appropriate corporate action as may be necessary to reduce the authorized Convertible Preferred Stock accordingly.

C. Liquidation

Upon any liquidation, dissolution or winding up of the Corporation, whether voluntary or involuntary, the holders of the Convertible Preferred Stock shall be entitled, before any distribution or payment is made upon any junior stock, to be paid an amount equal to Twenty Dollars ($20) per share plus an amount equal to dividends accrued to the date of such payment, and the holders of the Convertible Preferred Stock shall not be entitled to any further payment. Written notice of such liquidation, dissolution or winding up, stating a payment date and the place where said sums shall be payable and containing a statement of or reference to the conversion right set forth in the paragraph entitled "Conversion", shall be given by mail, postage prepaid, not less than thirty (30) days prior to the payment date stated therein, to the holders of record of the Convertible Preferred Stock, such notice to be addressed to each such stockholder at his post office address as shown by the records of the Corporation. Neither the consolidation or merger of the Corporation into or with any

other corporation or corporations, nor the sale or transfer by the Corporation of all or any part of its assets, nor the reduction of the capital stock of the Corporation, shall be deemed to be a liquidation, dissolution or winding up of the Corporation within the meaning of any of the provisions of this paragraph.

D. Conversion

(1) Any share or shares of Convertible Preferred Stock may be converted, at the option of the holder thereof, in the manner hereinafter provided, into full-paid and non-assessable shares of Common Stock of the Corporation; provided, however, that (a) as to any share of Convertible Preferred Stock which shall have been called for redemption, the right of conversion shall terminate at the close of business on the third full business day prior to the date fixed for redemption, and (b) on any liquidation of the Corporation the right of conversion shall terminate at the close of business on the third full business day before the date fixed for the initial payment of distributable amounts on the Convertible Preferred Stock.

(2) The conversion rate with respect to the Convertible Preferred Stock shall be .6275 of a share of Common Stock for each one share of such Convertible Preferred Stock surrendered for conversion, subject to adjustment as hereinafter provided.

(a)  In case at any time shares of Common Stock outstanding shall be combined into a lesser number of shares, whether by reclassification, recapitalization, reduction of capital stock or otherwise, the conversion rate shall be proportionately decreased.

(b)  In case the shares of Common Stock at any time outstanding shall be subdivided, by reclassification, recapitalization or otherwise (including the issuance of shares of Common Stock as a dividend on the Common Stock), into a greater number of shares without the actual receipt by the Corporation of any consideration for the additional number of shares so issued, the conversion rate shall be proportionately increased.

(3)  Any conversion rate determined or adjusted as herein provided shall remain in effect until further adjustment as required herein.  Upon each adjustment of the conversion rate a written instrument signed by an officer of the Corporation, setting forth such adjustment and the computation and a summary of the facts upon which it is based, shall forthwith be filed with the principal transfer agent for the Convertible Preferred Stock and the Corporation shall cause a copy thereof to be mailed to each holder of the Convertible Preferred Stock at his post office address as shown by the records of the Corporation, and any adjustment so evidenced,

made in good faith, shall be binding upon all stockholders
and upon the Corporation.  In lieu of any fractional share
which would otherwise be issuable upon conversion, there shall
be paid to the holder of the shares of the Convertible Pre-
ferred Stock surrendered for conversion, an amount in cash
equal to the same fraction of the market value of a full share
of the stock to be received upon such conversion.  For such
purpose, the market value of the stock to be received upon
such conversion shall be the last sales price thereof, regu-
lar way on the New York Stock Exchange, Inc., on the busi-
ness day immediately preceding the date upon which the shares
of the Convertible Preferred Stock are surrendered for con-
version, or, in case no such sale takes place on such day,
the average of the closing bid and asked prices thereof,
regular way on such Exchange, on such day.  If shares of the
stock to be received upon conversion are not then listed on
the New York Stock Exchange, Inc., such market value shall
be determined in an equitable manner fixed by the Board of
Directors.  Upon any conversion, no adjustment shall be made
for dividends on the Convertible Preferred Stock surrendered
for conversion or on the Common Stock delivered.  The Corpora-
tion shall pay all issue taxes, if any, incurred in respect
of the issue of the Common Stock on conversion, provided,

however, that the Corporation shall not be required to pay any transfer or other taxes incurred by reason of the issuance of such Common Stock in names other than those in which the Convertible Preferred Stock surrendered for conversion may stand.

(4)  Any conversion of Convertible Preferred Stock into shares of Common Stock shall be made by the surrender to the Corporation, at the office of any transfer agent for the Convertible Preferred Stock, of the certificate or certificates representing the share or shares of Convertible Preferred Stock to be converted, duly endorsed or assigned (unless such endorsement or assignment be waived by the Corporation), together with a written request for conversion.

(5)  All shares of Convertible Preferred Stock which shall have been surrendered for conversion as herein provided shall no longer be deemed to be outstanding and all rights with respect to such shares, including the rights, if any, to receive notices and to vote, shall forthwith cease and terminate except only the right of the holders thereof to receive Common Stock in exchange therefor.  Any shares of Convertible Preferred Stock so converted shall be permanently retired, shall no longer be deemed outstanding and shall not under any circumstances be reissued and the Corporation may from time to time take such appropriate corporate action as may be necessary to reduce the authorized Convertible Preferred Stock accordingly.

(6)   In case of any consolidation or merger of the Corporation with or into another corporation, or in case of any sale or conveyance to another corporation of the property of the Corporation as an entity or substantially as an entity, the holder of each share of Convertible Preferred Stock then outstanding shall have the right thereafter to convert such share into the kind and amount of shares of stock and other securities and property receivable, upon such consolidation, merger, sale or conveyance, by a holder of the number of shares of Common Stock (whole or fractional) of the Corporation into which such share of Convertible Preferred Stock might have been converted immediately prior to such consolidation, merger, sale or conveyance.   In the event of any such consolidation, merger, sale or conveyance (a) effective provision shall be made, in the charter of the continuing or successor corporation or otherwise, so that in the opinion of the Board of Directors of the Corporation the provisions set forth herein for the protection of the conversion rights of the Convertible Preferred Stock shall thereafter be applicable, as nearly as reasonably may be, to any such other shares of stock and other securities and property deliverable upon conversion of the Convertible Preferred Stock remaining outstanding or other convertible preferred stock received by the holders in place thereof, and (b) any such continuing or successor corporation shall expressly assume the obligation to deliver, upon the exercise of

the conversion privilege, such shares, securities or property as the holders of shares of the Convertible Preferred Stock remaining outstanding, or other convertible preferred stock received by the holders in place thereof, shall be entitled to receive pursuant to the provisions hereof, and to make provision for the protection of the conversion right as above provided. In case securities or property other than Common Stock shall be issuable or deliverable upon conversion as aforesaid, then all references under the subcaption "Conversion" shall be deemed to apply, so far as appropriate and as nearly as may be, to such other securities or property.

(7)  A number of shares of authorized Common Stock sufficient to provide for the conversion of the Convertible Preferred Stock outstanding upon the basis hereinbefore provided shall at all times be reserved for such conversion. If the Corporation shall propose to make any change in its capital structure which would change the number of shares of Common Stock into which each share of the Convertible Preferred Stock would be convertible as herein provided, the Corporation shall at the same time also make proper provision so that thereafter there shall be a sufficient number of shares of Common Stock authorized and reserved for conversion of the outstanding Convertible Preferred Stock on the new basis.

(8)  In the event the Corporation elects to make any distribution (other than cash dividends, or distributions payable

in its Common Stock which give rise to an adjustment pursuant to subparagraph (2) above) to holders of its Common Stock, or to offer to holders of its Common Stock for subscription, pro rata, additional shares of its Common Stock, or securities convertible into its Common Stock, it will at least fifteen days prior to the date or expected date for determining stockholders entitled to such distribution or subscription rights, give notice thereof by mail to the registered holders of the Convertible Preferred Stock.

(9)  In the event the Corporation shall issue rights or warrants to the holders of its Common Stock, entitling them to subscribe for or to purchase Common Stock or securities convertible into Common Stock, then, in such case, the holders of the Convertible Preferred Stock shall, for the purpose of such issue or distribution, be treated as though they had converted their stock into Common Stock immediately prior to the record date of such issue or distribution, and shall be entitled to receive such rights or warrants on a basis proportionately equal to the number of shares of Common Stock they would have held if their stock had been so converted.

E.  **Voting Rights**

(1)  Each holder of Convertible Preferred Stock shall be entitled to .6275 of a vote for each share held and, except

as otherwise provided by law or by the provisions of the follow-
ing subparagraph (2), the Convertible Preferred Stock and the
Common Stock of the Corporation (and any other capital stock
of the Corporation at the time entitled to vote generally)
shall vote together as one class.

(2)  At any time when six (6) quarterly dividends on
the Convertible Preferred Stock shall be in default, the holders
of the Convertible Preferred Stock at the time or times out-
standing shall be entitled, at the next annual meeting of
stockholders or special meeting held in place thereof, at which
time the number of directors constituting the Board of Direc-
tors shall be increased by two, voting as a class, to the ex-
clusion of the holders of Common Stock and any other outstand-
ing capital stock of the Corporation, to vote for and elect
two members of the Board of Directors of the Corporation to
fill such newly created directorships.  All rights of the
Convertible Preferred Stock to participate in the election of
directors pursuant to this subparagraph (2) shall continue in
effect until cumulative dividends have been paid in full or
set apart for payment on the Convertible Preferred Stock.
Whenever the holders of the Convertible Preferred Stock shall
be divested of such voting right hereinabove provided, the di-
rectors so elected by the Convertible Preferred Stock shall
thereupon cease to be directors of the Corporation and there-
upon the number of directors shall be reduced by two.  Directors

elected by the holders of the Convertible Preferred Stock
voting separately as a class, may be removed only by a major-
ity vote of such class, voting separately as a class, so long
as the voting power of such class shall continue.  At any time
when the special voting right provided for in this subpara-
graph (2) shall be vested in the holders of the Convertible
Preferred Stock, holders of the Convertible Preferred Stock
shall not be entitled to vote for the election of directors
except as provided in this subparagraph (2).  During any
period in which the holders of shares of Convertible Pre-
ferred Stock have the right to elect directors as provided
for herein, any vacancy in the directors elected by such
holders shall be filled by the vote of the remaining director
theretofore elected by such holders.  If not so filled within
40 days after the creation thereof, the Secretary of the Cor-
poration shall call a special meeting of the holders of the
Convertible Preferred Stock and such vacancy or vacancies
shall be filled at such special meeting.

(3)  The consent of the holders of not less than
two-thirds of the shares of Convertible Preferred Stock at the
time outstanding, given in person or by proxy, at an annual
meeting or a special meeting called for the purpose, at which
the Convertible Preferred Stock shall vote separately as a
class, shall be necessary to effect the alteration of any of
the provisions of the Certificate of Incorporation or By-Laws

of the Corporation so as to affect adversely the rights or preferences of the Convertible Preferred Stock, it being understood that the creation of, or the increase in the authorized amount of, any stock ranking prior to the Convertible Preferred Stock shall be deemed to affect adversely the rights or preferences of the Convertible Preferred Stock.

### PARITY OF 4.6% CUMULATIVE PREFERRED STOCK AND $1.20 CONVERTIBLE PREFERRED STOCK

The shares of 4.6% Cumulative Preferred Stock and the shares of $1.20 Convertible Preferred Stock shall rank equally with respect to dividend rights and rights upon liquidation, dissolution or winding up.

### COMMON STOCK

Subject to all of the rights of the 4.6% Cumulative Preferred Stock and the $1.20 Convertible Preferred Stock, dividends may be paid upon the Common Stock as and when declared by the Board of Directors out of any funds legally available for the payment of dividends.

Upon any liquidation, dissolution or winding up of the Corporation, whether voluntary or involuntary, and after the holders of the 4.6% Cumulative Preferred Stock and $1.20 Convertible Preferred Stock shall have been paid in full the amounts to which they respectively shall be entitled, or an amount sufficient to pay the aggregate amount to which the

Incorporation of Federal is deleted in its entirety and the following provision is inserted in lieu thereof:

The term "junior stock" shall mean the Common Stock and any other stock ranking junior to the 4.6% Cumulative Preferred Stock and $1.20 Convertible Preferred Stock in respect of the payment of dividends or of payment in liquidation, or both, in accordance with the subject matter of the context;

FOURTH:  The date of the filing of the Certificate of the Incorporation of Federal by the Department of State of the State of New York was March 3, 1916.  The date of filing of the Certificate of Incorporation of Riegel by the Department of State of the State of Delaware was March 31, 1955. The date when Riegel's application for authority to do business was filed by the Department of State of the State of New York was April 25, 1955.

FIFTH:  The Merger was authorized:

(a)  By the vote of the holders of 2/3 of all outstanding shares of 4.6% Cumulative Preferred Stock and Common Stock of Federal entitled to vote thereon, voting as separate classes, at a Special Meeting of stockholders of said corporation duly called and held on December 23, 1971,

STATE OF *NEW YORK* )
                    : ss.:
COUNTY OF *NEW YORK* )

JOHN R. KENNEDY, JR., being duly sworn, deposes and says that he is President of Federal Paper Board Company, Inc., one of the corporations mentioned and described in the foregoing instrument; that he has read and signed the same; and that the statements contained therein are true.

John R. Kennedy, Jr.,
President

Sworn to before me this
29th day of December,
1971.

Notary Public

STUART POTTER
Notary Public, State of New York
No. 03145910
Qualified in Bronx County
Certificate filed in New York County
Commission Expires March 30, 1973

CERTIFICATE OF MERGER

OF

FEDERAL PAPER BOARD COMPANY,
INC.

AND

FLIEGEL PAPER CORPORATION

INTO

FEDERAL PAPER BOARD COMPANY,
INC.

Under Section 904 of the
Business Corporation Law

Dated: December 29, 1971

WHITE & CASE
14 Wall Street
New York, N.Y. 10005