UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEORGIA-PACIFIC CONSUMER PRODUCTS, LP,<br><br>　　　　　　Plaintiff,<br><br>- against -<br><br>INTERNATIONAL PAPER CO.,<br><br>　　　　　　Defendant. | Case No.:  07 CV 9627 (SHS) (THK)<br><br>ECF CASE |

# DEFENDANT INTERNATIONAL PAPER'S REPLY
# IN SUPPORT OF ITS MOTION TO DISMISS

Dated: December 28, 2007
　　　New York, New York

Joseph Serino, Jr.
Atif Khawaja
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York  10022-4611
Telephone:　(212) 446-4800
Facsimile:　(212) 446-4900

*Counsel for Defendant International Paper Co.*

# **TABLE OF CONTENTS**

A.  BECAUSE RPC ASSUMED ALL OF FEDERAL'S ENVIRONMENTAL LIABILITY FOR THE NEW JERSEY OPERATIONS, GEORGIA-PACIFIC'S COMPLAINT SHOULD BE DISMISSED. ................................................................... 2

B.  GEORGIA-PACIFIC'S MISINTERPRETATION OF THE CONTRACT IS UNAVAILING AND ITS COMPLAINT SHOULD BE DISMISSED. ............................ 4

   1.  Georgia-Pacific Offers An Unsustainable Contract Interpretation That Should Not Be Adopted. ................................................................................................. 4

   2.  Even Under Georgia-Pacific's Interpretation, The Contract Compels RPC's Assumption of Federal CERCLA Liability For the New Jersey Operations. ......... 6

C.  GEORGIA-PACIFIC'S REQUEST FOR A DECLARATION THAT IT NEED NOT INDEMNIFY INTERNATIONAL PAPER SEEKS AN IMPROPER ADVISORY OPINION. ............................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Cases**

*A-C Reorganization Trust v. E.I. DuPont de Nemours & Co.*,
     No. 94-cv-574, 1997 WL 381962 (E.D. Wis. Mar. 10, 1997) ...................... 6, 8

*Aluminum Co. of Am. v. Beazer East, Inc.*,
     124 F.3d 551 (3d Cir. 1997) .................................................................. 7

*Beazer East, Inc. v. Mead Corp.*,
     34 F.3d 206 (3d Cir. 1994) ................................................................... 3

*BP Amoco Corp. v. Sun Oil Co.,*
     166 F. Supp. 2d 984 (D. Del. 2001) ....................................................... 9

*Broder v. Cablevision Sys. Corp.*,
     418 F.3d 187 (2d Cir. 2005) .................................................................. 6

*Buffalo Color Corp. v. AlliedSignal, Inc.*,
     139 F. Supp. 2d 409 (W.D.N.Y. 2001) .................................................... 3

*Chrysler Corp. v. Ford Motor Co.*,
     972 F. Supp. 1097 (E.D. Mich. 1997) .................................................... 9

*Columbia Propane, L.P. v. Wisconsin Gas Co*,
     661 N.W.2d 776 (Wis. 2003) ................................................................. 9

*FSP, Inc. v. Societe Generale,*
     No. 02-cv-4786, 2003 WL 124515 (S.D.N.Y. 2003) ............................... 10

*GNB Battery Techs., Inc. v. Gould Inc.*,
     65 F.3d 615 (7th Cir. 1995) ................................................................... 8

*Gopher Oil Co. v. Bunker*,
     84 F.3d 1047 (8th Cir. 1996) ................................................................. 9

*John S. Boyd Co. v. Boston Gas Co.*,
     992 F.2d 401 (1st Cir. 1993) ................................................................. 3

*Malleolo v. Malleolo*,
     731 N.Y.S.2d 752 (N.Y. App. Div. 2001) ................................................ 8

*N. Shore Gas Co. v. Saloman Inc.*,
     152 F.3d 642 (7th Cir. 1995) ................................................................. 8

*Olin Corp. v. Consol. Aluminum Corp.*,
     5 F.3d 10 (2d Cir. 1993) ............................................................... 2, 6, 10

*Purolator Prods. Corp. v. AlliedSignal, Inc.*,
    772 F. Supp. 124 (W.D.N.Y. 1991) .............................................................................. 3, 7, 8

*Scott v. NG U.S. 1, Inc.*,
    854 N.E.2d 981 (Mass. App. Ct. 2006) ................................................................................ 9

*This is Me, Inc. v. Taylor*,
    157 F.3d 139 (2d Cir. 1998) ................................................................................................. 5

*U.S. v. Iron Mountain Mines, Inc.*,
    987 F. Supp. 1233 (E.D. Calif. 1997) .................................................................................. 2

*U.S. v. Vermont Am. Corp.*,
    871 F. Supp. 318 (W.D. Mich. 1994) .................................................................................. 9

In its rush to seek *judgment*,[1] Georgia-Pacific ("GP") has ignored that it must first satisfy the threshold pleading requirements for stating a viable claim. *See* Fed. R. Civ. P. 12(b)(6). In that regard, GP's opposition papers fail to rebut several critical points established by International Paper. Indeed, GP does not even try to controvert the showing that International Paper's predecessor, Federal, purchased and held the relevant New Jersey Operations for mere months in their century-old history. And GP does nothing of merit or substance to rebut International Paper's showing that the parties contractually agreed to transfer *all* assets and liabilities of those New Jersey Operations -- including the liabilities now the subject of GP's action -- from Federal to GP's predecessor, RPC.[2]

If anything, GP's opposition papers confirm that its complaint fundamentally lacks legal basis. For example, GP concedes, as it must, that present liability for CERCLA and other environmental statutes can be freely transferred under such pre-CERCLA contracts. GP Opp. at 21.[3] And GP does not deny that the language of the Contract here is sweeping enough to transfer all types of Federal liability to RPC, including, critically, environmental liability. GP Opp. at 22. Rather, faced with these inescapable concessions, GP resorts to ignoring and misstating settled precedent and twisting the Contract language in the hope of supporting an untenable interpretation: that RPC assumed only those liabilities that existed as of the Contract closing date. As International Paper previously established, however, GP's tortured construction is unavailing as a matter of law because the Contract plainly and unambiguously transferred to RPC all of Federal's liabilities, including environmental liabilities for the New Jersey Operations. Finally, GP's additional request for a judicial declaration denying an indemnification claim that is undisputedly not ripe improperly

---

[1] To the extent the Court permits Georgia-Pacific's Motion for Summary Judgment (D.I. 13) at this time, International Paper will separately file its opposition papers.

[2] The Federal-RPC contract (the "Contract") is available at D.I. 10, Exhibit 1.

[3] Reference to "GP Opp." is to Georgia-Pacific's Memorandum In Support of Its Motion For Summary Judgment And In Opposition To Defendant's Motion To Dismiss" (D.I. 16). Reference to "IP Mem." is to International Paper's Memorandum Of Law In Support Of Its Motion to Dismiss" (D.I. 11).

seeks an advisory opinion. Accordingly, GP's complaint must be dismissed in its entirety for failing to state a claim upon which relief may be granted.

    **A.    BECAUSE RPC ASSUMED ALL OF FEDERAL'S ENVIRONMENTAL LIABILITY FOR THE NEW JERSEY OPERATIONS, GEORGIA-PACIFIC'S COMPLAINT SHOULD BE DISMISSED.**

As an initial matter, GP's complaint is foreclosed because the Contract unambiguously transfers environmental liability for the New Jersey Operations from Federal to RPC.[4] IP Mem. at 7-10. GP does not deny that the Contract transferred environmental liability attributable to the New Jersey Operations to RPC, nor can it, as environmental liability "unmistakably" falls within each and every category of liability that RPC explicitly assumed. IP Mem. at 7-10. And it is well-settled that the contractual transfer of environmental liability is enough to effect the transfer of subsequent CERCLA liability. *See, e.g., U.S. v. Iron Mountain Mines, Inc.*, 987 F. Supp. 1233, 1241 (E.D. Calif. 1997) ("There are many precedents for the proposition that CERCLA liability can be assumed by a pre-CERCLA agreement so long as the agreement contains language broad enough to allow us to say that the parties intended to transfer either contingent environmental liability, or all liability."). Moreover, GP is unable to identify any Contract provision that excludes environmental liability of any type from assumption by RPC, as the plain terms of the Contract otherwise require. *See* Contract, at 2 (excluding from assumption only those liabilities "***expressly excluded in this Agreement*** or listed in Scheduled C")[5]; IP Mem. at 9.

While GP acknowledges, as it must, that the assumption of environmental liability transfers subsequent CERCLA liability, to avoid such liability here, GP resorts to cavalierly importing added limitations on how that liability must be transferred. GP Opp. at 10 (stating the requirement that the "indemnity 'clearly refers' to the type of environmental liability at issue"), 22 (noting that "neither

---

[4]   It is undisputed that the parties' contractual intent controls the present question of CERCLA assumption. *See Olin Corp. v. Consol. Aluminum Corp.*, 5 F.3d 10, 15 (2d Cir. 1993) (cited at GP Opp. at 9).

[5]   Except where noted, all emphasis has been added, and internal citations and quotations have been omitted.

2

the Purchase Agreement nor the Assumption Agreement 'clearly refers' to the assumption by RPC of any liabilities for environmental contamination -- let alone the liabilities under any environmental remediation statute."). Such a showing, however, is irrelevant.

Indeed, none of GP's cited cases establish such a narrow standard. To the contrary, the very cases cited by GP belie its contention that the parties must "specifically provide" for the transfer of environmental liability. GP Opp. at 22. Instead, that case law clearly establishes that a general transfer of environmental liability -- such as that effected under the Contract here -- sufficiently transfers subsequent CERCLA liability. *See, e.g.*, *Purolator Prods. Corp. v. AlliedSignal, Inc.*, 772 F. Supp. 124, 130 (W.D.N.Y 1991) ("[An] agreement which shows that the parties intended to resolve all their disputes involving any type of claim includes CERCLA claims, ***even if the agreement is framed in general terms and does not specifically refer to CERCLA or to environmental liability***."); *Beazer East, Inc. v. Mead Corp.*, 34 F.3d 206, 211 (3d Cir. 1994) ("We must look to see whether an indemnification provision is either specific enough to include CERCLA liability or ***general enough to include any and all environmental liability*** which would, naturally, include subsequent CERCLA claims."); *Buffalo Color Corp. v. AlliedSignal, Inc.*, 139 F. Supp. 2d 409, 419 (W.D.N.Y. 2001) ("A pre-CERCLA indemnification provision covers response costs if it is either specific enough to include CERCLA liability or ***general enough to include any and all environmental liability***."); *John S. Boyd Co. v. Boston Gas Co.*, 992 F.2d 401, 406 (1st Cir. 1993) ("To transfer CERCLA liability, the Agreement must contain ***language broad enough to allow us to say that the parties intended to transfer either contingent environmental liability***, or all liability.") (all cited at GP Opp. at 10). Notwithstanding its misstatement of the law, GP never disputes that the Contract's sweeping assumption language is broad enough to transfer environmental liability. As a matter of law, therefore, that assumption included subsequent CERCLA liability for the New Jersey Operations.

Furthermore, GP has no answer to the multiple future obligations contemplating environmental consequences that RPC expressly assumed at the New Jersey Operations, including "***underground tank and pump***," "***garbage dumping***," and the "***installation of a power complex***." *See* Contract, at Schedule B; IP Mem. at 10. Even if that contractual assumption "does not constitute an assumption of Federal's liabilities to clean up environmental contamination," as GP presumes (GP Opp. at 22) -- a dubious assertion given the very nature of the above-referenced activities -- it clearly embodies the parties' intent to transfer the burdens of those activities to RPC. That these obligations were transferred to RPC also demonstrates the parties' intent to relieve Federal of any continuing environmental liability under the Contract.

Because RPC assumed environmental liability relating to the New Jersey Operations, it is now responsible for any related CERCLA liability, and the Court should dismiss GP's complaint for failure to state a valid claim. *See* Fed. R. Civ. P. 12(b)(6).

### B.   GEORGIA-PACIFIC'S MISINTERPRETATION OF THE CONTRACT IS UNAVAILING AND ITS COMPLAINT SHOULD BE DISMISSED.

#### 1.   Georgia-Pacific Offers An Unsustainable Contract Interpretation That Should Not Be Adopted.

In an attempt to absolve itself of CERCLA liability, GP seeks to limit RPC's assumption to only those Federal liabilities "that existed on the closing date." GP Opp. at 11. That limitation, however, does not exist in the Contract. And, importing such a limitation now would wrongly vitiate the plain terms of the Contract providing for the transfer of ***all*** of Federal's liabilities to RPC. *See* Contract, at Annex A (transferring "all of Federal's debts and liabilities of every kind, character or description … which are directly attributable to the New Jersey Operations, as the same exist on the date hereof"). GP's interpretation to the contrary is therefore improper. IP Mem. at 13, n.7.

To support its flawed reading, GP resorts to divorcing words of the Contract from the terms that naturally precede them. Indeed, both phrases GP relies upon -- "on the Closing Date" and "as

4

the same exist on the date hereof" -- actually describe and modify the phrase "***New Jersey Operations***" that immediately precedes them and that is, in fact, the subject of the contractual transfer. *See* Contract, at 2 (providing for "the assumption by RPC of the liabilities of Federal directly attributable to the New Jersey Operations on the Closing Date"); *id.* at Annex A (transferring liabilities "directly attributable to the New Jersey Operations, as the same exist on the date hereof"). Thus, these phrases do not limit RPC's assumption of any subsequently-arising CERCLA liability, but rather require that the transferred liabilities be attributable to the New Jersey Operations as those operations existed on the closing date.

That this is the only plausible reading is confirmed by the otherwise undisputed terms of the Contract. For example, there is no dispute that the Contract immediately recites the same "on the closing date" phrase to describe the New Jersey Operations assets transferred to RPC:

> ***Federal shall, at the Closing hereinafter referred to, convey … to RPC***, and RPC shall purchase, the assets and properties (the "Properties") consisting of and including all of Federal's business and related operations *(the "New Jersey Operations"), ... together with all assets and properties of Federal, real and personal, tangible and intangible, directly attributable to the New Jersey Operations on the Closing Date*[.]

*Id.* at 1. As consideration for this transfer, RPC agreed to pay $6.7 million and to assume all Federal liabilities attributable to these assets. *See id.* at 2; IP Mem. at 8. To ensure that RPC assumed only those liabilities attributable to the transferred assets, the Contract likewise required that RPC assume liabilities attributable to the New Jersey Operations as these operations existed when the Contract closed. *Compare* Contract, at 1 *with id.* at 2 and Annex A. Accordingly, the assumption language merely conforms to the asset transfer language, with both provisions unambiguously referring to the New Jersey Operations as they existed on the closing date. Significantly, GP's own cited case law requires that these provisions be read to have the same meaning. *See, e.g., This is Me, Inc. v. Taylor*, 157 F.3d 139, 143 (2d. Cir. 1998) ("New York law requires that all writings which form part of a single transaction and are designed to effectuate the

5

same purpose be read together") (cited at GP Opp. at 12).

### 2. Even Under Georgia-Pacific's Interpretation, The Contract Compels RPC's Assumption of Federal CERCLA Liability For the New Jersey Operations.

As a matter of law, because GP's proffered interpretation of the Contract is contradicted by the Contract's unambiguous terms, this Court need not even entertain GP's reading. *See Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005). But even if this Court were to consider GP's strained interpretation that RPC assumed only those liabilities existing as of the closing date, the fact remains that RPC cannot escape CERCLA liability for the New Jersey Operations.

First, GP cannot avoid the established precedent holding that a sweeping assumption of all liabilities -- as in the Contract here -- also transfers CERCLA liability, regardless of the presence of any temporal limitation. IP Mem. at 13-14. Indeed, at least one federal court applying New York law has squarely rejected GP's reading of an identical contract provision, holding that an otherwise sweeping assumption is not limited by a "closing date" limitation:

> Furthermore, although the *Olin*[6] agreement specifically referenced liabilities arising after the closing date, the instant agreements do not. ***However, the language referring to liabilities of "any kind, character or description*, *whether accrued, absolute, contingent or otherwise* … *as all the same shall exist at the Closing Date" suffices to cover CERCLA liability that would later accrue for a predecessor's previous acts.***

*A-C Reorganization Trust v. E.I. DuPont de Nemours & Co.*, No. 94-cv-574, 1997 WL 381962, at *6 (E.D. Wis. Mar. 10, 1997) (ellipsis in original). GP offers no factual basis on which to distinguish this holding, and instead contends, without citation to any subsequent ruling, that it was "contrary to New York law." GP Opp. at 21. That, of course, is insufficient to overcome its import

---

[6] Unable to challenge its holding, Georgia-Pacific mistakenly suggests that *Olin Corp. v. Consol. Aluminum Corp.*, 5 F.3d 10 (2d Cir. 1993) was "selectively" quoted by International Paper. GP Opp. at 19. *Olin*, however, confirms the impropriety of GP's pending claim, as the Second Circuit held that a pre-CERCLA contract was "sufficiently broad to encompass CERCLA liability." 5 F.3d at 15. GP makes much of the fact that the contract there included liabilities that "arise thereafter;" however, GP fails to mention that that contract also required that any assumption include liabilities "as they exist on the Closing Date." *Id.* More significantly, as the *A-C Reorganization Trust* decision makes clear, such temporal limitations have been held to be irrelevant to the court's ultimate holding. 1997 WL 381962, at *6 (noting that notwithstanding the absence of the "arise thereafter" language, "There is no significant difference between the indemnification agreement in this case and that in *Olin*.").

here, as GP cannot now reargue that case.  Because *A-C Reorganization Trust* is exactly on-point, GP's pending complaint must be dismissed.

Further, as even GP concedes, it is settled law that a sweeping contractual assumption of all liabilities transfers CERCLA liability.  GP Opp. at 21 (acknowledging that "straightforward position").  In a vain attempt at evading such precedent, GP seeks to distinguish this law by arguing that no temporal limitation was present there.  GP misses the point, as it is exactly the breadth of the contractual assumption provision that renders any temporal limitation immaterial.  *See, e.g.*, *Purolator*, 772 F. Supp. at 132 ("***In view of the breadth of its terms***, the fact that the indemnity agreement was entered into prior to the enactment of CERCLA does not prevent its being applied to CERCLA liability."); *Aluminum Co. of Am. v. Beazer East, Inc.*, 124 F.3d 551, 566 (3d Cir. 1997) ("***this clear and unambiguous pre-CERCLA provision***, ***whereby Beazer assumed all of the liabilities and obligations of ALT of whatsoever nature***, is sufficiently broad to encompass assumption of CERCLA liabilities.").  Like those contracts, the Contract here involved the transfer of ***all*** Federal liability, and accordingly it should not be read differently.

Second, adopting GP's request to limit RPC's assumption to only those liabilities existing at the time of the Contract's closing would improperly read out the express assumption by RPC of ***all*** Federal liabilities "***whether accrued, absolute, contingent or otherwise***."  *See* Contract, at Annex A; IP Mem. at 13.  Indeed, that contractual phrase expressly contemplates RPC's assumption of not only existing, accrued liabilities as of the 1972 closing date -- as GP now argues -- but also those liabilities "contingent or otherwise," that may arise in the future.[7]

---

[7] Lest there be any doubt, a "contingent liability" is defined as "a liability that depends on the ***occurrence of a future and uncertain event***."  BLACK'S LAW DICTIONARY 926 (7th ed. 1999).  In contrast, an "accrued liability" is one that currently exists and "is properly chargeable in a given accounting period but that is not yet paid."  *Id.* at 925.  Further, the phrase "otherwise" should refer to liabilities neither "accrued," nor "contingent" to avoid redundancy.  *See Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992).  That the parties contracted for RPC's assumption of all liabilities, whether "accrued, absolute, contingent or otherwise" confirms their unmistakable intent to assign subsequently-arising Federal liabilities to RPC, in addition to those existing at the closing date.

7

Significantly, GP does not refute the substantial case law that predicates a finding of CERCLA liability on exactly that type of contractual provision. *See, e.g., Purolator,* 772 F. Supp. at 131 (construing identical contractual phrase to extend to subsequent CERCLA liability); *A-C Reorganization Trust*, 1997 WL 381962, at *5; *see also GNB Battery Techs., Inc. v. Gould Inc.*, 65 F.3d 615, 623 (7th Cir. 1995) ("GNB's interpretation of the term 'incurred' fails to give meaning to a significant portion of paragraph three. Paragraph three states that "GNB shall assume ... any and all liabilities of any nature (whether accrued, absolute, contingent or otherwise)"); *Olin*, 5 F.3d at 16 (transferring CERCLA liability to buyer who assumed "all liabilities (absolute or contingent)"). In fact, no case relied upon by GP in its attempt to advance such a limitation involves a similar contractual assumption of all liabilities "whether accrued, absolute, contingent or otherwise." And in one case cited by GP, the court expressly commented that failing to transfer CERCLA liability under such a contract would "*eviscerate*" those controlling terms:

> Unlike the 1941 Plan, the contract in *GNB* stated that purchaser would assume liabilities of any nature "whether accrued, absolute, contingent or otherwise." ***To hold that that contract excluded CERCLA liabilities would have therefore "eviscerated" many terms in the agreement.***

*N. Shore Gas Co. v. Saloman Inc.*, 152 F.3d 642, 652 n.5 (7th Cir. 1995) (quoted at GP Opp. at 18). This Court should likewise not read out such a provision here. *See Malleolo v. Malleolo*, 731 N.Y.S.2d 752, 753 (N.Y. App. Div. 2001) (quoted at GP Opp. at 13).

Third, the cases cited by GP where a court did not find that CERCLA liability was contractually transferred are entirely distinguishable from the case at bar. While these cases purport to advance GP's closing date limitation, they fundamentally rest on different contractual provisions critical to the court's ultimate holding. GP Opp. at 17-19. Significantly, the contracts in those cases transferred only narrowly-defined liabilities, in contrast to the sweeping assumption provision here, transferring undisclosed, contingent, and other liabilities. In many of those cases, in fact, the court expressly distinguished the underlying contracts from the very provisions found here:

8

- The contract in *U.S. v. Vermont Am. Corp.*, 871 F. Supp. 318, 321 (W.D. Mich. 1994) expressly precluded the buyer's assumption of "[a]ny liability which is not set forth in the Agreement ... ." In contrast, the Contract here transferred all liabilities to RPC, "whether disclosed or undisclosed" in the Contract. *See* Contract, at Annex A; *see also* IP Mem. at 12.

- The court in *Chrysler Corp. v. Ford Motor Co.*, 972 F. Supp. 1097, 1109-10 (E.D. Mich. 1997), expressly distinguished the 1956 contract at issue there from ones written in the 1970s that transferred contingent liabilities, like the 1972 Contract here: "Given the awareness of pollution costs in the 1970s, a broad acceptance of all contingent liabilities at that time likely included environmental cleanup, and thus might be said to include CERCLA liability even before that legislation had been enacted."

- The contract in *N. Shore Gas,* 152 F.3d at 652 (7th Cir. 1998), was limited to only those liabilities "accrued to or existing on the date of transfer." In contrast, the Contract here transferred all liabilities "whether absolute, accrued, contingent or otherwise." Contract, at Annex A. Indeed, as noted above, the court expressly commented that failing to transfer CERCLA liability in view of that contract phrase would "eviscerate" those terms. *Id.*

- The court in *John S. Boyd Co. v. Boston Gas Co.*, 992 F.2d 401, 407 (1st Cir. 1993), held that under that contract, "the only liabilities assumed were those known, existing, and somehow accounted for at the time of execution" and significantly, that "[n]o reference is made to any future or contingent liabilities." In contrast, the Contract here explicitly extends to all liabilities, "whether absolute, accrued, contingent or otherwise." Contract, at Annex A. That distinction is equally applicable to *Scott v. NG U.S. 1, Inc.*, 854 N.E.2d 981, 992 (Mass. App. Ct. 2006) (summarizing the *Boyd* ruling).

- Likewise, the contract in *Columbia Propane, L.P. v. Wisconsin Gas Co*, 661 N.W.2d 776, 784-85 (Wis. 2003), was limited to only "then outstanding debts, obligations, contracts and liabilities." In contrast, the Contract here extends to all liabilities, "contingent or otherwise." Contract, at Annex A.

- The contract in *Gopher Oil Co. v. Bunker*, 84 F.3d 1047, 1052 (8th Cir. 1996), was expressly limited to only those known liabilities outstanding at the closing. In contrast, the Contract here extends to all liabilities "undisclosed" and "contingent or otherwise." Contract, at Annex A.

- The court in *BP Amoco Corp. v. Sun Oil Co.,* 166 F. Supp. 2d 984, 995 (D. Del. 2001) was dealing with an entirely different claim of warranty breach. There, a buyer argued that a seller breached a contractual representation and thus incurred CERCLA expense because it represented that it would disclose "liabilities of any nature, whether absolute, accrued, contingent or otherwise, and whether due or to become due." *Id.* The court distinguished the instant claim involving a sweeping buyer's assumption clause from the seller's pre-purchase representation at issue, noting that the latter: "merely serve as assurance that the seller has not failed to disclose known defects or undesirable liabilities that would impact the sale price." *Id.*

Finally, as a matter of undisputed fact, even under GP's closing date limitation, the environmental contamination that is now the subject of CERCLA liability "existed at the time of the

9

closing." To be sure, GP states repeatedly that there was no pollution to the New Jersey Operations after RPC's contractual acquisition, and that all contamination occurred ***prior*** to the Contract closing in 1972. *See* Complaint at ¶ 11 ("the mills did not dispose of wastes at the landfill after RPC purchased the New Jersey Operations"); GP Opp. at 6 ("RPC did not dispose of any wastes at the site"); *id.* at 24 ("all of the substances disposed of at the Crown Vantage Landfill … were disposed of before RPC bought assets from Federal"). As such***, there is no dispute that the very pollution now subject to CERCLA cleanup existed on the Contract closing date,***[8] and accordingly GP's purported limitation is immaterial. Additionally, given GP's acknowledgement that this contamination plainly existed at the time the Contract closed, GP cannot deny that the resulting cleanup costs were foreseeable to RPC and thus a "contingent liability" expressly assumed by RPC under the Contract. *See* Contract, at Annex A.

### C.   GEORGIA-PACIFIC'S REQUEST FOR A DECLARATION THAT IT NEED NOT INDEMNIFY INTERNATIONAL PAPER SEEKS AN IMPROPER ADVISORY OPINION.

GP does not deny that International Paper has yet to fund any cleanup or discharge any environmental liability related to the New Jersey Operations. As such, no obligation to indemnify International Paper for such actions exists. *See, e.g., FSP, Inc. v. Societe Generale,* No. 02-cv-4786, 2003 WL 124515, at *5 (S.D.N.Y. 2003); IP Mem. at 15. GP cannot avoid this outcome by noting its own discussions and undertakings with the EPA, which are of course completely irrelevant to any obligation to indemnify International Paper for its EPA dealings. GP Opp. at 24 n.8. Because no indemnification claim is presently ripe, GP's request for a judicial declaration that it need not satisfy such a claim is not justiciable. *See Olin,* 5 F.3d at 17 (2d Cir. 1993).

---

[8]   This motion to dismiss must credit all Plaintiff complaint assertions as fact. *See* Fed. R. Civ. P. 12(b)(6).

|  |  |
|---|---|
| Dated: December 28, 2007<br>New York, New York | KIRKLAND & ELLIS LLP<br><br>    /s Joseph Serino, Jr.                        <br>Joseph Serino, Jr.<br>Atif Khawaja<br>Citigroup Center<br>153 East 53rd Street<br>New York, New York  10022-4611<br>Telephone:    (212) 446-4800<br>Facsimile:      (212) 446-4900<br><br>*Counsel for Defendant International Paper Co.* |