UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEORGIA-PACIFIC CONSUMER PRODUCTS, LP,<br><br>      Plaintiff,<br><br>- against -<br><br>INTERNATIONAL PAPER CO.,<br><br>      Defendant. | Case No.:  07 CV 9627 (SHS) (THK)<br><br>ECF CASE |

# **DECLARATION OF JOSEPH SERINO, JR.**

I, Joseph Serino, Jr., pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am a partner in the law firm of Kirkland & Ellis LLP, counsel for Defendant International Paper Company ("International Paper") in this matter.  I am fully familiar with the facts and circumstances of this action.

2. I submit this declaration in support of International Paper's Rule 56(f) Motion for Continuance and Discovery to Respond to Plaintiff Georgia-Pacific Consumer Products, L.P.'s ("Georgia-Pacific") Motion for Summary Judgment (the "Summary Judgment Motion").

3. I believe that the discovery described in this Declaration is the minimum necessary to fully respond to Georgia-Pacific's pending Summary Judgment Motion and that the discovery outlined herein relates to facts that are relevant to resolution of the assertions that Georgia-Pacific makes therein.

## PROCEDURAL HISTORY

4. Georgia-Pacific filed its complaint in this matter on October 30, 2007. *See* D.I. 1. That complaint seeks a judicial declaration surrounding the transfer of certain liabilities between the parties' predecessors. *Id.* at 11.

5. On December 3, 2007, International Paper moved pursuant to Rule 12(b)(6) to dismiss that complaint in its entirety for failure to state a valid claim (the "Motion to Dismiss"). *See* D.I. 10. Briefing on the Motion to Dismiss is now complete, and that motion is pending before the Court.

6. On December 17, 2007, Georgia-Pacific filed its Motion for Summary Judgment. *See* D.I. 13; D.I. 16 (the "Summary Judgment Brief").

7. International Paper has not yet answered Georgia-Pacific's complaint.

8. No discovery has been taken in these proceedings. No Rule 16 case management conference has taken place. And the parties have not exchanged initial disclosures pursuant to Fed. R. Civ. P. 26.

9. Should the Court grant the pending Motion to Dismiss, Georgia-Pacific's Motion for Summary Judgment will be mooted.

## BACKGROUND OF RELEVANT FACTS

10. According to pleadings and motions filed by the parties to date, the relevant facts on this Rule 56(f) motion are as follows:

11. As alleged by the complaint, the environmental liability at issue stems from the activities at four paper mills and related properties in New Jersey. *See e.g.,* D.I. 1, at ¶¶ 22, 25. These mills and properties are defined as the "New Jersey Operations" in the complaint. *Id.* at ¶ 1.

12. The New Jersey Operations have been in existence in at least some degree for more than a century and owned by various entities. *See id.* at ¶¶ 9-11.

13. International Paper's predecessor, Federal Paper Board Co. ("Federal"), owned the New Jersey Operations for less than a few months between late 1971 and early 1972. *See* Summary Judgment Brief at 3-4; D.I. 1 at ¶¶ 9, 13. Federal purchased the New Jersey Operations from the Riegel Paper Company ("Old Riegel") in December 1971 (*see id.* at ¶ 9) and then sold the entirety of those Operations to Georgia-Pacific's predecessor, the Riegel Products Corporation ("RPC")in February 1972. *See id.* at ¶ 13.

14. Upon information and belief, Old Riegel and RPC shared common owners and management during the time that the New Jersey Operations was transferred to and from Federal.

15. The Federal-RPC sale and asset transfer was effected pursuant to a Contract executed on February 23, 1972 (the "Contract"). *See id* at ¶¶ 14-16; Summary Judgment Brief at 4-5.

16. That Contract also transferred all liabilities for the New Jersey Operations to RPC. *Id.,* D.I. 10, at Exhibit 2, at 2, Annex A

17. After the Contract's closing in 1972, RPC and its successors owned the New Jersey Operations. *See* Complaint at ¶ 20.

3

18. In its complaint and Summary Judgment Motion, Georgia-Pacific contend that neither it nor its predecessors engaged in any environmental contamination at the New Jersey Operations. *See id.* at ¶ 23, Summary Judgment at 24-25.

19. Georgia-Pacific states in its complaint and Summary Judgment Motion that the (Environmental Protection Agency ("EPA") has determined that hazardous substances were disposed of at the New Jersey Operations, and that Georgia-Pacific is a potentially responsible party under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") for the related "investigation and clean-up activities … required at the site." Summary Judgment Brief at 5; *see also* Complaint at ¶¶ 23-24.

## INTERNATIONAL PAPER'S REQUEST FOR DISCOVERY

20. In its Summary Judgment Brief, Georgia-Pacific contends that it should be awarded judgment because "it has no liability for the Crown Vantage Landfill because it is not a potentially responsible party within the meaning of CERCLA and because RPC did not assume Federal's CERCLA liabilities for the site." Summary Judgment Brief at 7; *see also* Complaint at ¶ 28.

21. Georgia-Pacific further contends that International Paper assumed the environmental liabilities at issue through its 1971 merger with Federal, and that International Paper must therefore bear the responsibilities relating to resolving those liabilities: "Federal knowingly succeeded to all of the liabilities of Old Riegel when it chose to merge with Old Riegel, and International Paper knowingly succeeded to all liabilities of Federal not assumed by RPC when it chose to merge with Federal." Summary Judgment Brief at 24.

22. To support its claim for summary judgment, Georgia-Pacific provided factual assertions to "put the present dispute in context." *Id.* at 3. To that end, its Summary Judgment Motion offers multiple documents beyond the relevant Contract. These extrinsic materials include, for example:

(i) An undated "letter of intent," *see id.* at Exhibit D, *see also* Georgia-Pacific Brief at 16 n.6 ("**the Court should consider** the letter of intent signed by the parties");

(ii) A Certificate of Merger between Federal and Old Riegel, *see* D.I. 15 at Exhibit E;

(iii) An excerpted International Paper SEC Registration Statement, *see id.* at Exhibit F;

(iv) 2005 correspondence between the EPA and International Paper, *see id.* at Exhibit G; and

(v) A settlement agreement between the EPA and Georgia-Pacific, *see id.* at Exhibit H.

23. International Paper seeks discovery of facts relevant to the current dispute, as framed by Georgia-Pacific's Summary Judgment Motion. The requested discovery, as outlined below, tracks the factual assertions Georgia-Pacific sets forth in its pending Summary Judgment Motion, including (i) the pre-contractual activities of Federal and RPC; (ii) activities contemporaneous to the Contract, and (iii) post-Contract activities that Georgia-Pacific asserts are relevant to the resolution of this dispute.

### A. Pre-Contract Activities

24. In its Summary Judgment Brief, Georgia-Pacific contends that the present environmental liabilities of the New Jersey Operations at issue belong to Federal due to its pre-Contract activities in acquiring those Operations. *See* Summary Judgment Brief at 3-4:

> Unlike Federal's purchase of Old Riegel, which was structured as a merger, RPC's purchase of the New Jersey Operations was carefully structured as an asset transfer. Because RPC engaged in an asset purchase, it did not automatically succeed to any liabilities of Federal and, instead, succeeded only to those liabilities it voluntarily agreed to assume.

*Id.* at 4.

25. In view of this, International Paper is entitled to the following discovery:

- A Rule 30(b)(6) deposition of Georgia-Pacific on (i) the events and circumstances under which the New Jersey Operations were transferred from Old Riegel to Federal to RPC; and (ii) any relationship between Old Riegel on the one hand and RPC on the other between December 1971 and April 1972.

- Any and all documents in Georgia-Pacific's possession, custody, or control relating to (i) the transfer of the New Jersey Operations from Old Riegel to Federal to RPC, including without limitation, any contracts, draft contracts, memoranda, or correspondence; and (ii) Old Riegel's ownership, maintenance, and/or activities at the New Jersey Operations.

26. Upon information and belief, Georgia-Pacific may have in its possession, custody, or control, information responsive to this request since its predecessor, RPC, was also owned and operated by those who owned and operated Old Riegel.

27. To the extent International Paper must oppose the Summary Judgment Motion, this information is relevant and necessary for multiple reasons. First, the information will permit a better understanding of the factual basis for Georgia-Pacific's contention that there was a qualitative difference between the events surrounding Federal's 1971 acquisition of the New Jersey Operations and its months-later transfer of those Operations to RPC. As alleged by Georgia-Pacific, the difference between those transfers is relevant to the assumption of the present liabilities at issue, and International Paper should be able to conduct discovery to understand the facts surrounding that transfer.

28.  Additionally, any possible overlap in the ownership and management by the two parties who transferred the relevant New Jersey Operations *to* Federal in December 1971 and then *from* Federal in 1972 bears directly on the nature of the Federal-RPC transaction and the liabilities that were transferred.  Such factual information would also bear on what liabilities the contracting parties understood to "exist" at the New Jersey Operations in 1972, which Georgia-Pacific contends is a relevant issue *(see ¶¶ 28-29, infra)*.  For example, International Paper is entitled to know if, through common ownership with Old Riegel, RPC expressly knew about environmental contamination at the New Jersey Operations, but chose not to expressly exclude it from assumption in its Contract with Federal.

29. In its Summary Judgment Brief, Georgia-Pacific contends that it was the parties' intent that RPC assume only those liabilities "existing as of the closing date." Summary Judgment Brief  at 11-12.  International Paper is entitled to the following discovery to better understand the parties' intent surrounding what liabilities were transferred:

- A Rule 30(b)(6) deposition of Georgia-Pacific regarding due diligence undertaken or collected by RPC in connection with its acquisition of the New Jersey Operations, including but not limited to any assessment of liabilities of the New Jersey Operations and any valuations of the New Jersey Operations.

- Any and all documents in Georgia-Pacific's possession, custody, or control relating, to any due diligence collected or undertaken by RPC, or any valuation of the New Jersey Operations in connection with its acquisition of the New Jersey Operations.

30. To the extent International Paper must oppose the Summary Judgment Motion, this information is relevant to understand the circumstances under which the parties negotiated the Contract, including RPC's own awareness and understanding of the assets and liabilities surrounding the New Jersey Operations.  For example, this evidence may show that RPC was fully aware of environmental contamination at the New Jersey Operations, and that

environmental liabilities "existed" as of the 1972 closing date. The parties' awareness of specific liabilities is especially relevant since the Contract is structured to exclude only those liabilities that are explicitly identified. *See* D.I.10 at Exhibit 2, at 2 (excluding from assumption by RPC only those liabilities "expressly excluded in this Agreement or listed in Schedule C"). That the parties knew of certain "existing" liabilities, but chose not to expressly carve them out in the Contract would be persuasive proof of the contractual intent to transfer these liabilities, including those now at issue, to RPC.

### B. Activities Contemporaneous to the Contract

31. In its Summary Judgment Brief, Georgia-Pacific goes beyond the terms of the integrated Contract to introduce a purported "letter of intent" to support its reading of the Contact. *Id.* at 16 n. 6. Georgia-Pacific states that "[t]his letter constitutes further proof that the parties intended RPC to assume liabilities of Federal only to the extent that such liabilities existed at the time of the closing."

32. Given Georgia-Pacific's insertion of extrinsic evidence into the interpretation of the Contract, International Paper is entitled to the following discovery:

- Any and all documents in Georgia-Pacific's possession, custody, or control relating, to the drafting, negotiation, and execution of the 1972 Contract; including without limitation, any documents regarding any contemplated, considered, and/or agreed-upon terms of that Contract; the letter of intent; any term sheets; and drafts.
- A Rule 30(b)(6) deposition of Georgia-Pacific regarding the events surrounding the negotiation and execution of the Contract, including without limitation, the letter of intent.

33. To the extent International Paper must oppose the Summary Judgment Motion, this information is relevant to responding to Georgia-Pacific's assertions surrounding the parties' contractual intent. For example, pre-contract communications could confirm that the contracting

parties intended to transfer any and all Federal liability for the New Jersey Operations to RPC, regardless of when it arose.  Additionally, that certain contractual terms were memorialized in pre-Contract correspondence, but did not make it to the executed Contract would demonstrate that the parties did not intend for such terms to part of their bargain.  For these reasons, International Paper is entitled to discovery surrounding communications and events surrounding the negotiation and execution of the Contract and any letters of intent.

### B.  Post-Contract Activities

34. As stated in paragraph 29 above, Georgia-Pacific contends that RPC assumed only those liabilities "existing as of the closing date."  International Paper is therefore entitled to the following discovery to better understand the parties' contractual intent surrounding transferred liabilities:

- A Rule 30(b)(6) deposition of Georgia-Pacific on (i) the identity of all liabilities for the New Jersey Operations that RPC assumed from Federal under the Contract and the status and/or resolution of those liabilities, including without limitation, those "existing on the closing date" of the Contract; and (ii) the circumstances under which Georgia-Pacific, or any of its predecessors, have ever informed Federal, or any of Federal's successors, that RPC and/or RPC's successors were not liable for any liability at the New Jersey Operations, including without limitation, environmental liability.

- Any and all documents in Georgia-Pacific's possession, custody, or control relating, to the identity, status, and/or resolution of any liability for the New Jersey Operations, including without limitation, any correspondence, memoranda, or reports identifying those liabilities, related claim or indemnification demand letters, settlement materials, and/or litigation pleadings.

35. Georgia-Pacific's summary judgment claim rests on its contention that it did not assume certain Federal liabilities under this contract because those claims did not "exist" as of the closing date.  To the extent International Paper must now oppose that motion, International Paper should accordingly be able to examine the precise New Jersey Operations liabilities that

Georgia-Pacific has previously assumed. That information could reveal that notwithstanding this action, Georgia-Pacific's predecessors have a history of treating any and all liability arising from the New Jersey Operations as entirely their own, and thus contractually assumed from Federal. Moreover, to the extent Georgia-Pacific has previously assumed other environmental liabilities for the New Jersey Operations that are not at issue, those facts would bear directly on the parties' conduct and practice surrounding the contractual transfer of Federal liabilities.

36. Further, that Georgia-Pacific (or any successor to RPC) has accepted and/or discharged purportedly "Federal" liabilities for the New Jersey Operations that may not have "existed" at the time of the closing date, bears on the credibility of Georgia-Pacific's present assertions, and even conceivably whether Georgia-Pacific is estopped from raising that interpretation now. Indeed, facts surrounding how Georgia-Pacific discharged these New Jersey Operations liabilities are particularly relevant, as Georgia-Pacific may have never before sought indemnification from Federal or its successors for liabilities that did not -- under Georgia-Pacific's own interpretation -- "exist" as of the closing date. International Paper should be entitled to explore that history, or lack thereof.

37. In its Summary Judgment Motion, Georgia-Pacific asserts that the EPA has found environmental contamination at the New Jersey Operations. *See* Summary Judgment Brief at 5-6. It further asserts that RPC and its successors were not responsible for such contamination. *See id.* at 24-25 ("the vast majority of the contamination at the sites was caused by International Paper's predecessors, not by RPC"). Additionally, it asserts that it has entered into an "Administrative Settlement Agreement and Order on Consent" with the EPA, because of its desire "to be environmentally responsible and a good corporate citizen." *Id.* at 6.

38. Georgia-Pacific further states that summary judgment is warranted because it will accordingly permit Georgia-Pacific to "proceed with its discussions with the EPA comforted with the knowledge that it has meaningful remedies against International Paper." *Id.* at 24.

39. Accordingly, International Paper is entitled to discover facts surrounding these assertions, including Georgia-Pacific's actions with respect to the presence and treatment of environmental contamination at the New Jersey Operations, its discussions with the EPA regarding that contamination and its clean-up, and the actions of its predecessors with respect to the New Jersey Operations.  As such, International Paper should receive the following discovery:

- A Rule 30(b)(6) deposition of Georgia-Pacific relating to RPC and its successors' (i) awareness and treatment of hazardous substances at the New Jersey Operations from 1972 to the present; (ii) environmental contamination at the New Jersey Operations between 1972 and the present; (iii) interactions with the EPA regarding environmental contamination at the New Jersey Operations;

- Any and all documents in Georgia-Pacific's possession, custody, or control relating to (i) the hazardous substances that were disposed of at the New Jersey Operations, including without limitation, the preservation and maintenance of the Crown Vantage Landfill; (ii) the environmental contamination at the New Jersey Operations from 1972 to the present, including without limitation, any and all reports, test results, and/or materials related to any such investigation by Georgia-Pacific or its predecessors, including but not limited to RPC;  and (iii) its interactions with the EPA regarding environmental liability at the New Jersey Operations, including but not limited to any and all Administrative Orders issued by the EPA and related correspondence.

40. To the extent International Paper must oppose the Summary Judgment Motion, this information is plainly relevant to Georgia-Pacific's present assertions about both the state of the New Jersey Operations and its predecessors' behavior at those Operations.  The resulting information could bear on who under CERCLA is ultimately responsible for the environmental contamination that presently exists -- issues which Georgia-Pacific has directly inserted into its Summary Judgment Motion.  Moreover, to the extent Georgia-Pacific has previously accepted

11

responsibility for or represented to anyone, including the EPA, that it is responsible for the environmental contamination at the New Jersey Operations or its cleanup, that relevant admission would be evidence that could undermine its present contention that no liability arising after 1972 for the New Jersey Operations could ever be transferred to RPC or its successors. Indeed, that Georgia-Pacific has acknowledged responsibility for cleanup or liability for these past contamination activities bears directly on the credibility of its current claim and possibly whether it is entirely estopped from raising it at all.

41. As outlined above, International Paper is entitled to discovery regarding the evidence that Georgia-Pacific has unilaterally inserted into these proceedings. The specific discovery that International Paper seeks, which is summarized in the attached Appendix 1 for the ease of the Court's reference, is narrowly tailored to the activities, contracts, and correspondence that Georgia-Pacific has put at issue, and is the minimum discovery that is required for a full and complete response to Georgia-Pacific's otherwise premature Summary Judgment Motion.

42. I declare under penalty of perjury that the foregoing is true and correct.

Dated:  January 22, 2008
         New York, New York

                                                          /s Joseph Serino, Jr.
                                                        Joseph Serino, Jr.

## APPENDIX 1

The discovery International Paper seeks includes, in the way of document requests includes:

- Any and all documents in Georgia-Pacific's possession, custody, or control relating to (i) the transfer of the New Jersey Operations from Old Riegel to Federal to RPC, including without limitation, any contracts, draft contracts, memoranda, or correspondence; and (ii) Old Riegel's ownership, maintenance, and/or activities at the New Jersey Operations.

- Any and all documents in Georgia-Pacific's possession, custody, or control relating, to any due diligence collected or undertaken by RPC, or any valuation of the New Jersey Operations in connection with its acquisition of the New Jersey Operations.

- Any and all documents in Georgia-Pacific's possession, custody, or control relating, to the drafting, negotiation, and execution of the 1972 Contract; including without limitation, any documents regarding any contemplated, considered, and/or agreed-upon terms of that Contract; the letter of intent; any term sheets; and drafts of the foregoing.

- Any and all documents in Georgia-Pacific's possession, custody, or control relating, to the identity, status, and/or resolution of any liability for the New Jersey Operations, including without limitation, any correspondence, memoranda, or reports identifying those liabilities, related claim or indemnification demand letters, settlement materials, and/or litigation pleadings.

- Any and all documents in Georgia-Pacific's possession, custody, or control relating to (i) the hazardous substances that were disposed of at the New Jersey Operations, including without limitation, the preservation and maintenance of the Crown Vantage Landfill; (ii) the environmental contamination at the New Jersey Operations from 1972 to the present, including without limitation, any and all reports, test results, and/or materials related to any such investigation by Georgia-Pacific or its predecessors, including but not limited to RPC;  and (iii) its interactions with the EPA regarding environmental liability at the New Jersey Operations, including but not limited to any and all Administrative Orders issued by the EPA and related correspondence.

In addition, International Paper seeks a 30(b)(6) deposition of Georgia-Pacific on the following topics:

- On (i) the events and circumstances under which the New Jersey Operations were transferred from Old Riegel to Federal to RPC; and (ii) any relationship between Old Riegel on the one hand and RPC on the other between December 1971 and April 1972.

- Any and all due diligence undertaken or collected by RPC in connection with its acquisition of the New Jersey Operations, including but not limited to any assessment of liabilities of the New Jersey Operations and any valuations of the New Jersey Operations.

- The events surrounding the negotiation and execution of the Contract, including without limitation, the letter of intent.

- On (i) the identity of all liabilities for the New Jersey Operations that RPC assumed from Federal under the Contract and the status and/or resolution of those liabilities, including without limitation, those "existing on the closing date" of the Contract; and (ii) the circumstances under which Georgia-Pacific, or any of its predecessors, have ever informed Federal, or any of Federal's successors, that RPC and/or RPC's successors were not liable for any liability at the New Jersey Operations, including without limitation, environmental liability.

- RPC and its successors' (i) awareness and treatment of hazardous substances at the New Jersey Operations from 1972 to the present; (ii) environmental contamination at the New Jersey Operations between 1972 and the present; and (iii) interactions with the EPA regarding environmental contamination at the New Jersey Operations.