**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**GEORGIA-PACIFIC CONSUMER PRODUCTS, LP,**

                    Plaintiff,

        -against-

**INTERNATIONAL PAPER COMPANY,**

                    Defendant.

07 Civ. 9627 (SHS)

---

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S REQUEST FOR DISCOVERY AND IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Ingo W. Sprie, Jr.
David G. Kleiman
Arnold & Porter LLP
399 Park Avenue
New York, New York  10022-4690
Tel:  (212) 715-1000

*Counsel for Plaintiff Georgia-Pacific Consumer Products, LP*

January 29, 2008

# TABLE OF CONTENTS

**Page**

Preliminary Statement................................................................................................1

Argument ...................................................................................................................2

I.     INTERNATIONAL PAPER'S REQUEST FOR
       DISCOVERY SHOULD BE DENIED ...............................................................2

II.    GEORGIA-PACIFIC'S MOTION FOR SUMMARY
       JUDGMENT IS NOW RIPE FOR DECISION...................................................7

III.   GEORGIA-PACIFIC IS ENTITLED TO SUMMARY JUDGMENT ...............................8

Conclusion ................................................................................................................13

i

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)..................................................................................................5

*Canton Bio-Med., Inc. v. Integrated Liner Techs., Inc.,*
    19 F. Supp. 2d 22 (N.D.N.Y. 1998)........................................................................3

*Chrysler Corp. v. Ford Motor Co.,*
    972 F. Supp. 1097 (E.D. Mich. 1997)....................................................................10

*805 Third Ave. Co. v. M.W. Realty Assocs.,*
    461 N.Y.S.2d 778 (N.Y. 1983) ................................................................................2

*Ezpeleta v. Sisters of Mercy Health Corp.,*
    621 F. Supp. 1262 (N.D. Ind. 1985) ........................................................................8

*Flowers v. First Hawaiian Bank,*
    295 F. Supp. 2d 1130 (D. Haw. 2003)......................................................................3

*Gieringer v. Silverman,*
    731 F.2d 1272 (7th Cir. 1984) ............................................................................7-8

*Gopher Oil Co. v. Bunker,*
    84 F.3d 1047 (8th Cir. 1996) ........................................................................10, 12

*Kashfi v. Phibro-Salomon, Inc.,*
    628 F. Supp. 727 (S.D.N.Y. 1986) ..........................................................................4

*Liberty Mut. Ins. Co. v. N. Picco & Sons Contracting Co.,*
    No. 05 Civ. 217(SCR), 2008 WL 190310 (S.D.N.Y. Jan. 16, 2008)...................4, 5

*Nat'l Football League v. Vigilant Ins. Co.,*
    824 N.Y.S.2d 72 (1st Dep't 2006).............................................................................9

*North Shore Gas Co. v. Salomon Inc.,*
    152 F.3d 642 (7th Cir. 1998) ....................................................................................6

*Olin Corp. v. Consol. Aluminum Corp.,*
    5 F.3d 10 (2d Cir. 1993)..................................................................................12, 13

*Paddington Partners v. Bouchard,*
    34 F.3d 1132 (2d Cir. 1994)......................................................................................2

*Pezant v. Okeke,*
  166 F. App'x 962 (9th Cir. 2006) ...................................................................3

*Players, Inc. v. City of New York,*
  371 F. Supp. 2d 522 (S.D.N.Y. 2005)............................................................7

*RAD Ventures Corp. v. Artukmac,*
  818 N.Y.S.2d 527 (2d Dep't 2006).................................................................2

*Robin Constr. Co. v. United States,*
  345 F.2d 610 (3d Cir. 1965)...........................................................................2

*S. & S. Realty Corp. v. Kleer-Vu Indus., Inc.,*
  575 F.2d 1040 (2d Cir. 1978) .........................................................................4

*Scott v. Newsday, Inc.,* No. CV-88-0152,
  1989 WL 20598 (E.D.N.Y. Mar. 3, 1989) ......................................................2

*State by Bellaire Sanitation, Inc. v. Gopher Oil Co.,*
  No. C8-94-225, 1994 WL 328631 (Minn. Ct. App. July 12, 1994) .................10

*Thayer v. Dial Indus. Sales, Inc.,*
  85 F. Supp. 2d 263 (S.D.N.Y. 2000)...............................................................3

*United States v. Vt. Am. Corp.,*
  871 F. Supp. 318 (W.D. Mich. 1994) .............................................................10

*West, Weir & Bartel, Inc. v. Mary Carter Paint Co.,*
  307 N.Y.S.2d 449 (N.Y. 1969) .......................................................................3

*World Exhibit Corp. v. City Bank Farmers Trust Co.,*
  61 N.Y.S.2d 889 (2d Dep't 1946)...............................................................9, 10

*W.W.W. Assocs., Inc. v. Giancontieri,*
  565 N.Y.S.2d 440 (N.Y. 1990) .......................................................................3

# GLOSSARY

Georgia-Pacific cites to legal memoranda and declarations using the following abbreviations:

| Abbreviation | Document |
|---|---|
| IP Mem. | Defendant International Paper's Memorandum Of Law In Support Of Its Motion To Dismiss |
| IP Reply Mem. | Defendant International Paper's Reply In Support Of Its Motion To Dismiss |
| IP 56(f) Mem. | Defendant's Memorandum Of Law In Support Of Its Rule 56(f) Motion For Continuance And Discovery To Respond To Plaintiff's Motion For Summary Judgment |
| GP Mem. | Plaintiff's Memorandum In Support Of Its Motion For Summary Judgment And In Opposition To Defendant's Motion To Dismiss |
| GP 56.1 Statement | Plaintiff's Statement Of Undisputed Material Facts Pursuant To Local Civil Rule 56.1 |
| Serino Decl. | Declaration Of Joseph Serino, Jr., dated January 22, 2008 |
| Sprie Decl. | Declaration Of Ingo W. Sprie, Jr. In Opposition To Plaintiff's Rule 56(f) Request For Discovery And In Further Support Of Plaintiff's Motion For Summary Judgment |

**Preliminary Statement**

Plaintiff Georgia-Pacific Consumer Products, LP ("Georgia-Pacific") respectfully submits this memorandum in opposition to the request of defendant International Paper Company ("International Paper") for discovery under Federal Rule of Civil Procedure 56(f) and in further support of its motion for summary judgment.

International Paper's request for discovery is without merit and constitutes a transparent stalling tactic designed to delay resolution of this case. Georgia-Pacific's motion for summary judgment presents a pure issue of law appropriately resolved by this Court without reference to extrinsic evidence. The motion is based on the language of the Purchase Agreement and the Assumption Agreement, relevant New York rules of contract construction, and numerous decisions of other courts interpreting similar contractual language as excluding the assumption of CERCLA liabilities. International Paper itself has previously admitted that the Court can interpret the contracts as a matter of law without reference to extrinsic evidence.

Because International Paper's request for discovery should be denied, Georgia-Pacific's motion for summary judgment is ripe for decision. A request for discovery under Rule 56(f) does not stay a motion for summary judgment or entitle the party opposing the motion to submit additional briefing if the request for discovery is denied. Because International Paper will likely contend that its papers in support of its own motion to dismiss should be considered in opposition to summary judgment, Georgia-Pacific briefly addresses certain arguments in International Paper's reply memorandum to which Georgia-Pacific did not previously have an opportunity to respond. As shown below, International Paper's arguments are without merit.

The Court should deny International Paper's request for discovery and grant Georgia-Pacific's motion for summary judgment.

<u>**Argument**</u>

**I.    INTERNATIONAL PAPER'S REQUEST**
**FOR DISCOVERY SHOULD BE DENIED**

Federal Rule of Civil Procedure 56(f) provides that "[i]f a party opposing the motion [for

summary judgment] shows by affidavit that, for specified reasons, it cannot present facts

essential to justify its opposition, the court may:  (1) deny the motion; (2) order a continuance to

enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or

(3) issue any other just order."  Fed. R. Civ. P. 56(f).  The Second Circuit has held that a party

seeking discovery under Rule 56(f) must submit an affidavit that (a) identifies the nature of the

discovery sought, (b) demonstrates "how the facts sought are reasonably expected to create a

genuine issue of material fact," (c) shows "what efforts the affiant has made to obtain those

facts" and (d) demonstrates "why those efforts were unsuccessful."  *Paddington Partners v.*

*Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994).  This demonstration must be "genuine and

convincing."  *Scott v. Newsday, Inc.*, No. CV-88-0152, 1989 WL 20598, at *9 (E.D.N.Y. Mar. 3,

1989) (quoting *Robin Constr. Co. v. United States*, 345 F.2d 610, 614 (3d Cir. 1965)).

In this case, International Paper cannot show that any of the matters it seeks to "explore"

in discovery are relevant to presenting a material question of fact with respect to interpreting the

relevant agreements because interpreting the agreements presents no questions of fact

whatsoever.  Whether the agreements must be read to exclude CERCLA liabilities is an issue of

law.  *See 805 Third Ave. Co. v. M.W. Realty Assocs.*, 461 N.Y.S.2d 778, 780 (N.Y. 1983)

("Interpretation of the contract is a legal matter for the court . . . ."); *RAD Ventures Corp. v.*

*Artukmac*, 818 N.Y.S.2d 527, 529 (2d Dep't 2006) ("The construction and interpretation of an

unambiguous written contract is an issue of law within the province of the court . . . .").  Indeed,

International Paper's own motion to dismiss is premised on the principle that the Court can

interpret the contracts as a matter of law.  *See* IP Mem. at 5 (citing *Thayer v. Dial Indus. Sales, Inc.*, 85 F. Supp. 2d 263, 269 (S.D.N.Y. 2000) ("Issues of contract interpretation are generally matters of law . . . .")).

      Extrinsic evidence would become potentially relevant only if the Court found that the intent of the parties could not be determined from the language of the agreements.  *See W.W.W. Assocs., Inc. v. Giancontieri*, 565 N.Y.S.2d 440, 443 (N.Y. 1990) ("Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible . . . ."); *West, Weir & Bartel, Inc. v. Mary Carter Paint Co.*, 307 N.Y.S.2d 449, 452 (N.Y. 1969) ("[C]ircumstances extrinsic to the agreement will not be considered when the intention of the parties can be gathered from the instrument itself.").  Moreover, as a matter of case management, it clearly makes sense to rule on whether the agreements can be interpreted as a matter of law before proceeding with needless discovery.

      Because Georgia-Pacific's motion presents a pure issue of law, International Paper cannot delay summary judgment by claiming a need for discovery.  *See Pezant v. Okeke*, 166 F. App'x 962, 963 (9th Cir. 2006) (affirming denial of motion for continuance of summary judgment motion because "only questions of law were at issue"); *Flowers v. First Hawaiian Bank*, 295 F. Supp. 2d 1130, 1132 (D. Haw. 2003) ("The Court DENIES Plaintiffs' request for a continuance under Rule 56(f) because the issues involved are primarily questions of law . . . ."); *Canton Bio-Med., Inc. v. Integrated Liner Techs., Inc.*, 19 F. Supp. 2d 22, 27 (N.D.N.Y. 1998) (denying a Rule 56(f) request for discovery where issues presented in summary judgment "are questions of law").

      International Paper's arguments to the contrary are without merit.  International Paper contends that "summary judgment should not be entered against a non-movant unless and until

that party has had sufficient opportunity to take discovery." IP 56(f) Mem. at 4. But none of the cases it cites for this proposition involves a motion for summary judgment where a contract could be interpreted as a matter of law. And it is well-established that "[i]f there are no relevant disputed issues of fact, a court may consider a motion for summary judgment *even before discovery begins.*" *Liberty Mut. Ins. Co. v. N. Picco & Sons Contracting Co.*, No. 05 Civ. 217(SCR), 2008 WL 190310, at *4 (S.D.N.Y. Jan. 16, 2008) (citation and internal quotation marks omitted) (emphasis added); *see also S. & S. Realty Corp. v. Kleer-Vu Indus., Inc.*, 575 F.2d 1040, 1044 (2d Cir. 1978) (affirming summary judgment entered before the commencement of discovery); *Kashfi v. Phibro-Salomon, Inc.*, 628 F. Supp. 727, 736 n.10 (S.D.N.Y. 1986) (granting summary judgment after very limited discovery because "the contract is unambiguous and . . . further discovery . . .would be pointless").[1]

International Paper seeks to engineer a need for discovery by mischaracterizing facts that Georgia-Pacific provided to the Court by way of background as supposedly integral to Georgia-Pacific's motion. For example, International Paper's Rule 56(f) declaration asserts that "Georgia-Pacific contends that it should be awarded judgment because 'it has no liability for the Crown Vantage Landfill . . . .'" Serino Decl. ¶ 20. But International Paper cites to the section of Georgia-Pacific's memorandum entitled "Statement Of Background Facts," which among other things, informed the Court of the parties' overall positions with respect to contamination at the New Jersey Operations. Georgia-Pacific does not contend that any of these background facts (other than the language of the agreements) are relevant to interpreting the agreements. *See* GP Mem. at 3; GP 56.1 Statement. Similarly, International Paper's assertion that Georgia-Pacific's

---

[1] The Federal Rules of Civil Procedure clearly contemplate that motions for summary judgment may be appropriate without any discovery having taken place, as the rules permit the plaintiff to file a motion within twenty days of the commencement of the action. Fed. R. Civ. P. 56(a)(1).

4

motion is based on the letter of intent executed prior to the transaction (Serino Decl. ¶ 31) is incorrect. *See* GP 56.1 Statement (identifying as the basis for the motion the language of the Purchase Agreement and the Assumption Agreement, but not the letter of intent).[2]

International Paper cannot stave off summary judgment by claiming that it is entitled to "explore" and create a dispute about background facts. The United States Supreme Court has held unequivocally that only a "genuine" issue of "material fact" will preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "material fact" is one that "might affect the outcome of the suit under the governing law." *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*; *see also Liberty Mutual*, 2008 WL 190310, at *4 (disputed "irrelevant facts" cannot prevent summary judgment). Here, no amount of discovery can create an issue of material fact to prevent summary judgment because no facts are material to the legal interpretation of the contracts.[3]

Finally, even if extrinsic evidence were relevant -- and it is not -- International Paper's request for discovery would be impermissibly speculative and grossly overreaching.

---

[2]  A footnote in Georgia-Pacific's memorandum in support of its motion for summary judgment and in opposition to International Paper's motion to dismiss described the letter of intent because International Paper's motion to dismiss referred to the letter. IP Mem. at 13 n.6. Georgia-Pacific made clear that it "believes that it is entitled to summary judgment based on the agreements [*i.e.*, the Purchase Agreement and the Assumption Agreement], without reference to extrinsic evidence." GP Mem. at 16 n.6.

[3]  Any suggestion that discovery is needed to determine whether the parties' dispute is ripe for resolution also would be without merit. Georgia-Pacific has entered into an Administrative Order on Consent with respect to the Crown Vantage Landfill. The EPA has also issued a Unilateral Administrative Order ("UAO") against International Paper with respect to the Crown Vantage Landfill. Sprie Decl. ¶ 8, Ex. F. The UAO requires International Paper to "participate in the performance of the remedial investigation and feasibility study ('RI/FS') at the Crown Vantage Landfill's Superfund Site ('Site'), as well as certain removal activities." Letter from Sarah P. Flanagan, Assistant Regional Counsel, EPA, to Brian Heim, Senior Counsel, Environment, Health and Safety, Int'l Paper Co. (Dec. 31, 2007) (attaching the UAO), Sprie Decl. ¶ 8, Ex. F. International Paper does not -- and cannot -- deny the authenticity of these documents. In view of the fact that the EPA is taking action with respect to the Crown Vantage Landfill and both parties are subject to orders issued by the EPA, it is hard to imagine how the parties' dispute could be any more ripe for judicial decision. Even if International Paper were to disclaim any intent to seek indemnity from Georgia-Pacific, the parties' dispute would still be ripe because interpretation of the agreements will affect Georgia-Pacific's ability to bring a cost recovery action against International Paper. *See* GP Mem. at 23-24.

International Paper fails to explain how any of the hypothetical matters that it speculates might be found in discovery would even come close to discharging its burden under New York law of proving an "unmistakable intent" that Riegel Products Corporation ("RPC") indemnify Federal Paper Board Company ("Federal") for future CERCLA liabilities. *See* GP Mem. at 8-9 (citing cases applying the "unmistakable intent" standard). For example, International Paper seeks discovery concerning the history of hazardous materials disposal at the New Jersey Operations because it supposedly might "bear on who under CERCLA is ultimately responsible for the environmental contamination that presently exists." Serino Decl. ¶ 40. The manner in which clean-up costs for the New Jersey Operations might ultimately be allocated will be an issue in any CERCLA cost recovery action that Georgia-Pacific ultimately files, but it is not an issue relevant to this declaratory judgment action, which seeks only an interpretation of the Purchase Agreement and the Assumption Agreement.

Similarly, International Paper seeks discovery concerning Georgia-Pacific's discussions with the Environmental Protection Agency ("EPA") on the ground that it might show that "Georgia-Pacific has previously accepted responsibility for . . . environmental contamination at the New Jersey Operations or its cleanup [and] that relevant admission would be evidence that could undermine its present contention that no liability arising after 1972 for the New Jersey Operations could ever be transferred to RPC or its successors." *Id.* This contention is without merit because indemnity agreements are effective to allocate liabilities as between two contracting parties, but have no effect on the potential liability of those parties to the EPA. *See North Shore Gas Co. v. Salomon Inc.*, 152 F.3d 642, 648 (7th Cir. 1998). Likewise, International Paper's request for discovery concerning "the identity, status, and/or resolution of *any* liability for the New Jersey Operations" over the course of decades (Serino Decl. ¶ 34 (emphasis added))

bears no reasonable relationship to defendant's burden to prove that RPC expressed an

unmistakable intent to indemnify Federal with respect to future CERCLA claims when those

parties negotiated 35 years ago.

In sum, International Paper fails to show that any discovery is necessary to adjudicate

Georgia-Pacific's motion for summary judgment, and its request for delay should therefore be

denied.

## II.    GEORGIA-PACIFIC'S MOTION FOR SUMMARY JUDGMENT IS NOW RIPE FOR DECISION

Georgia-Pacific's motion for summary judgment is now, with the submission of the

instant memorandum, fully briefed and ripe for decision.

Pursuant to the Stipulation and Order dated January 7, 2008, International Paper's

response to the summary judgment motion was due January 21, 2008.  Under the Federal Rules

of Civil Procedure, International Paper had an obligation to set forth any and all arguments

against summary judgment it believed were available.  International Paper's decision to file only

a Rule 56(f) request for discovery does not stay Georgia-Pacific's motion or entitle International

Paper to additional briefing if the request for discovery is denied.  As Judge Marrero explained:

> [T]here is no support for [the] argument that a Rule 56(f) motion,
> no matter how frivolous, automatically stays a motion for summary
> judgment and entitles the party resisting summary judgment to
> submit additional briefing even if the Rule 56(f) motion is denied.
> Rule 56(f) does not contemplate such an automatic stay . . . .

*Players, Inc. v. City of New York*, 371 F. Supp. 2d 522, 534 (S.D.N.Y. 2005).  The Seventh

Circuit similarly held that "[t]here is no basis . . . either in the language of the rule or in the case

law" for the proposition that "the mere filing of a Rule 56(f) motion should stay automatically

the proceedings on the underlying motion for summary judgment." *Gieringer v. Silverman*, 731

F.2d 1272, 1280 (7th Cir. 1984); *see also Ezpeleta v. Sisters of Mercy Health Corp.*, 621 F.

Supp. 1262, 1276 (N.D. Ind. 1985).

Application of the principle that a Rule 56(f) request does not automatically stay

consideration of a summary judgment motion is particularly appropriate in this case.

International Paper, by letter dated December 18, 2007, requested that "Plaintiff's summary

judgment motion be held in abeyance until resolution of Defendant's motion to dismiss." Letter

from Joseph Serino, Jr. to the Honorable Sidney H. Stein (Dec. 18, 2007) (Sprie Decl. ¶ 3,

Ex. A). Georgia-Pacific opposed that request, and it was not ruled upon by the Court. *See* Sprie

Decl. ¶¶ 4-6, Exs. B-D. Thereafter, Georgia-Pacific agreed to International Paper's request for

an extension of time to respond to Georgia-Pacific's motion. *See* Stipulation and Order (Jan. 7,

2008). Under these circumstances, International Paper had an obligation to make all of its

arguments against summary judgment.

International Paper has obviously made a tactical decision not to say any more in

opposition to summary judgment than it has said in its request for discovery and in its

memoranda in support of its own motion to dismiss. Accordingly, Georgia-Pacific's motion is

ripe for decision.

## III.    GEORGIA-PACIFIC IS ENTITLED TO SUMMARY JUDGMENT

International Paper presumably will ask the Court to consider the arguments it made in

support of its motion to dismiss as its opposition to summary judgment. Because Georgia-

Pacific did not have an opportunity to respond to certain arguments International Paper made in

its reply memorandum, Georgia-Pacific briefly responds to those arguments now and

demonstrates that they are without merit.

8

*First*, International Paper's reply makes a new argument with respect to the Assumption Agreement. The Assumption Agreement provides in part that RPC would assume

> all of Federal's debts and liabilities of every kind, character or description, whether known or unknown, whether disclosed or undisclosed, whether accrued, absolute, contingent or otherwise, and whether or not reflected or reserved against in Schedules A or B to the Agreement and which are directly attributable to the New Jersey Operations, as the same exist on the date hereof, and does hereby agree to pay, perform and discharge, when due, all of the said debts and liabilities; . . . .

Assumption Agreement at 1-2. While International Paper initially focused on the term "all" (IP Mem. at 7), its reply focuses on the words "whether accrued, absolute, contingent or otherwise." *See* IP Reply Mem. at 7-8. It contends that those words, and particularly the word "otherwise," show an intent that RPC assume liabilities that might arise under future-enacted laws. *Id.*

This argument fails for all of the same reasons that International Paper's argument based on the word "all" failed. GP Mem. at 13-14. The words on which International Paper now focuses, just like the word "all," are limited by the subsequent key phrase "as the same exist on the date hereof." Moreover, it is plain that "accrued," "absolute," and "contingent" liabilities are all types of liabilities recognized under the law as it existed on the closing date. Reading the word "otherwise" to radically expand the meaning of the phrase to include liabilities under future-enacted laws would violate fundamental rules of contract construction. For example, such a reading would be inconsistent with the term "on the date hereof" and deprive that term of meaning. It would also violate the rule that, where several words appear in a series, the words must be interpreted with reference to all of the words around them. *See Nat'l Football League v. Vigilant Ins. Co.*, 824 N.Y.S.2d 72, 75-76 (1st Dep't 2006). Because "accrued," "absolute," and "contingent" liabilities all constitute liabilities under laws existing on the closing date, International Paper cannot read the term "otherwise" to bring into the scope of the assumption

future liabilities under laws that had not yet been enacted. *See World Exhibit Corp. v. City Bank Farmers Trust Co.*, 61 N.Y.S.2d 889, 892-93 (2d Dep't 1946) (rejecting the appellant's expansive interpretation of the contractual term "or otherwise" and stating that the term "must be confined in its meaning by the specific enumeration which precedes it").

Further, International Paper's argument is contrary to decisions construing pre-CERCLA assumption agreements with similar language as excluding the assumption of future CERCLA liability. For example, the agreement in *Gopher Oil Co. v. Bunker*, 84 F.3d 1047, 1052 (8th Cir. 1996), which was held to exclude the assumption of CERCLA liabilities, contained language nearly indistinguishable from that at issue here:

> All liabilities of the Company *of any nature, whether accrued, absolute, contingent, or otherwise,* existing at closing, to the extent not reflected or reserved against in full in the Company's financial statements or otherwise mentioned or excepted herein, . . . arising out of transactions entered into, or any state of facts existing, prior to such date.

*State by Bellaire Sanitation, Inc. v. Gopher Oil Co.*, No. C8-94-225, 1994 WL 328631, at *1 (Minn. Ct. App. July 12, 1994) (emphasis added and omitted) (involving the same agreement and setting forth in detail the provision addressed by the Eighth Circuit). Similarly, the agreement in *United States v. Vt. Am. Corp.*, 871 F. Supp. 318 (W.D. Mich. 1994), referred to "[a]ll additional debts, obligations, and liabilities of the Seller, *whether or not matured and whether or not contingent, existing on the Closing Date.*" *Id.* at 321 (emphasis in original). And the agreement in *Chrysler Corp. v. Ford Motor Co.*, 972 F. Supp. 1097 (E.D. Mich. 1997), in which the court also held that future CERCLA liabilities were excluded, used the phrase "all liabilities of Kaiser ... existing on the closing date *of every nature whatsoever, whether absolute of [sic] or contingent . . . .*" *Id.* at 1108 (emphasis added).

10

International Paper's new argument fails for yet another reason. As previously demonstrated, the Purchase Agreement and New York rules of contract construction require that the Assumption Agreement be interpreted in a manner consistent with the Purchase Agreement. *See* GP Mem. at 12-13. Because the Purchase Agreement can only be read as limiting the liabilities assumed to those existing on the closing date, the Assumption Agreement must be interpreted in the same way. *Id.*

*Second*, International Paper contends that the provision of the Purchase Agreement providing for the transfer of assets to RPC supports its argument. The provision states:

> Federal shall, at the Closing hereinafter referred to, convey, sell, assign and transfer to RPC, and RPC shall purchase, the assets and properties (the "Properties") consisting of and including all of Federal's business and related operations (the "New Jersey Operations") which are conducted in and/or from its mills, plants, offices and facilities located at the four New Jersey mills described in Paragraph A(1) of Schedule A attached hereto and made a part hereof, together with all assets and properties of Federal, real and personal, tangible and intangible, directly attributable to the New Jersey Operations on the Closing Date . . . .

Purchase Agreement ¶ 1. International Paper claims that this provision should be read as transferring assets of the New Jersey Operations "as those operations existed on the closing date" and that the clause transferring liabilities should be given a parallel interpretation. IP Reply Mem. at 5.

International Paper's reading of the phrase "on the Closing Date" as modifying "New Jersey Operations" is facially unreasonable because the quoted provision makes clear that the term "New Jersey Operations" is specifically defined in the Agreement; under International Paper's reading, the phrase "on the Closing Date" would be rendered superfluous. The plain and natural reading of the above provision is that Federal would transfer to RPC the assets of Federal existing on the closing date. Thus, to the extent that this provision parallels the provision for the

11

transfer of liabilities, it supports Georgia-Pacific's reading of the contract as providing for the transfer of liabilities existing on the closing date.

*Finally*, International Paper attempts to distinguish the decisions cited by Georgia-Pacific holding that language in pre-CERCLA agreements similar to that at issue here excluded CERCLA liabilities from the scope of assumed liabilities. However, its attempt consists of nothing more than juxtaposing its characterization of the cases as transferring "narrowly-defined liabilities" with its characterization of the present case as involving a "sweeping assumption provision." IP Reply Mem. at 8. These labels are no substitute for an analysis of the contractual language at issue in those cases. Such an analysis shows that the language of the agreements in those cases is extremely similar to the language at issue here. Indeed, as demonstrated above, the language in the agreement at issue in *Gopher Oil* is nearly identical to the language at issue here. *See* p. 10 above; *see also* GP Mem. at 17-19. The cases cited by Georgia-Pacific stand for the principle that a provision in a pre-CERCLA agreement limiting assumed liabilities to those existing "on the closing date" (or a similar articulation) excludes CERCLA liabilities from the scope of the assumption. That principle is directly applicable here.

International Paper also strains to obscure the fact that it misstated the language of the agreements at issue in *Olin Corp. v. Cons. Aluminum Corp.*, 5 F.3d 10 (2d Cir. 1993), and that *Olin* strongly supports Georgia-Pacific. *See* IP Reply Mem. at 6 n.6. Contrary to International Paper's assertion that "any temporal limitation [is] immaterial" (IP Reply Mem. at 7), *Olin* shows that the Second Circuit agrees with numerous other courts that have found that temporal limitations are important in determining whether a pre-CERCLA indemnity agreement reaches future CERCLA liabilities. The fact that the purchase agreement in *Olin* provided for an indemnity for liabilities "as they exist on the Closing Date *or arise thereafter*" and that the

12

Second Circuit emphasized the italicized language in concluding that the agreement at issue in that case included CERCLA liabilities shows that the court thought the italicized language was key to its result. 5 F.3d at 15 (emphasis in opinion). Conversely, the fact that the court did not italicize the words "as they exist on the Closing Date" -- the phrase at issue in this case -- shows that the court did not believe that this language was sufficient to reach CERCLA liabilities. International Paper's reliance on one wrongly decided case from Wisconsin cannot overcome *Olin* or the numerous decisions holding that pre-CERCLA agreements limiting assumed liabilities to those existing on the closing date exclude CERCLA liabilities.

## Conclusion

The Court should deny International Paper's request for discovery and grant Georgia-Pacific's motion for summary judgment.

Dated: January 29, 2008

Respectfully submitted,

By: _____
Ingo W. Sprie, Jr.
David G. Kleiman
ARNOLD & PORTER LLP
399 Park Avenue
New York, New York 10022-4690
Tel: (212) 715-1000
Fax: (212) 715-1399
Ingo.Sprie@aporter.com

*Counsel for Plaintiff Georgia-Pacific Consumer Products, LP*

13