**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GEORGIA-PACIFIC CONSUMER PRODUCTS, L.P.,<br><br>      Plaintiff,<br><br>- against -<br><br>INTERNATIONAL PAPER CO.,<br><br>      Defendant. | Case No.:  07 CV 9627 (SHS) (THK)<br><br>ECF CASE |

**DEFENDANT INTERNATIONAL PAPER'S REPLY IN SUPPORT OF ITS RULE 56(F) MOTION FOR CONTINUANCE AND DISCOVERY TO RESPOND TO PLAINTIFF'S <u>MOTION FOR SUMMARY JUDGMENT</u>**

Dated: February 8, 2008
   New York, New York

Joseph Serino, Jr.
Atif Khawaja
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York  10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

*Counsel for Defendant International Paper Co.*

**TABLE OF CONTENTS**

I.     **International Paper's Request for Continuance is Appropriate.** ................................. 1

II.    **International Paper's Request for Discovery to Oppose Georgia-Pacific's Summary Judgment Motion is Appropriate.** ........................................................................................ 3

    A.    *In Crafting its Summary Judgment Motion, Georgia-Pacific Strategically Injected Factual Assertions and Extrinsic Evidence Beyond the Contract.* .................. 3

    B.    *The Law Compels International Paper Be Afforded Discovery Pursuant to Rule 56(f) Prior to Submitting its Opposition.* ................................................................. 5

    C.    *The Discovery International Paper Seeks Is Necessary to Respond to Georgia-Pacific's Motion.* ...................................................................................................... 6

III.   **Georgia-Pacific's Sur-Reply in Response to International Paper's Dismissal Motion Is Procedurally Improper and Substantively Meritless.** ..................................................... 8

## TABLE OF AUTHORITIES

**Cases**

*Flowers v. First Haw. Bank*,
    295 F. Supp. 2d 1130 (D. Haw. 2003) ................................................................................ 5

*Holmes v. Lorch*,
    329 F. Supp. 2d 516 (S.D.N.Y. 2004) ................................................................................ 5

*Nat'l Football League v. Vigilant Ins. Co.*,
    36 A.D.3d 207 (N.Y. App. Div. 2006) .............................................................................. 9

*Pezant v. Okeke,*
    166 Fed. App'x 962 (9th Cir. 2006) .................................................................................. 5

*Players, Inc.*,
    371 F. Supp. 2d at 525-28 ............................................................................................ 5, 6

*S.W.B. New Eng. Inc. v. R.A.B. Food Group, LLC*,
    Case No. 06-CV-15357, 2007 WL 1753067 (S.D.N.Y. Jun. 13, 2007) .............................. 5

*State by Bellaire Sanitation, Inc. v. Gopher Oil Co.*, No. C8-94-225; 1994 WL 328631
    (Minn. Ct. App. July. 12, 1994) ......................................................................................... 9

*Travelers Ins. Co. v. Buffalo Reins. Co.*,
    735 F. Supp. 492 (S.D.N.Y. 1990) .................................................................................... 8

*Trust v. E.I DuPont de Nemours & Co*,
    Case No. 94-cv-574, 1997 WL 381962 (E.D. Wis. Mar. 10, 1997) ................................... 9

*World Exhibit Corp. v. City Bank Farmers Trust Co*,
    270 A.D. 654 (N.Y. App. Div. 1946) ............................................................................... 9

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 2

Fed. R. Civ. P. 56 .................................................................................................................... 2

Local Civil Rule 6.1 ................................................................................................................. 8

Rife with mischaracterizations and citations to inapposite law, Georgia-Pacific's Opposition to International Paper's Rule 56(f) Motion (the "GP Rule 56(f) Opp.") represents its latest hurried step at seeking judgment. But in its rush to conclude this matter, Georgia-Pacific offers several significant concessions that preempt resolution in its favor. *First*, Georgia-Pacific acknowledges that this Court should determine whether the contract entered by the parties' predecessors disposes of this matter -- exactly what International Paper's first-filed dismissal motion seeks to do. *See* D.I. 10-11 (the "Dismissal Motion"). As International Paper has requested, this Court should thus continue Georgia-Pacific's later-filed summary judgment motion (*see* D.I. 13) until that Dismissal Motion is resolved. *Second*, notwithstanding its improper attempts to now recast its prematurely-filed summary judgment motion, Georgia-Pacific has further confirmed that, to the extent its summary judgment request must even be addressed, International Paper should be afforded discovery. Georgia-Pacific's baseless attempt at denying such discovery is undercut by its own ongoing insertion of factual assertions and extrinsic evidence in its summary judgment papers, as well as by the clear law surrounding Rule 56(f). And Georgia-Pacific's silence on the multiple areas of Rule 56(f) discovery requested by International Paper only confirms their relevance to this matter and the appropriateness of the discovery. *Finally*, Georgia-Pacific's misplaced attempt at rearguing the Dismissal Motion through an untimely and unsanctioned sur-reply is entirely unavailing. As such, International Paper's Rule 56(f) Motion for Continuance and Discovery (the "Rule 56(f) Motion") should be granted.

## I.     International Paper's Request for Continuance is Appropriate.

Unable to take issue with the relevant procedural facts underlying this Rule 56(f) Motion, Georgia-Pacific simply ignores them. There can be no dispute that this matter remains in its infancy, with **no discovery** permitted, much less undertaken, at this point. International Paper has not even answered Georgia-Pacific's complaint. More significantly, that very complaint has yet to survive a threshold Rule 12(b)(6) dismissal challenge that remains pending. It has always been International Paper's contention, detailed in both correspondence with the Court and in its pending Rule 56(f)

Motion, that the fully-briefed and first-filed Dismissal Motion should be resolved prior to addressing Georgia-Pacific's summary judgment motion. *See* Rule 56(f) Motion at 3. Indeed, if granted, that Dismissal Motion will resolve any need to even address the summary judgment motion and related Rule 56(f) Motion. Even Georgia-Pacific now concedes that "as a matter of case management, *it clearly makes sense to rule on whether the agreements can be interpreted as a matter of law before proceeding with needless discovery*." GP Rule 56(f) Opp. at 3.[1] As such, Georgia-Pacific's summary judgment motion should be continued until after International Paper's Dismissal Motion is resolved.

To the extent that the Dismissal Motion is denied in part or in whole, International Paper should be given the opportunity for necessary discovery prior to opposing Georgia-Pacific's summary judgment motion.[2] While International Paper's Dismissal Motion demonstrates that the unambiguous terms of the relevant contract dispose entirely of this matter, if the Court disagrees with that position, International Paper should not be precluded from offering additional arguments to oppose Georgia-Pacific's summary judgment request. For example, to the extent the Court determines that it cannot grant the Dismissal Motion because the relevant contract language is ambiguous -- a predicate that Georgia-Pacific contends still mandates summary judgment in its favor (*see* Section II, *infra*) -- International Paper should be permitted to fully explore and offer extrinsic evidence in support of its interpretation when opposing summary judgment, notwithstanding its prior dismissal arguments. And while Georgia-Pacific now resorts to recharacterizing its summary judgment motion as seeking "only an interpretation of the Purchase Agreement and the Assumption Agreement," GP Rule 56(f) Opp. at 6, the relief requested in

---

[1] All emphasis has been added and all internal citations and quotations have been omitted unless otherwise noted.

[2] Incredibly, Georgia-Pacific suggests presumptuously that "International Paper will likely contend that its papers in support of its own motion to dismiss should be considered in opposition to summary judgment." GP Rule 56(f) Opp. at 1; *see also id.* at 8. That is misplaced wishful thinking, as the Rule 12(b)(6) Dismissal Motion is entirely separate from Georgia-Pacific's Rule 56 summary judgment motion. Georgia-Pacific offers no support for any contention otherwise, and indeed none exists. Further, as the text of Rule 12(b)(6) suggests, International Paper's Dismissal Motion must credit all well-pled assertions of Georgia-Pacific's complaint as fact. *See* Fed. R. Civ. P. 12(b)(6). That deference, of course, is entirely misplaced when addressing Georgia-Pacific's summary judgment motion, which must credit and draw all inferences in favor of International Paper. *See* Fed. R. Civ. P. 56.

its Complaint never even refers to the contract or its interpretation. *See* Complaint, D.I. 1 at 11 (requesting a ruling that "RPC did not assume any of Federal's liabilities under CERCLA or any other federal or state environmental clean-up statute enacted after April 3, 1972 with respect to the New Jersey Operations"). While the underlying contract can and should dispose of this matter in International Paper's favor because it demonstrates that all environmental liability at issue was long ago contractually transferred to RPC -- ***as the Dismissal Motion proves*** -- Georgia-Pacific's present request for judgment in its favor plainly implicates circumstances extending beyond the contract. For all of these reasons, consideration of and further briefing on Georgia-Pacific's summary judgment motion should be continued until after resolution of the Dismissal Motion, and/or until after the necessary Rule 56(f) discovery has taken place.

**II.     International Paper's Request for Discovery to Oppose Georgia-Pacific's Summary Judgment Motion is Appropriate.**

    *A.     In Crafting its Summary Judgment Motion, Georgia-Pacific Strategically Injected Factual Assertions and Extrinsic Evidence Beyond the Contract.*

Notwithstanding its protests now to the contrary, *see, e.g.*, GP Rule 56(f) Opp. at 4-5, it was Georgia-Pacific who indisputably put forth factual assertions to support its request for summary judgment. In framing that motion, Georgia-Pacific strategically chose to make assertions and reference multiple sources of extrinsic materials to "***put the present dispute in context.***" D.I. 16, ("GP SJ Mem.") at 3. Indeed, it was Georgia-Pacific that inserted the following to support its request:

- "But, ***even if the Court were to conclude that the agreements are ambiguous***, Georgia-Pacific would nonetheless be entitled to summary judgment"; *id.* at 2; [3]

- "***the Court should consider the letter of intent*** signed by the parties with respect to RPC's purchase of the New Jersey Operations"; *id.* at 16 n.6;[4]

---

[3]  By Georgia-Pacific's own admission, this statement ***alone*** substantiates International Paper's request for discovery. *See* GP Rule 56(f) Opp. at 3 (noting the relevance of extrinsic evidence where the contract is ambiguous). Having requested summary judgment explicitly on the basis of contractual ambiguity, Georgia-Pacific cannot credibly deny that International Paper should be afforded the opportunity to take discovery surrounding that extrinsic evidence.

3

- "Georgia-Pacific maintains that it has no liability for clean-up of the Crown Vantage Landfill *because RPC did not dispose of any wastes at the site*"; *id.* at 6;

- "Georgia-Pacific contends that it has no liability for the Crown Vantage Landfill *because it is not a potentially responsible party within the meaning of CERCLA*"; *id.* at 7;

- "In other words, *the vast majority of contamination at the sites was caused by International Paper's predecessors, not by RPC*." *Id.* at 24-25;

- "*Unlike Federal's purchase of Old Riegel, which was structured as a merger*, RPC's purchase of the New Jersey Operations was structured as an asset purchase." *Id.* at 4;

- "Finally, *it is Georgia-Pacific that is voluntarily cooperating with the EPA*, while *International Paper has refused to cooperate*." *Id.* at 25.

Furthermore, Georgia-Pacific does not and cannot deny that its summary judgment request relies upon multiple, unauthenticated documents that have never before been produced to International Paper. *See* Rule 56(f) Motion at 3; D.I. 15 Exhibits D-H. And, notwithstanding its statements that this matter is "ripe," Georgia-Pacific continues to inject new materials, even in opposition to the pending Rule 56(f) motion. Indeed, in the very same sentence that it contends that "*no facts are material to the legal interpretation of the contracts*," Georgia-Pacific inserts a footnote that purports to introduce, incredibly, facts from yet another new source of extrinsic evidence: "a Unilateral Administrative Order ('UAO') against International Paper with respect to the Crown Vantage Landfill." GP Rule 56(f) Opp. at 5 n.3, *citing* Sprie. Decl. ¶ 8, Ex. F.

Georgia-Pacific cannot have it both ways -- by offering extrinsic evidence and factual assertions to support its summary judgment motion on the one hand, but then attempting to deny International Paper the opportunity to discover those and related materials on the other. Having chosen to prematurely file its summary judgment motion and insert these factual issues, Georgia-Pacific cannot

---

[4] In its Opposition, Georgia-Pacific falsely suggests that International Paper injected this "letter of intent" into this dispute by referencing it in its dismissal motion. *See* GP Rule 56(f) Opp. at 5, n. 2. The text of International Paper's Dismissal Motion speaks for itself and states that the letter of intent is irrelevant to that motion. In contrast, Georgia-Pacific's summary judgment motion explicitly exhorts consideration of the letter as a basis for judgment in its favor. *Compare* Dismissal Motion at 13 n.6 ("such extrinsic evidence is irrelevant and must be ignored"), *with* GP SJ Mem. at 16 n.6 ("If, however, the Court were to find it necessary to consider such evidence, *the Court should consider* the letter of intent signed by the parties[.]").

4

now reconfigure its motion to disavow them. *Cf.* GP Rule 56(f) Opp. at 4 ("Georgia-Pacific does not contend that any of these background facts (other than the language of the agreements) are relevant[.]"). And International Paper is certainly not barred from exploring those assertions pursuant to Rule 56(f).

    B.    *The Law Compels International Paper Be Afforded Discovery Pursuant to Rule 56(f) Prior to Submitting its Opposition.*

Rather than confront the substantial law from this District confirming the applicability of Rule 56(f) to the present circumstance, Georgia-Pacific unilaterally deems this matter "ripe for decision" without any discovery. GP Rule 56(f) Opp. at 7. That attempt at avoiding controlling law is unavailing, as a Rule 56(f) continuance is precisely appropriate now, where no discovery, let alone the necessary discovery, has taken place. *See, e.g., Holmes v. Lorch*, 329 F. Supp. 2d 516, 529 (S.D.N.Y. 2004) ("Rule 56(f) is a safeguard against premature grants of summary judgment and should be applied with a spirit of liberality."); *S.W.B. New Eng. Inc. v. R.A.B. Food Group, LLC*, Case No. 06-CV-15357, 2007 WL 1753067, at *2 (S.D.N.Y. Jun. 13, 2007) ("When a party moves prematurely for summary judgment before discovery has been completed, Rule 56 provides a safety valve, in the form of Rule 56(f), to prevent the opposing party from being railroaded.").

The cases Georgia-Pacific cites involving a denial of a Rule 56(f) continuance are entirely inapposite to the present circumstance, where International Paper has not taken any discovery on the facts asserted by Georgia-Pacific and in dispute. *See, e.g., Pezant v. Okeke,* 166 Fed. App'x 962, 963 (9th Cir. 2006) (affirming denial of Rule 56(f) continuance where "the facts were undisputed"); *Flowers v. First Haw. Bank*, 295 F. Supp. 2d 1130, 1138 (D. Haw. 2003) (denying Rule 56(f) discovery where "[t]he relevant discovery has occurred. Plaintiffs have obtained depositions or documents, or had an opportunity to discover such evidence") (cited at GP Rule 56(f) Opp. at 3). Georgia-Pacific's further citation to law for the undisputed contention that Rule 56(f) does not create an "automatic stay" is entirely misplaced. For example, in *Players*, *Inc. v. City of N.Y.* (cited at GP Rule 56(f) Opp. at 7-8) , the litigation was over a year old, the Court had held multiple discovery and scheduling conferences,

and the party to whom *the Court granted discovery* had failed for months to timely and properly take such discovery. *See Players, Inc.*, 371 F. Supp. 2d at 525-28. Indeed, while Georgia-Pacific seeks to make much of the *Players, Inc.* holding, it fails to reference the unique procedural setting critical to the Court's ultimate ruling: "The Court must describe the convoluted procedural history of this case to explain why it is prepared to rule on Defendants' motions without further briefing from the parties." *Id* at 525.

Such cases are entirely divorced from the present one where no answer has been filed, no Rule 26 conference has been held, issue has not been joined, no initial disclosures have been served, and -- critically -- no discovery has taken place. For all of these reasons, International Paper's request for Rule 56(f) discovery is entirely appropriate, and it should be afforded such discovery prior to submitting any opposition to the summary judgment motion.

    C.    *The Discovery International Paper Seeks Is Necessary to Respond to Georgia-Pacific's Motion.*

As Rule 56(f) makes clear, International Paper is entitled to reasonable discovery to explore the assertions and extrinsic materials pervading Georgia-Pacific's summary judgment motion. As detailed in the Serino Declaration, *see* D.I. 21 (the "Serino Dec."), if the Court denies the Dismissal Motion in whole or in part and entertains the summary judgment motion, then the narrowly-tailored discovery that International Paper seeks is entirely appropriate to respond to the issues raised by Georgia-Pacific's therein.

For example, one central area of discovery relates to RPC and its successors' awareness and resolution of liabilities at the New Jersey Operations. As stated above, Georgia-Pacifc's summary judgment motion seeks a declaratory ruling that "RPC did not assume any of Federal's liabilities under CERCLA or any other federal or state environmental clean-up statute enacted after April 3, 1972 with respect to the New Jersey Operations." Complaint at 11. To the extent the Court denies the Dismissal Motion, the awareness and resolution of liabilities at the New Jersey Operations by RPC and its

6

successors is extremely relevant. That such entities knew of environmental contamination and for decades further chose to resolve it (with the EPA or otherwise) without informing or implicating Federal or International Paper is fundamentally relevant to whether RPC "*did not assume any of Federal's liabilities*." *Id.* Further, RPC's resolution of post-1972 New Jersey Operations liabilities is highly relevant to establishing a course of conduct surrounding what liabilities RPC and its successors assumed from Federal. Such an admission is also relevant to whether Georgia-Pacific is even estopped from raising this claim now, particularly since Georgia-Pacific contends in its motion that RPC assumed only specific liabilities. *See, e.g.*, GP SJ Mem. at 22-23; Serino Dec. at ¶¶ 34-40. Finally, whether RPC's successors, including Georgia-Pacific, further contaminated the New Jersey Operations goes directly to Georgia-Pacific's repeated statements that it has no liability. *See, e.g.,* GP SJ Mem at 6 ("Georgia-Pacific maintains that it has no liability for clean-up of the Crown Vantage Landfill because RPC did not dispose of any wastes at the site[.]").

      Moreover, Georgia-Pacific's silence on multiple areas of requested discovery confirms its tacit acknowledgement of their relevance. These areas include pre-contract diligence and negotiations between Federal and RPC surrounding the New Jersey Operations, such as the "letter of intent" it put at issue. *See, e.g.*, Serino Dec. at ¶¶ 29-33. Also relevant is RPC's understanding of and involvement in Old Riegel's transfer of the New Jersey Operations to Federal. *See id.* at ¶¶ 24-28. Indeed, in its effort to "put the dispute in context," Georgia-Pacific explicitly states that "Federal succeeded by operation of law to all liabilities of Old Riegel." GP SJ Mem. at 3, 4 ("Subsequent to the merger between and Federal and Old Riegel, Federal and RPC entered into a Purchase Agreement[.]"). Any commonality between the entities that transferred the relevant New Jersey Operations to, and then received them from, International Paper's predecessor -- which only held those Operations for mere months -- bears on what the parties assumed by law and the nature of their transaction.

      Should this Court conclude that the contract does not unambiguously establish that RPC assumed the subject liabilities, and therefore denies the Dismissal Motion in whole or in part, then

7

Georgia-Pacific cannot deny that the foregoing topics, which it introduces in its own summary judgment motion, are relevant to determining whether RPC assumed the liabilities at issue, or at a minimum raises a question of fact thereto. Under such circumstances, International Paper is undoubtedly entitled to this discovery.

### III. Georgia-Pacific's Sur-Reply in Response to International Paper's Dismissal Motion Is Procedurally Improper and Substantively Meritless.

Adding to its improprieties, Georgia-Pacific improperly injects additional briefing to the Dismissal Motion. *See* GP Rule 56(f) Opp. at 8. (brazenly asserting that "[b]ecause Georgia-Pacific did not have an opportunity to respond to certain arguments International Paper made in its reply memorandum [on the Dismissal Motion], Georgia-Pacific briefly responds to those arguments now and demonstrates that they are without merit."). Georgia-Pacific's unilateral decision to provide further briefing and get the last-word on a fully-briefed motion is an impermissible sur-reply, not permitted under the Local Rules. *See, e.g.*, Local Civil Rule 6.1; *Travelers Ins. Co. v. Buffalo Reins. Co.*, 735 F. Supp. 492, 495 (S.D.N.Y. 1990) ("[A] sur-reply memorandum shall not be accepted without prior leave of court."). No such permission has been sought here, much less granted, and pages 8-13 of Georgia-Pacific's "Opposition" should be ignored on those grounds alone.[5]

But even if the Court considers the substance of Georgia-Pacific's sur-reply, nothing therein detracts from the viability of International Paper's request for dismissal. To the contrary, each argument Georgia-Pacific reinvents is as meritless now as it ever was.

*First*, Georgia-Pacific's continued and unsupported attempt to read in a temporal limitation to liabilities that are "accrued, absolute, contingent or otherwise," *see* GP Rule 56(f) Opp. at 9,

---

[5] Even if Georgia-Pacific had appropriately made such a request, the circumstances of this briefing do not merit a sur-reply. Among other things, each of the three points Georgia-Pacific addresses in its sur-reply -- (i) the term "otherwise;" (ii) paragraph 1 of the Purchase Agreement; and (iii) the *Olin* decision -- were raised appropriately by International Paper in its opening brief. *See, e.g.*, Dismissal Motion at 12-13 (emphasizing that the Contract here sweepingly provides for the transfer of "all" liabilities, "whether accrued, absolute, contingent or otherwise"); *id.* at 13 n.7 (addressing the import of paragraph 1 of the Purchase Agreement); *id.* at 8, 11-12 (analyzing the holding in *Olin* and its applicability to the present case).

8

fundamentally disregards the fact that the very use of the term "contingent or otherwise" confirms the parties' intent to transfer to RPC *not only* those liabilities that had already "accrued" by the Closing Date, but also that arose subsequently. *See* D.I. 18, Reply on Dismissal Motion at 7 n.7. Georgia-Pacific's myopic reading of this phrase would impose an overly restrictive and redundant interpretation on an unambiguously broad contractual phrasing. *See* GP Rule 56(f) Opp. at 9. What is more, "the rule" of construction that Georgia-Pacific obtusely refers to -- "reverse ejusdem generic," *see id.*, does nothing to support its argument. To the extent it is even relevant, it only confirms International Paper's reading that "otherwise" is broader than "accrued." *Compare Nat'l Football League v. Vigilant Ins. Co.*, 36 A.D.3d 207, 212 (N.Y. App. Div. 2006) (explaining that the rule applies where the contractual construct is "A, B or any other C," which would indicate that "A is a subset of C") *with* Contract at Annex A (assuming liabilities "whether accrued, absolute, contingent, or otherwise.").[6]

*Second*, Georgia-Pacific continues to ignore relevant precedent that directly undercuts its proposed contractual reading. *See, e.g.*, GP Rule 56(f) Opp. at 10, 12-13; *A-C Reorg. Trust v. E.I DuPont de Nemours & Co*, Case No. 94-cv-574, 1997 WL 381962, at *6 (E.D. Wis. Mar. 10, 1997) (applying New York law to identical contractual provision and holding that CERCLA liability was contractually transferred). And Georgia-Pacific does nothing to rehabilitate the cases it advances, which International Paper clearly distinguished across the board as involving differing contractual provisions that expressly transferred only specifically-identified liabilities, as opposed to the sweeping provision at issue here.[7] *See* Reply on Dismissal Motion at 8-9.

---

[6] Georgia-Pacific's citation to *World Exhibit Corp. v. City Bank Farmers Trust Co.*, *see* GP Rule 56(f) Opp. at 10, is a similar red-herring. That case analyzes the contractual phrase "or otherwise to comply with this agreement" in the context of a conveyance of marketable title. *See* 270 A.D. 654, 657-58 (N.Y. App. Div. 1946). The court explained that the subject phrase had to be referring to "a form of inability to convey title *other than* from inability because of a defect rendering the title unmarketable," because that general language "must be confined in its meaning by [a] specific enumeration which precedes it [relating to the risk of loss or damage]." *Id.* at 657. Here, no "specific enumeration" precedes the liabilities that RPC assumed, and therefore this case is fully consistent with International Paper's position. *See* Dismissal Motion at 4.

[7] Georgia-Pacific's new citation to *State by Bellaire Sanitation, Inc. v. Gopher Oil Co.*, *see* GP Rule 56(f) Opp. at 10, is unavailing and distinguishable, as under Minnesota law, that contract expressly limited liabilities to only those

*Finally*, Georgia-Pacific's analysis of paragraph 1 of the Contract defies comprehension. *See* GP Rule 56(f) Opp. at 11. Clearly, the phrase "directly attributable to the New Jersey Operations on the Closing Date" is a definition of the relevant and subject New Jersey Operations, and that understanding must be carried throughout the Contract. *See* Reply on Dismissal Motion at 4-6. Georgia-Pacific initially fights this reality, but ultimately concedes the point. *See* GP Rule 56(f) Opp. at 11 ("The plain and natural reading of [paragraph 1 of the Purchase Agreement] is that Federal would transfer to RPC *the assets of Federal existing on the closing date*."). As such, Georgia-Pacific now concedes that the purported contractual basis for its argument that any liabilities transferred to RPC had to have existed on the Closing date is unavailing. The Dismissal Motion should accordingly be granted.

\* \* \* \*

For the foregoing reasons, International Paper's Rule 56(f) Motion for Continuance and Discovery to respond to Georgia-Pacific's summary judgment motion should be granted.

Dated: February 8, 2008
    New York, New York

KIRKLAND & ELLIS LLP

   /s Joseph Serino, Jr.
Joseph Serino, Jr.
Atif Khawaja
Citigroup Center
153 East 53rd Street
New York, New York 10022-4611
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900

*Counsel for Defendant International Paper Co.*

---

"existing at closing" and "arising out of transactions entered into, or any state of facts existing, prior to such date." No. C8-94-225, 1994 WL 328631, at *1 (Minn. Ct. App. Jul. 12, 1994). Such contract provisions are entirely absent here.