UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                                            :
GEORGIA-PACIFIC CONSUMER PRODUCTS,    :   07-Civ-9627(SHS)
LP,                                                         :
                                                            :
                    Plaintiff,                              :
                                                            :   OPINION AND ORDER
        -against-                                           :
                                                            :
INTERNATIONAL PAPER COMPANY,                                :
                                                            :
                    Defendant.                              :
                                                            :
------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

   In this action, the Court must chose between two competing interpretations of a 1972 contract for the sale of several paper mills and associated properties by Federal Paper Board Company ("Federal")—a predecessor of defendant International Paper Company—to Riegel Products Corporation ("RPC")—a predecessor of plaintiff Georgia-Pacific Consumer Products, LP. As part of the consideration it provided to Federal, RPC agreed to assume certain liabilities associated with the transferred assets. Georgia-Pacific and International Paper now dispute whether the liabilities assumed by RPC under the 1972 contract include the costs of cleaning up environmental contamination where those liabilities were imposed by a statute enacted in 1980, nearly a decade after the sale. Plaintiff seeks a declaration that RPC did not assume the liabilities. Defendant moves to dismiss the complaint on the ground that the four corners of the contract unambiguously demonstrate that RPC did assume the liabilities. Pointing to the same contractual language, plaintiff opposes defendant's motion and moves for summary judgment in its favor. Given the intention of RPC and Federal as unambiguously expressed within the four

1

corners of the contract that RPC assume only those liabilities existing on the closing date in 1972, the Court finds as a matter of law that RPC did not contractually assume the liabilities at issue in this case. Accordingly, defendant's motion to dismiss the complaint is denied and plaintiff's motion for summary judgment is granted.

I.  **BACKGROUND**

This action involves the sale of several properties located in Warren and Hunterdon Counties in New Jersey, including four paper mills opened between the years 1863 and 1903 and a landfill opened in 1938 to receive waste from the paper mills (collectively the "New Jersey Operations"). (Compl. ¶¶ 10-11.) Federal and RPC executed a written contract to sell the New Jersey Operations on February 23, 1972 (the "Purchase Agreement"). (Id. ¶¶ 13-18.) The Purchase Agreement is attached as exhibit 1 to the declaration of Joseph Serino in support of defendant's motion to dismiss (the "First Serino Decl.").

Under the Purchase Agreement, Federal promised that on the closing date it would transfer to RPC the New Jersey Operations "together with all assets and properties of Federal . . . directly attributable to the New Jersey Operations on the Closing Date," with certain exceptions not relevant here. (Purchase Agreement § 1.) The contract further provided:

> The consideration to be paid by RPC for the transfer of the Properties to it shall be (i) the payment by RPC to Federal of $6,770,018.00 . . . and (ii) the assumption by RPC of the liabilities of Federal directly attributable to the New Jersey Operations on the Closing Date, including, but not by way of limitation, those listed in Schedule B attached hereto . . . but excluding those expressly excluded in this Agreement or listed in Schedule C attached hereto.

(Id.) Neither Schedule B, entitled "Non-Exclusive List of Liabilities Assumed," nor Schedule C, entitled "Liabilities – Not Assumed," refers to liabilities related to environmental cleanup costs. The closing date in the agreement was April 3, 1972. (Id. § 2.)

The Purchase Agreement set forth a closing procedure under which RPC was required to provide "a written instrument of assumption by RPC of the liabilities and obligations of Federal to be assumed pursuant to Section 1 hereof in the form attached hereto as Annex A." (Purchase Agreement § 2(c).) Annex A is entitled "Assumption" and confirms RPC's assumption of certain liabilities (the "Assumption Agreement"). In relevant part, the Assumption Agreement states that,

> RPC . . . in consideration of the . . . sale . . . to it of [the New Jersey Operations] . . . does hereby assume, pursuant to Section 1 of the Agreement . . . all of Federal's debts and liabilities of every kind, character or description, whether known or unknown, whether disclosed or undisclosed, whether accrued, absolute, contingent or otherwise, and whether or not reflected or reserved against in Schedules A or B to the Agreement and which are directly attributable to the New Jersey Operations, as the same exist on the date hereof, and does hereby agree to pay, perform and discharge, when due, all of the said debts and liabilities.

(Annex A to Purchase Agreement at 1, Ex. 1 to First Serino Decl.)

On the closing date, RPC executed and delivered the Assumption Agreement. (Compl. ¶ 16; Executed Assumption Agreement included in Ex. 1 to First Serino Decl. at 2.) For ease of reference, the Court will refer to the Purchase Agreement and the Assumption Agreement collectively as the "Agreement." By its own terms, the Agreement is to be governed by New York law. (Purchase Agreement § 20(e).)

In 1980, eight years after the Purchase Agreement was executed, the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 et seq., became law. Among other things, CERCLA imposes strict liability on facility owners for certain costs associated with the cleanup of hazardous materials released into the environment. 42 U.S.C. § 9607; see generally Prisco v. A & D Carting Corp., 168 F.3d 593, 602-03 (2d Cir. 1999) (describing strict liability for environmental response costs imposed on "potentially responsible parties" under CERCLA). The United States Environmental Protection Agency

3

("EPA") has discovered hazardous substances on the New Jersey Operations properties and has determined that both Georgia-Pacific and International Paper are potentially responsible parties pursuant to CERCLA. (Compl. ¶ 2; Decl. of Ingo Sprie in Support of Pl.'s Mot. for Summary Judgment ("First Sprie Decl.") ¶¶ 10, 9 and Ex. G.) Georgia-Pacific has entered into an Administrative Settlement Agreement with EPA that requires Georgia-Pacific to conduct a remedial investigation and feasibility study into the extent of contamination at one of the properties. (Compl. ¶ 2; Ex. H to First Sprie Decl.) In addition, EPA has issued a Unilateral Administrative Order to International Paper "requir[ing International paper] to participate in the performance of the remedial investigation and feasibility study . . . as well as certain removal activities." (Letter from EPA to Brian Heim, Senior Counsel, Environment, Health and Safety, International Paper Company, dated December 31, 2007 at 1, Ex. F to Decl. of Ingo Sprie in Opposition to Def.'s Rule 56(f) Request ("Second Sprie Decl.").)

Georgia-Pacific maintains that it is not liable for CERCLA clean up costs because the Purchase Agreement did not obligate RPC to assume Federal's CERCLA liabilities. (Compl. ¶ 28.)[1] Georgia-Pacific intends to seek contribution from International Paper to the extent Georgia-Pacific pays more than its equitable share of CERCLA response costs. (Compl. ¶ 28.) On the other hand, International Paper contends that RPC assumed the CERCLA liabilities associated with the New Jersey Operations and that if International Paper discharges any of those liabilities, it is entitled to indemnification from Georgia Pacific. (Def.'s Mem. of Law in Support of its Mot. to Dismiss at 5, 15 n. 8.)

---

[1] Georgia-Pacific also believes that it is not liable for any environmental clean up costs related to the New Jersey Operations because Georgia-Pacific does not own any of the properties and RPC did not dispose of any waste. These issues are not before the Court. The only issue in this case is whether under the terms of the Agreement RPC assumed Federal's CERCLA liabilities as part of the consideration RPC paid in exchange for the New Jersey Operations.

In this litigation Georgia-Pacific seeks a declaration pursuant to 28 U.S.C. § 2201 that RPC did not in the Agreement contractually assume Federal's liability for environmental clean up costs pursuant to CERCLA with respect to the New Jersey Operations. International Paper has moved to dismiss the complaint on the ground that the 1972 Agreement unambiguously reveals that the contracting parties intended RPC to assume liabilities arising under later-enacted environmental clean-up statutes such as CERCLA. International Paper also argues that because it has not yet discharged any CERCLA liabilities, a declaration clarifying the parties' indemnification rights and duties would be premature. Georgia-Pacific opposes the motion to dismiss and simultaneously moves for summary judgment in its favor. Georgia-Pacific agrees that the contracting parties' intent can be gleaned from the unambiguous four corners of the Agreement but argues that the parties explicitly limited RPC's assumption of liabilities to those in existence on the date of closing. Georgia-Pacific points out that because CERCLA was not enacted until several years following the closing date, RPC did not assume CERCLA liabilities under the plain terms of the contract. Georgia-Pacific also argues that its request for declaratory relief is not premature because EPA's enforcement actions create a live controversy between the parties.

Georgia-Pacific has the better argument. Based solely on the four corners of the Purchase Agreement, the Court finds that the parties expressly limited RPC's assumption of liabilities to those existing on the date of the closing in April 1972. RPC's assumption of liabilities did not include those arising under CERCLA, a later-enacted strict liability environmental clean-up law. Further, Georgia-Pacific's request for declaratory relief is ripe for decision. Accordingly, the Court denies International Paper's motion to dismiss the complaint and grants Georgia-Pacific's motion for summary judgment in its favor.

**II.    DISCUSSION**

    A.    <u>RPC Did Not Contractually Assume Federal's Future Liabilities Arising Under CERCLA</u>

        1.    *Standards of Contract Interpretation*

Whether the Agreement effectively transferred Federal's liabilities to RPC is a question of contract interpretation to be decided pursuant to New York law. (Purchase Agreement ¶ 20(e) ("This Agreement shall be governed by and construed in accordance with the laws of the State of New York.").) "Under New York law, . . . it is [a court's] function to discern the intent of the parties to the extent their intent is evidenced by their written agreement." <u>Commander Oil Corp. v. Advance Food Service Equipment</u>, 991 F.2d 49, 51 (2d Cir. 1993) (internal quotation omitted). If a contract is unambiguous on its face, its proper construction is a question of law. <u>Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.</u>, 906 F.2d 884, 889 (2d Cir. 1990); <u>see also</u> <u>Omni Quartz, Ltd. v. CVS Corp.</u>, 287 F.3d 61, 64 (2d Cir. 2002). Whether the language of a contract is unambiguous is also a question of law. <u>Seiden Assoc., Inc. v. ANC Holdings, Inc.</u>, 959 F.2d 425, 429 (2d Cir. 1992). Contract language is unambiguous if it has "a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." <u>Metropolitan Life Ins.</u>, 906 F.2d at 889. Contractual language "whose meaning is otherwise plain is not ambiguous merely because the parties urge different interpretations in the litigation." <u>Id.</u>

Under New York law, indemnification agreements are strictly construed and a court may not find a duty to indemnify absent manifestation of a "clear and unmistakable intent" to do so. <u>Olin Corp. v. Consolidated Aluminum Corp.</u>, 5 F.3d 10, 15 (2d Cir. 1993); <u>see also, e.g.</u>, <u>Schiavone Constr. Co. v. County of Nassau</u>, 717 F.2d 747, 751 (2d Cir. 1983) ("An indemnity

clause must reflect the unmistakable intent of the parties as to the scope of its coverage." (internal quotation omitted)).

New York also recognizes certain general principles of contract construction that are relevant here. First, "'where several instruments constitute part of the same transaction, they must be interpreted together.'" Commander Oil, 991 F.2d at 53 (quoting BWA Corp. v. Alltrans Express U.S.A., Inc., 493 N.Y.S.2d 1, 3, 112 A.D.2d 850 (1st Dep't 1985)). In this case, the Purchase Agreement and the Assumption Agreement constitute part of the same transaction and must be interpreted together. See id. Second, reading the entire agreement, a court must strive to "give full meaning and effect to all of its provisions." LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 206 (2d Cir. 2005) (citation omitted). "It is a cardinal rule of construction that the court adopt an interpretation that renders no portion of the contract meaningless." Wallace v. 600 Partners Co., 618 N.Y.S.2d 298, 301, 205 A.D.2d 202 (1st Dep't 1994). With these principles in mind, the Court now turns to the task of interpreting the relevant language in the Agreement and concludes that, read as a whole, the contract fails to evince an intent that RPC assume Federal's future-arising liability under CERCLA.

    2.  *The Contract Unambiguously Rules Out RPC's Assumption of CERCLA Liability*

The plain terms of the Purchase Agreement limit RPC's assumption of liabilities to "the liabilities of Federal directly attributable to the New Jersey Operations *on the Closing Date*." (Purchase Agreement § 1 (emphasis added).) Consistent with this language, RPC, in the Assumption Agreement, confirmed that it would assume "Federal's debts and liabilities of every kind, character or description . . . which are directly attributable to the New Jersey Operations, *as the same exist on the date hereof*." (Assumption Agreement at 1 (emphasis added).) The closing date set forth in the contract was April 3, 1972. (Purchase Agreement § 2.) Because CERCLA

7

was not enacted until December 1980, there were no extant CERCLA liabilities "on the date hereof." See Olin Corp. v. Consolidated Aluminum Corp., 5 F.3d 10, 14 (2d Cir. 1993); United States v. Vermont Am. Corp. 871 F. Supp. 318, 321 (W.D. Mich. 1994) ("[T]here is no question that . . . CERCLA liability [did not] exist[]" prior to the statute's enactment.). Accordingly, RPC did not assume any CERCLA liabilities in the Purchase Agreement.

Courts interpreting similar language have regularly held that where a pre-CERCLA contract for the sale of assets required a buyer to assume only those liabilities in existence on the date of the sale, the buyer did not assume later-arising CERCLA liabilities. For example, in John S. Boyd Co. v. Boston Gas Co., the First Circuit interpreted a 1973 contract for the sale of a gas company in which the buyer agreed to assume the liabilities of the company "as then existing." 992 F.2d 401, 404 (1st Cir. 1993). The court determined that this language was decisive and "fairly obviously foreclose[d] the possibility that [the buyer] agreed to assume [CERCLA liabilities.]" Id. at 407. Similarly in North Shore Gas Co. v. Salomon Inc., the Seventh Circuit determined that where a buyer of assets agreed to "assume [the] liabilities and obligations of every kind and character . . . of the [seller] accrued to or existing on the date of transfer," the buyer did not intend to assume later-arising CERCLA liabilities. 152 F.3d 642, 652 (7th Cir. 1998).

        3. *International Paper's Construction of the Contract is Flawed*

            a. Broad General Language Does Not Trump the Temporal Limitation Imposed by the Contracting Parties

International Paper's chief contention is that the breadth of the language used in describing the types of liabilities assumed by RPC reveals that the contracting parties intended RPC to assume liabilities under later-enacted environmental legislation like CERCLA. Indeed, when isolated from the rest of the agreement, some of the language chosen by the contracting

8

parties does suggest a very broad assumption of liabilities by RPC. Specifically, the Agreement provides that RPC was to assume "*all* of Federal's debts and liabilities," (Assumption Agreement at 1 (emphasis added)), which were further described as "of every kind, character or description, whether known or unknown, whether disclosed or undisclosed, whether accrued, absolute, contingent or otherwise, and whether or not reflected or reserved against in Schedules A or B." (Id.)

International Paper cites several cases in which courts have determined that broad assumption provisions entered into prior to CERCLA encompass CERCLA and other environmental liabilities, even though environmental liabilities are not specifically mentioned in the contractual language. See, e.g., Aluminum Co. of America v. Beazer East, Inc., 124 F.3d 551, 566 (3d Cir. 1997); United States v. Iron Mountain Mines, Inc., 987 F. Supp. 1233, 1241 (E.D. Cal. 1997); Purolator Prods. Corp. v. Allied-Signal, Inc., 772 F. Supp. 124, 131-32 (W.D.N.Y. 1991). However, none of these cases involved a temporal limitation like the one in the present case which limited RPC's assumption to liabilities existing on the closing date. Where a contract includes such a temporal limit, courts have not been hesitant to find that CERCLA liabilities were excluded despite the presence of very broad language elsewhere in the agreement. See Vermont Am. Corp., 871 F. Supp. at 321 (holding that although the contract required the buyer to assume "all . . . liabilities of the Seller, whether or not matured and whether or not contingent," the buyer did not assume CERCLA liabilities because the contract also limited the assumption to liabilities "existing on the Closing Date"); Chrysler Corp. v. Ford Motor Co., 972 F. Supp. 1097, 1108-09 (E.D. Mich. 1997) (same).

Indeed, the leading Second Circuit decision in this area strongly supports Georgia-Pacific's interpretation of the contract. In Olin Corporation v. Consolidated Aluminum

9

Corporation, the Second Circuit interpreted a pre-CERCLA agreement for the sale of an aluminum business. 5 F.3d 10, 12 (2d Cir. 1993). Under the terms of the agreement, the buyer was to assume "all liabilities (absolute or contingent), obligations and indebtedness of [the seller] related to the Aluminum Assets . . . as they exist on the [closing date] or arise thereafter with respect to actions or failures to act occurring prior to the [closing date.]" Id. at 12-13. The Second Circuit framed the question presented as "whether the Agreements at issue, which predate the enactment of CERCLA and which make no mention of environmental liabilities, allocate to . . . the buyer, the subsequently created CERCLA obligation to clean up the Hannibal site, which [the buyer] claims was contaminated by . . . the seller." Id. at 14. The Second Circuit answered the question in the affirmative, but, in so doing, highlighted the key fact that the parties had *expressly included* future-arising liabilities within the assumption clause. Id. at 15. The court noted that under New York law, a contract "should not be interpreted to include later statutory enactments that change[] the obligations of the parties absent a clear expression in the contract that such is the parties' intention." Id. In the case before it, however, the court found a clear intention to incorporate liabilities under later-enacted statutes given the specific language of the contract. The court explained,

> The Purchase Agreement requires [the buyer] to indemnify [the seller] against "*all liabilities*, obligations and indebtedness of [the seller] related to its aluminum business . . . as they exist on the Closing Date *or arise thereafter*." In the Assumption Agreement executed at the closing, [the buyer] agreed to "indemnify [the seller] against, *all liabilities (absolute or contingent)*, obligations and indebtedness of [the seller] related to the aluminum business . . . as they exist on the Effective Time *or arise thereafter* . . ."

Id. (emphases added by the Olin court).

Of course, the language highlighted by the Olin court is precisely the sort of language missing from the contract at issue in this case. In stark contrast to the agreement in Olin which

10

included liabilities existing on the closing date "*or aris*[*ing*] *thereafter*," the contract in this case explicitly limited RPC's assumption of liabilities to those existing "on the Closing Date." (Purchase Agreement § 1.)

As noted above, courts confronted with temporally limited pre-CERCLA assumption provisions have consistently held CERCLA liability to be beyond their scope. See, e.g., John S. Boyd, 992 F.2d at 404; North Shore Gas Co., 152 F.3d at 652; Vermont Am. Corp., 871 F. Supp. at 321; Chrysler Corp., 972 F. Supp. at 1108-09. The only exception appears to be A-C Reorganization Trust v. E.I. DuPont De Nemours & Co., No. 94-C-574, 1997 WL 381962 (E.D. Wis. Mar. 10, 1997). In that case, the district court interpreted a 1973 contract under which a buyer of assets agreed to assume "all . . . liabilities of [the seller] . . . of any kind, character or description, whether accrued, absolute, contingent or otherwise . . . all as the same shall exist at the Closing Date." 1997 WL 381962, at *5. Citing Olin, the court held that the buyer assumed later-arising CERCLA liabilities. Id. at *6. The court recognized that the contract included the limiting phrase "as the same shall exist at the Closing Date," while the contract in Olin "specifically referenced liabilities arising after the closing date," but determined, without analysis, that this difference was not "significant" and that the language before it "suffice[d] to cover CERCLA liability that would later accrue for a predecessor's previous acts." Id. This Court declines to follow the analysis of the Eastern District of Wisconsin in A-C Reorganization Trust. Rather, the Court finds that the temporal limitation in the Purchase and Assumption Agreements evinces a clear intent by the contracting parties to limit RPC's assumption of liabilities to only those existing on the date of the closing and to exclude liabilities arising under later-enacted CERCLA legislation.

11

      b.  International Paper's Construction of the Contract Renders Relevant Language Meaningless

As further support for its interpretation of the Agreement, Georgia-Pacific points out that including CERCLA liabilities within those assumed by RPC would effectively read the phrase "as the same exist on the date hereof" out of the provision in the Assumption Agreement that states that "RPC . . . hereby assume[s] all of Federal's . . . liabilities . . which are directly attributable to the New Jersey Operations, as the same exist on the date hereof." Doing so would violate the "cardinal rule of construction that . . . no portion of the contract [be rendered] meaningless." <u>Wallace</u>, 618 N.Y.S.2d at 301.

In response, International Paper posits an alternative interpretation of this key language; namely, that the phrase "as the same exist on the date hereof" does not modify the phrase "liabilities . . . which are directly attributable to the New Jersey Operations," but rather modifies only the words "New Jersey Operations." In other words, International Paper interprets the Assumption Agreement such that "[t]he only limitation on the liabilities assumed by RPC is that they be directly attributable to the New Jersey Operations *as such operations existed on the Closing Date*." ((Def.'s Mem. of Law in Support of its Mot. to Dismiss at 13 n.7 (emphasis added); Def.'s Reply in Support of its Mot. to Dismiss at 4-5.) This strained interpretation is highly implausible and does not create an ambiguity sufficient to overcome summary judgment. <u>See</u> <u>Seiden Assoc.</u>, 959 F.2d at 428 (Contractual ambiguity does not exist where one party's view "strains the contract language beyond its reasonable and ordinary meaning." (internal quotation and alterations omitted)).

Even if this interpretation had any surface plausibility, which it does not, it would be impermissible given the context. The Assumption Agreement specifically references the Purchase Agreement and provides that "RPC . . . hereby assume[s], *pursuant to Section 1 of the*

12

[*Purchase*] *Agreement* . . . liabilities . . . which are directly attributable to the New Jersey Operations, as the same exist on the date hereof." (Assumption Agreement at 1 (emphasis added).) For its part, the Purchase Agreement provides that RPC will assume "the liabilities of Federal directly attributable to the New Jersey Operations on the Closing Date." (Purchase Agreement § 1.) The phrase "on the Closing Date" in the Purchase Agreement cannot be taken to modify the phrase "New Jersey Operations" under any plausible reading. Rather, "on the Closing Date" clearly refers to "the liabilities of Federal directly attributable to the New Jersey Operations." Because the language in the Purchase Agreement and the Assumption Agreement must be read in tandem, if there were any doubt about the meaning of the Assumption Agreement, it is dispelled by the Purchase Agreement. See Malleolo v. Malleolo, 731 N.Y.S.2d 752, 753, 287 A.D.2d 603 (2d Dep't 2001) ("Where possible, a contract should be interpreted to avoid inconsistencies and to give meaning to all of its provisions.")

       c.  International Paper's Other Contentions Are Without Merit

International Paper also contends that because a list of specifically excluded liabilities was provided in Schedule C attached to the Purchase Agreement and "there [was] no exemption of 'environmental liability' in Schedule C or anywhere else in the Contract," the parties must have intended for RPC to assume CERCLA liabilities. (Def.'s Mem. of Law in Support of its Mot. to Dismiss at 9.) Of course, this ignores that the contract included an explicit *temporal* limitation on the liabilities to be assumed. Whether or not the contract expressly singled out and excluded "environmental liability" from assumption is not at issue.

International Paper also points to the fact that, as part of the consideration it paid for the New Jersey Operations, RPC agreed to assume certain of Federal's existing contractual obligations to third parties and that some of those contracts had "inherent environmental costs."

13

(Def.'s Mem. of Law in Support of its Mot. to Dismiss at 9.)  International Paper specifies, for example, that RPC agreed to assume Federal's contractual duties under a lease agreement with Atlantic Richfield Co. concerning an "underground tank and pump."  (Ex. 2 to Schedule B to Purchase Agreement ¶ 37.)  International Paper asserts that the fact that RPC assumed obligations with "undeniable environmental exposure for the New Jersey Operations," demonstrates an intent to assume liabilities arising under CERCLA.  However, that RPC assumed various contractual obligations from Federal says nothing about whether the parties intended for RPC to assume liabilities under later-enacted legislation.  Whether or not RPC can be said to have contemplated that the transaction would result in its assumption of various duties and liabilities touching on the environment is not at issue in the case.

      B.      <u>A Declaration Clarifying International Paper's Indemnity Rights Is Not Premature</u>

International Paper argues in the alternative that because it has not yet discharged any CERCLA liabilities, Georgia-Pacific's request for a declaration clarifying International Paper's right to indemnification is premature.  A request for declaratory judgment is ripe if "there is a substantial controversy, . . . of sufficient immediacy and reality."  <u>Olin</u>, 5 F.3d at 17 (citing <u>Maryland Cas. Co. v. Pacific Coal & Oil Co.</u>, 312 U.S. 270, 273, 61 S. Ct. 510, 85 L. Ed. 826 (1941)); <u>see also</u> 28 U.S.C. § 2201(a) ("In a case of actual controversy . . . any court of the United States . . . may declare the rights and other legal relations of any interested party.").  Whether a matter is sufficiently immediate and real requires a case-by-case analysis.  <u>Kidder, Peabody & Co. v. Maxus Energy Corp.</u>, 925 F.2d 556, 562 (2d Cir. 1991). In this analysis, relief should only be granted where it can be "of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  <u>E.R. Squibb & Sons, Inc.</u>, 241 F.3d at 177 (internal citations omitted).

Here, EPA has determined that environmental contamination is present on certain of the properties constituting the New Jersey Operations and has taken concrete enforcement actions against both parties.  (General Notice Letter from EPA to John Faraci, Chairman & CEO, International Paper Co. dated Apr. 12, 2005, Ex. G to First Sprie Decl.; Administrative Settlement Agreement and Order on Consent for Remedial Investigation and Feasibility Study between Georgia-Pacific Consumer Products and EPA, Ex. H to First Sprie Decl.; Letter from EPA to Brian Heim, Senior Counsel, Environment, Health and Safety, International Paper Co. dated Dec. 31, 2007, Ex. F to Second Sprie Decl.)

Given Georgia-Pacific's stated intention to bring an action against International Paper for costs that Georgia-Pacific is already incurring in connection with the Administrative Settlement Agreement and will likely incur in the future, the controversy between the parties is of sufficient immediacy and reality to justify declaratory relief.  See Solow Bldg. Co. v. ATC Assocs. Inc., 388 F. Supp. 2d 136, 139 (E.D.N.Y. 2005) (collecting cases decided under CERCLA where "parties were granted declaratory relief for indemnification despite the fact that the federal government had not yet, and might never have, brought suit to require the parties to pay for cleaning up the contaminated properties").  Olin is not to the contrary.  In that action, the Second Circuit determined that a request for declaratory relief regarding CERCLA indemnity rights was speculative where "[t]he record fail[ed] to indicate the location of the[] sites [or indicate] the types of claims that might be asserted in the future."  5 F.3d at 17.  No such uncertainty attends the present case.

### III. CONCLUSION

For the reasons set forth above, International Paper's motion to dismiss the complaint is denied.  Georgia-Pacific's motion for summary judgment in its favor for a declaration that the

Riegel Products Corporation did not assume liabilities under CERCLA by virtue of the 1972 Agreement and that International Paper is not entitled to indemnification from Georgia-Pacific for any clean-up costs associated with the New Jersey Operations to the extent any claim for indemnification is premised on a contention that Riegel Products Corporation assumed liabilities under CERCLA by virtue of the 1972 Agreement is granted.

Dated: New York, New York
      July 16, 2008

SO ORDERED:

_____
Sidney H. Stein, U.S.D.J.